IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ROBERT AND DIANE ALLISON, individually and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **Case No.: 05-992L** |
| **v.** | **Judge Thomas C. Wheeler** |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

## MEMORANDUM WITH EXHIBITS IN SUPPORT OF: MOTION FOR CLASS CERTIFICATION

Plaintiffs Robert and Diane Allison, individually and on behalf of all others similarly situated, respectfully move this Court under RCFC 23 to certify an opt-in class of all property owners who hold fee-simple title to the land underlying the railroad right-of-way along a 9.78-mile stretch of the Burlington Northern & Santa Fe Railroad line from milepost 504.05 (at Hydraulic Ave., Wichita, Kansas) to milepost 494.22 (at 159th St. East, the Sedgwick County/Butler County, Kansas, line), so that they may seek just compensation for the unconstitutional taking of their property by conversion of the rails to trails under The National Trails System Improvement Act, 16 U.S.C. §1247(d). Plaintiffs offer this Memorandum with Exhibits in Support.

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316 688 1166
316 686 1077 (*fax*)
www.huttonlaw.com

**TABLE OF CONTENTS**

Table of Authorities . . . . . i-v

I. QUESTION PRESENTED . . . . . 1

II. STATEMENT OF THE CASE . . . . . 1

III. ARGUMENTS . . . . . 4

A. OPT-IN CLASS ACTION IS APPROPRIATE IN RAILS-TO-TRAILS CASES. . . . . . 4

B. PLAINTIFFS SATISFY ALL THRESHOLD REQUIREMENTS UNDER RCFC 23(a) AND *QUINAULT* FACTORS (i), (ii), (iv), AND (vii). . . . . . 6

1. Under RCFC 23(a)(1) And *Quinault* Factor (i), Class Members Constitute A Large But Manageable Class For Which Joinder Would Be Impracticable. . . . . . 7

a. This class of several hundred is sufficiently large. . . . . . 7

b. Although large, this class of readily-identifiable members all making the same claims is manageable. . . . . . 7

c. Joinder of this class with likely unprofitable individual claims would be impracticable. . . . . . 8

2. Under RCFC 23(a)(2) And *Quinault* Factor (ii), Questions Of Law Or Fact Are Common To The Class Where One Federal Action Affected All Members And The Government Raises Common Defenses Against Every Claimant. . . . . . 10

3. Under RCFC 23(a)(3) And *Quinault* Factor (iv), Plaintiffs' Claims Are Typical Of The Class' Claims Where Each Member Suffered Virtually The Same Injury And Seeks The Same Relief. . . . . . 12

4. Under RCFC 23(a)(4) And *Quinault* Factor (vii), Plaintiffs Will Protect Class Interests Fairly, Adequately, And Without Conflict Where All Members Seek The Same Relief Under The Same Theory And Whose Counsel Are Unrelated To Any Member, Have Ample Experience In Complex And Land Litigation, And Apply Their Resources Here. . . . . . 12

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

C. PLAINTIFFS MEET THE REQUIREMENTS TO MAINTAIN THIS CASE AS A CLASS ACTION UNDER RCFC 23(b) AND *QUINAULT* FACTORS (iii), (v), and (vi). . . . . . 14

1. Under RCFC 23(b)(1) And *Quinault* Factor (v), The United States Treated All Putative Class Members Equally When The STB Issued The NITU . . . . . 14

2. Under RCFC 23(b)(2) And *Quinault* Factor (iii), The Questions Of Law Or Fact Common To The Class Predominate Over, *i.e.*, Override, Any Individual Issues. . . . . 15

a. Ownership issues are simple and straight-forward – a matter of document review. . . . . 15

b. Determining damages is formulaic, keyed off of appraisals. . . . . 17

3. Under RCFC 23(b)(2) And *Quinault* Factor (vi), Class Action Is The Superior, If Not The Only, Method For The Fair And Efficient Adjudication Of This Case. . . . . 18

a. Individual control of litigation is not an issue in this case where a large number of claims are small. . . . . 19

b. No other cases exist. . . . . 20

c. This class action will not be difficult to manage where class members are reasonably identifiable, ownership interests are a matter of simple review, this Court and federal district courts have presided over other Rails-to-Trails classes, and the Court's ADR program is available to help resolve disputes. . . . . 20

4. Overall, Class Action Would Serve The Interests Of Justice And Is The Right Thing To Do. . . . . 21

IV. CONCLUSION . . . . . 23

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

# TABLE OF AUTHORITIES

## Constitutional Provisions

Constitution of the United States, Amend. V . . . . . . . . 3, 8, 11, 12, 13, 21

## Federal Statutes

49 C.F.R. § 1152.29 . . . . . . . . 1, 14

The National Trails System Improvement Act, 16 U.S.C. §1247(d) . . . . . . . . 1, 8, 11, 14, 21, 23

The Tucker Act, 28 U.S.C. §1491(a) . . . . . . . . 12, 13

## Federal Case Law

*Abrams v. United States*,
57 Fed. Cl. 439 (2003) . . . . . . . . 4

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) . . . . . . . . 12

*Banner v. United States*,
38 Fed. Cl. 700 (1997) . . . . . . . . 15

*Berkley v. United States*,
45 Fed. Cl. 224 (1999) . . . . . . . . 4, 6, 7, 9, 11, 12, 13, 17, 19, 20, 22

*Energy Transp. Sys. v. Union Pac. R.R. Co.*,
456 F. Supp. 154 (D. Kan. 1978) . . . . . . . . 2

*Favreau v. United States*,
48 Fed. Cl. 774 (2000) . . . . . . . . 8, 19, 22

*General Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982) . . . . . . . . 4, 8

*Glosemeyer v. United States*,
45 Fed. Cl. 771 (2000) . . . . . . . . 3

*Hannon v. United States*,
31 Fed. Cl. 98 (1994) . . . . . . . . 11

*Hubbert v. United States*,
58 Fed. Cl. 613 (2003) . . . . . . . . 4, 7, 10

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

*Moore v. United States*,
41 Fed. Cl. 394 (1998) . . . . . . . . 4, 6, 8, 11, 12, 14, 15, 19, 20, 21

*Moore v. United States*,
54 Fed. Cl. 747 (2002) . . . . . . . . 17

*Presault v. United States*,
100 F.3d 1525 (Fed. Cir. 1996) . . . . . . . . 14

*Quinault Allottee Ass'n v. United States*,
197 Ct. Cl. 132 (1972) . . . . . . . . 1, 3, 6

*Shell Pet. Corp. v. Hollow*,
70 F.2d 811 (10th Cir. 1934) . . . . . . . . 16

*Taylor v. United States*,
41 Fed. Cl. 440 (1998) . . . . . . . . 17, 18, 19, 21

*Toews v. United States*,
53 Fed. Cl. 58 (2002) . . . . . . . . 3

*Wolfchild v. United States*,
62 Fed. Cl. (2004) . . . . . . . . 6

**Federal Administrative Decisions**

*Burlington Northern and Santa Fe Ry. Co. – Abandonment Exemption – in Sedgwick County, KS*
STB No. AB-6 (Sub-No. 403X), Slip Copy . . . . . . . . 14
2005 WL 1103432 (STB)(May 9, 2005) . . . . . . . . 2, 3
2003 WL 1909276 (STB)(April 22, 2003) . . . . . . . . 3, 14
2003 WL 1605972 (STB)(March 28, 2003) . . . . . . . . 2

**Kansas Case Law**

*Barker v. Lashbrook*,
128 Kan. 595, 279 P.12 (1929) . . . . . . . . 16

*Federal Farm Mortgage Corp. v. Smith*,
149 Kan. 789, 89 P.2d 838 (1939) . . . . . . . . 16

*Harvest Queen Mill & Elev. Co. v. Saunders*,
189 Kan. 536, 370 P.2d 419 (1962) . . . . . . . . 16

*Kansas Central Ry. Co. v. Allen*,
22 Kan. 285, 1879 WL 836 (1879) . . . . . . . . 16

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

*Shawnee County Comm'rs v. Beckwith*,
10 Kan. 603, 1873 WL 699 (1873) . . . . . 16

*State Highway Comm'n v. Puskarich*,
148 Kan. 388, 83 P.2d 132 (1938) . . . . . 16

*Stone v. U.S.D. No. 222*,
278 Kan. 166, 91 P.3d 1194 (2004) . . . . . 16

**Treatises**

George C. Coggins and Robert L. Glicksman,
3 PUB. NAT. RESOURCES L. § 17:49 (2006) . . . . . 3

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

## I. QUESTION PRESENTED

Under RCFC 23 and *Quinault Allottee Ass'n v. United States*, should this Court certify an opt-in class of all property owners with fee-simple title to the land underlying the railroad right-of-way along a 9.78-mile stretch of the Burlington Northern & Santa Fe Railroad line from milepost 504.05 (at Hydraulic Ave., Wichita, Kansas) to milepost 494.22 (at 159th St. East, the Sedgwick County/Butler County, Kansas, line) that has been railbanked and converted to trail use under The National Trails System Improvement Act of 1983, 16 U.S.C. § 1247(d), without just compensation, where the Surface Transportation Board issued the Notice of Interim Trail Use; the trains and track are gone; Plaintiffs meet all *Quinault* factors; Plaintiffs sue under the same legal theory and seek the same remedy, as would all putative class members; class action would save time and money for all involved; and class action would provide the only fiscally-prudent means for those with small stakes to pursue their claims?

## II. STATEMENT OF THE CASE

Plaintiffs Robert and Diane Allison reside in their home on the east side of Wichita, Sedgwick County, Kansas, that sits on a suburban lot approximately 2.5 miles west of the Sedgwick/Butler County line and along and underlying the Burlington Northern & Santa Fe railroad ("BNSF") right-of-way – land now railbanked and slated for trail use under The National Trails System Improvement Act of 1983, 16 U.S.C. § 1247(d)("NTSA").[1] That right-of-way dates back to August 1879, when the St. Louis Wichita & Western Railway Company petitioned the Sedgwick County Commissioners to condemn the land that it needed for its railroad operations.[2] The St.

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[1] *See* Exh. **A-1** (Complaint. Mr. Cal McMillan and several others have joined this case since the Allisons filed their complaint.); Exh. **A-2** (16 U.S.C. § 1247(d)) and (49 C.F.R. § 1152.29).

[2] Exh. **B** (Original Condemnation report and conveyances, as recorded at the Sedgwick County (continued....)

Louis-San Francisco Railway Company bought the line shortly thereafter and merged with the Burlington Northern Railroad Company in 1980.[3] Burlington Northern merged with the Atchison, Topeka & Santa Fe Railway Company in 1995, becoming the BNSF.[4]

This case involves approximately 9.78 miles of the 16.91 total miles in this line, running easterly out of Wichita from milepost 504.05 at Hydraulic Avenue to milepost 494.22 at 159th Street East that forms the Sedgwick/Butler County line.[5] At 100 feet wide,[6] this band of land traverses Minneha[7] and Wichita[8] townships through industrial, commercial, urban residential, suburban, and agricultural properties.[9] Four hundred sixty-two (462) properties abut the right-of-way.[10] All 462 may not have a claim, however. From Oliver Avenue[11] easterly to milepost 494.22 at the county line, the right-of-way runs through the northernmost 100 feet of only the southern quarter sections.[12] As well, via subsequent warranty deeds, in two quarter sections the railroad took the right-of-way

---

[2](...continued)
Register of Deeds at Book U, page 260; valuation sheets, as archived at the National Archives near Washington, D.C.).

[3] Exh. **C** (DOJ000101-104).

[4] *Id.*

[5] Exh. **D-1** (*BNSF Ry. Co. – Abandonment Exemption – in Sedgwick County, KS*, STB No. AB-6 (Sub-No. 403X), 2005 WL 1103432 (STB, May 9, 2005)); for further history, *see* Exh. **D-2** (*BNSF Ry. Co. – Abandonment Exemption – in Sedgwick County, KS*, STB No. AB-6 (Sub-No. 403X), 2003 WL 1605972 (STB, March 28, 2003)).

[6] Exh. **B** (Condemnation deeds).

[7] Exh. **E** (Quarter-Section Maps)(Sections 11, 12, 14-16, Township 27 South, Range 1 East)(to be abbreviated as, *e.g.*, S11-T27S-R1E).

[8] *Id.* (Sections 7-12 Township 27 South, Range 2 East)(S7-12-T27S-R2E).

[9] Exh. **F** (Color maps).

[10] Exh. **G** (Affidavit, Larry D. Toomey, Esq.).

[11] Exh. **E** (Quarter-Section Maps)(Oliver Ave. on map WI-48, SW4-S12-T27S-R1E).

[12] Exh. **B** (Condemnation deeds). *See* Exh. **H** (Affidavit, Deborah B. McIlhenny, Esq.). *See also* *Energy Transportation Sys. v. Union Pac. R.R. Co.*, 456 F. Supp. 154, 166 (D. Kan. 1978)(noting that easement usually goes with abutting subdivision even though not expressed in conveyance).

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

by fee: SW4-S9-T27S-R2E and SE4-S8-T27S-R2E.[13] Trains and tracks are long gone.

On 22 April 2003, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU")[14] that culminated in railbanking and a contract for trail use with the City of Wichita along the entire 9.78-mile stretch.[15] The government did not compensate the abutting landowners for the right-of-way's new use. Having become aware of their rights and completing their initial investigation, Plaintiffs[16] filed suit on 13 September 2005, alleging an unconstitutional taking of their property – an uncompensated, additional burden imposed on their property unrelated to railroad use – and seeking just compensation.[17] And the Allisons do not suffer alone. All property owners who own fee-simple title to the land underlying the right-of-way have suffered the same injury. Consequently, Plaintiffs ask the Court to exercise its broad discretion to certify an opt-in class of these property owners who may be entitled to compensation under the Fifth Amendment in order "to aid speedier and less repetitious litigation,"[18] which should further the interests of justice.[19] Accordingly, Plaintiffs offer the following arguments in this Rails-to-Trails case.

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

[13] Exh. **I** (Warranty Deeds)(Book T, pages 153 and 191); *see* Exh. **E** for quarter sections.

[14] Issuing the NITU triggered the cause of action. *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004). *See* Exh. **J** (*BNSF Ry. Co. – Abandonment Exemption – in Sedgwick County, KS*, STB No. AB-6 (Sub-No. 403X), 2003 WL 1909276 (STB, Apr. 22, 2003)(NITU)).

[15] "Railbanking is shorthand for the notion that preservation of unused rights-of-way will allow resumption of rail service on that route if later needed." George C. Coggins and Robert L. Glicksman, 3 PUB. NAT. RESOURCES L. § 17:49 (2006). *See* Exh. **J**; *and see* Exh. **D-1** (*BNSF Ry. Co. – Abandonment Exemption – in Sedgwick County, KS*, STB No. AB-6 (Sub-No. 403X), 2005 WL 1103432 (STB May 9, 2005)). *See* Exh. **K** (Contract with Wichita). *See also Glosemeyer v. United States*, 45 Fed. Cl. 771, 773, 780-81 (2000)(finding that railbanking is not consistent with railroad use and that "involuntary trail use" amounts to taking a new and compensable easement).

[16] Cal McMillan and several others joined up after the Allisons filed suit.

[17] *See Toews v. United States*, 53 Fed. Cl. 58, 62-63 (2002)(finding that linear park that results when right-of-way is made into trail is not a railroad purpose but a compensable new burden).

[18] *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272, 1274 (1972).

[19] *Taylor v. United States*, 41 Fed. Cl. 440, 444-45 (1998).

## III. ARGUMENTS

### A. OPT-IN CLASS ACTION IS APPROPRIATE IN RAILS-TO-TRAILS CASES.

Class actions are "the exception to the usual rule" that the named party brings litigation only for himself.[20] By no means disfavored,[21] as some might argue, "class actions "promote good litigation management by balancing among . . . a variety of competing interests, including time, efficiency, cost, and the right of individual claimants to file complaints to redress perceived wrongs, preventing a multiplicity of suits based on a common wrong to all."[22] No stranger to class actions, this Court rewrote its Rule of Court of Federal Claims ("RCFC") 23 in 2002,[23] patterning it after the comparable federal rule, Federal Rule of Civil Procedure ("FRCP") 23.[24] While both rules are similar in "language and effect, . . . some differences exist."[25] Namely, RCFC 23 allows only opt-in classes and provides only for money damages, unlike FRCP 23 that allows opt-out classes and provides for injunctive relief.[26]

Using its broad discretion[27] this Court has found opt-in class action to be appropriate in Rails-to-Trails cases.[28] To justify class certification under RCFC 23, Plaintiffs must meet the threshold requirements under RCFC 23(a) and establish that the class is maintainable under RCFC 23(b). The

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

20 *Barnes v. United States*, 68 Fed. Cl. 492, 493-94 (2005)(*quoting General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982)).

21 *Id.* at 501 (*citing Taylor*, at 444 ("there appears to be no basis for stating that class actions are 'generally disfavored' and should be used only in 'rare and extraordinary cases.'").

22 *Berkley v. United States*, 45 Fed. Cl. 224, 226 (1999).

23 Exh. **L** (RCFC 23).

24 *Fisher v. United States*, 69 Fed. Cl. 193, 196 (2006). *See* Exh. **M** (FRCP 23).

25 *Fisher*, at 196.

26 *Id.* (injunctive relief at FRCP 23(b)(2)).

27 *Abrams v. United States*, 57 Fed. Cl. 439, 440 (2003).

28 *See Donham v. United States*, Slip copy, No. 04-1514L (July 14, 2005)(Exh. **N**); *Hubbert v. United States*, 58 Fed. Cl. 613 (2003); *Moore v. United States*, 41 Fed. Cl. 394 (1998).

Rule reads, in pertinent part:

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representatives will fairly and adequately protect the interests of the class.
>
> (b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the United States has acted or refused to act on grounds generally applicable to the class; and (2) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.[29]

The above-listed factors of RCFC 23(a) and (b) fit summarily into five categories:

> (i) **numerosity** – a class so large that joinder is impracticable; (ii) **commonality** – in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) **typicality** – that the named parties' claims are typical of the class; (iv) **adequacy** – relating to fair representation; and (v) **superiority** – that a class action is the fairest and most efficient way to resolve a given set of controversies.[30]

And, as with the federal rule, Plaintiffs must show them all.[31]

A cursory case-law review bears out that, even though class action factors seem pigeon-holed, they interrelate and overlap. Few cases interpret the recently rewritten RCFC 23. Thus, where the Court needs guidance to interpret RCFC 23, it may look to decisions construing the federal

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316 688.1166
316 686.1077 (*fax*)
www.huttonlaw.com

---

[29] RCFC 23(a) and (b)(Exh **L**).

[30] *Barnes*, at 494.

[31] *Id.* (*citing Falcon*, 457 U.S. at 161).

rule because the two are similar.[32] As an explanatory measure, RCFC 23 adopted "in the main," and this Court accordingly applies, the eight-factor "criteria for certifying and maintaining a class action set forth in *Quinault Allottee Ass'n v. United States*.[33] Those factors are:

> (i) the class must be large, but manageable; (ii) there must be a question of law common to the whole class; (iii) the common question of law must predominate over any separate factual issues affecting individual class members; (iv) the claims of named plaintiffs must be typical of the class; (v) the United States must have acted on grounds generally applicable to the whole class; (vi) the claims of many [class members] must be so small that, absent class action, class members probably would not pursue their claims; (vii) the current plaintiffs must adequately and fairly protect the interests of the class without conflicts of interest; and (viii) the prosecution of individual lawsuits must create a risk of inconsistent or varying adjudications.[34]

That said, RCFC 23 "implicates factors not found in *Quinault*, *e.g.*, whether 'joinder of all members is impracticable,' while in others, *Quinault* imposes conditions not found in RCFC 23, *e.g.*, that there must be a common legal question that joins the class."[35] Where the *Quinault* factors and RCFC 23 conflict, RCFC 23 controls.[36]

The objective of class action, be it under RCFC or FRCP 23, is to enable judicial economy and to provide access to the legal system.[37] Obviously, meeting those objectives serves the interests of justice. To that end, we ask the Court to exercise its broad discretion to certify this class.

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

## B. <u>PLAINTIFFS SATISFY ALL THRESHOLD REQUIREMENTS UNDER</u>

---

[32] *Id.* at 494 n.1.

[33] 453 F.2d 1272 (1972).

[34] *Quinault*, 453 F.2d at 1276. Factor (viii) no longer applies, as all appeals of money judgments from this Court or any U.S. district court rise to the Federal Circuit. *See Wolfchild v. United States*, 62 Fed. Cl. 521, 554 (2004); *Berkley*, at 234; *Taylor*, at 447; *Moore*, 41 Fed. Cl. at 400.

[35] *Barnes*, at 495.

[36] *Fisher*, at 197 n. 5; *Barnes*, at 495;

[37] FRCP Rules Advisory Committee Notes to 1966 Amendments, 39 F.R.D. 69, 102-03 (1966); *Phillips Pet. Co. v. Shutts*, 472 U.S. 797, 809 (1985)(oil/gas royalties); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 158, 161 (1974)(antitrust); *Deposit Guarantee Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)(usurious credit card fees).

**RCFC 23(a) AND *QUINAULT* FACTORS, (i), (ii), (iv) AND (vii).**

Here, Plaintiffs meet RCFC 23(a) prerequisites and *Quinault* factors (i), (ii), (iv), and (vii).

1. **Under RCFC 23(a)(1) And *Quinault* Factor (i), Class Members Constitute A Large But Manageable Class For Which Joinder Would Be Impracticable.**

Plaintiffs must, and do, present a (a) large, (b) manageable class (c) for which joinder would be impracticable.[38]

a. **This class of several hundred is sufficiently large.**

The Court has discretion to determine on a case-by-case basis what number is sufficiently large to justify class certification.[39] Class sizes vary greatly, from as few as 30 landowners in a Rails-to-Trails case[40] to as many as 1595 military officers in a reduction-in-force challenge.[41]

Here, initial investigation using tax records alone indicated that there are 462 potential claimants. Further investigation using the valuation sheets,[42] the granting deeds,[43] and public information available online from Sedgwick County, confirmed that number and the fact that several landowners live outside Kansas. While certainly not the largest potential class that this Court has seen, it falls easily within the numbers in other certified Rails-to-Trails cases and appears sufficiently large to justify class certification here.[44]

b. **Although large, this class with readily-identifiable members all**

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

38 *Quinault*, at 1276 (large and manageable); RCFC 23(a)(1)(impracticable).

39 *Taylor*, at 445.

40 *See Hubbert* (actual landowners); *see also Moore* (200 miles right-of-way; 2000 potential claimants, 298 actual); *Donham* (15 miles right-of-way; 135 potential claimants; 47 actual).

41 *See Berkley* (potential eligible military officers).

42 Opposing counsel kindly provided the valuation sheets.

43 We located all granting deeds for the entire 9.78 miles of right-of-way and provided them to opposing counsel.

44 *See* note 40.

**making the same claim is manageable.**

This class would be manageable because many members are readily identifiable and easily reachable.[45] Plaintiffs need not identify all potential members with certainty, but target the "general pool of potential class members which places the initial burden on specific members to self-identify."[46] Here, a large proportion of the members are readily identifiable through tax records, making them easily reachable with specific notice. For those who are not readily identifiable or easily reachable, the Court can approve general notice through publication.[47]

As well, because each putative class member seeks recovery under the same legal theory – just compensation under the Fifth Amendment for the unconstitutional taking of their property for trail use under the NTSA – the putative class members collectively suffer very few factual distinctions that would undermine manageability of the class.[48]

c. **Joinder of this class with likely unprofitable individual claims would be impracticable.**

Under RCFC 23(a)(1) we must show that joinder would be impracticable, a showing necessarily dependent on the circumstances of the case.[49] This factor speaks to access to the legal system and judicial economy.[50] Judicial economy exists in a case that avoids a multiplicity of actions and provides efficient access to court for plaintiffs with slight resources and those who are dispersed

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

[45] *Taylor*, at 445; *Moore*, 41 Fed. Cl. at 397.

[46] *Favreau v. United States*, 48 Fed. Cl. 774, 777 (2000).

[47] *Id.*

[48] *Taylor*, at 445; *Moore*, 41 Fed. Cl. at 397.

[49] *General Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 331 (1980).

[50] *See Roper*, at 338-39; *Phillips*, at 809; *Eisen*, at 161.

geographically.[51] The level of economy is measured against the cost of individual litigation.[52] Of greatest import, "[i]t is sufficient that the probable costs of litigation would render individual actions unprofitable . . . ."[53] For example, it may be "economically unfeasible" absent class action for claimants who have small claims to bring individual litigation.[54]

Here, many properties abutting the right-of-way are as narrow as 50 feet.[55] Individual recovery for those owners likely would be quite small and eaten-up with individual litigation costs, including appraisal fees, customary litigation expenses, and attorneys' fees. As a result, these small-stakes holders could not afford to vindicate their constitutional rights.[56] Class action, however, would reduce their costs by spreading them across the class, and, thereby, facilitate the private attorney general concept to vindicate their legal rights.[57] As well, at least 15 property owners live outside Kansas. Class action here would enable a single venue for these claimants rather then requiring them to bring multiple individual suits that would burden the Court unnecessarily.

Defendant may argue for permissive joinder, but, unlike here, "permissive joinder presupposes 'a group of economically powerful parties who are obviously able and willing to take

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[51] *See Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993).

[52] *Philadelphia Elec. Co. v. Anaconda Amer. Brass*, 43 F.R.D. 452, 463 (E.D. Pa. 1968)("I see no necessity in encumbering the judicial process with 25 lawsuits if one will do.")

[53] *Berkley*, at 229 (*quoting Cooke v. United States*, 1 Cl. Ct. 695, 697-98 (1983)).

[54] *Eisen*, at 158 ("A critical fact in this litigation is that petitioner's individual stake in the damages award that he seeks is only $70. No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit proceed as a class action or not at all.").

[55] *See* Exh. **E** (Quarter section maps).

[56] *Phillips*, at 809 (noting that plaintiffs with claims averaging $100 [in 1985 dollars] would have no "realistic day in court" absent class action); *Roper*, at 338-39; *Eisen*, at 158.

[57] *Roper*, at 338-39; *see also Robidoux*, at 936 ("Consolidating what could be more than 100 individual suits serves judicial economy.").

care of their own interests.'"[58] Here, many properties are small and residential, not suggesting "economically powerful parties" at all. And joinder in front of one judge under RCFC 40.2 is equally inappropriate. While the issued NITU arguably is the "same event" for all class members, there is no directly-related case because each class member is a separate party and has an interest in his own individual property.[59] As well, indirectly-related cases under RCFC 40.2(b) merely are coordinated amongst the judges to whom they are assigned,[60] suggesting a multitude of cases, far less efficient than one class action before one judge. Critically, "under this court's rules, there is no way, other than class action, to ensure the consolidation of cases before a single judge that do not qualify as directly-related cases under RCFC 40.2(a)(1), as would be the case here."[61]

Most importantly, this Court has certified other Rails-to-Trails cases,[62] indicating that the possibility of joining as few as 135 potential claimants satisfies impracticability.[63] Here, several hundred may have claims. Thus, joinder would be impracticable.

2. **Under Both RCFC 23(a)(2) And *Quinault* Factors (ii), Questions Of Law Or Fact Are Common To The Class Where One Federal Action Affected All Members And The Government Raises Common Defenses Against Every Claimant.**

This "commonality" factor is met when the "lawsuit challenges a system-wide practice or

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

58 1 Alba Conte and Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §3:6 (2006) ("NEWBERG")(*citing* Donelan, *Prerequisites to a Class Action* under New Rule 23, 10 B.C. INDUS. & COM. L. Rev. 527, 531 (*citing* Frankel, *Amended Rule 23 from Judge's Point of View*, 32 ANTITRUST L.J. 295, 298 (1966)).

59 *See Franconia Assoc. v. United States*, 61 Fed. Cl. 335, 337 (2004)(severing joinder of property owners who received low interest loans from FmHA and alleged breach of contract).

60 *Id.*

61 *Barnes*, at 500 (*citing Franconia*, at 337).

62 *See* Exh. **N** (*Donham* Slip copy; 135 potential claimants, 47 actual); *see also Moore* (2000 potential claimants, 298 actual); *Hubbert* (30 actual).

63 Logically, a grant of class certification indicates that plaintiffs met the conjunctive factors under RCFC 23. *See Barnes*, at 494 (*citing Falcon*, 457 U.S. at 161).

policy that affects all of the putative class members."[64] As well, commonality exists "when there is one core legal question that is likely to have one common defense."[65] A core legal question is one that is essential to each class member's claim.[66] The Court should address these core legal questions first and separately from any factual differences involving damages[67] or class eligibility.[68] And logically so. A finding against Plaintiffs on the core legal questions would end the case; the Court would not have to reach factual differences of any sort.

Here, a system-wide policy exists – the NTSA – that prevented the common-law reverter at the point when the railroad ceased to use the right-of-way for a railroad purpose[69] and then affected each landowner indiscriminately when the STB issued the NITU.[70] All claimants present the same two core legal questions arising from application of that policy: (a) did converting the railroad right-of-way to trail use under the NTSA effect a taking that violates the Fifth Amendment and (b) is the taking compensable?[71] In response, the government likely will "present common defenses . . . (for example, that the railroad received a fee interest, that the railroad did not abandon the rights-of-way, and/or that the current use of the rights-of-way as an interim trail does not exceed the scope of the conveyance to the railroad.").[72] These common defenses justify class certification.[73] Thus, the Court should find commonality here and, moreover, that it predominates, *i.e.*, overrides any factual

HUTTON
& HUTTON
Law Firm, L.L.C

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

64 *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

65 *Berkley*, at 232; *Taylor*, at 446; *Moore*, 41 Fed. Cl. at 397-98. *See also Blackie v. Barrack*, 524 F.2d 891, 904 (9th Cir. 1975)(requiring that only one question be common to the class).

66 *Hannon v. United States*, 31 Fed. Cl. 98, 103 (1994).

67 *Berkley*, at 232 (*citing Taylor*, at 446 (*citing Moore*, 41 Fed. Cl. at 397-98)).

68 *See Taylor*, at 446.

69 This showing is required under RCFC 23(a)(2).

70 This showing is required under *Quinault*, prong (v). *See infra*.

71 *See Moore*, 41 Fed. Cl. at 398.

72 *Id.*

73 *Jenkins v. Raymark*, 782 F.2d 468, 472 (5th Cir. 1986).

differences in class-member eligibility or damage determinations, as discussed in §C.2., below.

**3. Under RCFC 23(a)(3) And *Quinault* Factor (iv), Plaintiffs' Claims Are Typical Of The Class' Claims Where Each Member Suffered Virtually The Same Injury And Seeks The Same Relief.**

This "requirement is not usually restrictive"[74] and the named Plaintiffs' claims do not have to be identical to those of the class.[75] Typicality exists where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."[76] Here, and as in *Moore*, we meet this prong because the present Plaintiffs hold in fee the land underlying the right-of-way, have sued under The Tucker Act, 16 U.S.C. § 1491(a), and seek just compensation under the Fifth Amendment.[77] So would each putative class member. Little could be more typical.

**4. Under RCFC 23(a)(4) And *Quinault* Factor (vii), Plaintiffs Will Protect Class Interests Fairly, Adequately, And Without Conflict Where All Members Seek The Same Relief Under The Same Legal Theory And Whose Counsel Are Unrelated To Any Member, Have Ample Experience With Complex And Land Litigation, And Apply Their Resources Here.**

"Adequacy" inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."[78] Named plaintiffs must "be part of the class and possess the same interest and suffer the same injury as the class members."[79] That said, they need not suffer identical injuries.[80] Nonetheless, Plaintiffs must answer two questions to determine legal adequacy: "(1) do

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[74] *Berkley*, at 232.

[75] *Barnes*, at 498.

[76] *Id.* (*quoting In re Drexel Burnham Lambert Group*, 960 F.2 285, 291 (2nd Cir. 1992)).

[77] *Moore*, 41 Fed. Cl. at 399. *See also*, *Berkley*, at 233.

[78] *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)(citation omitted).

[79] *Id.* (citation omitted).

[80] *Swisher v. United States*, 189 F.R.D. 638, 640-41 (D. Kan. 1999)(*citing Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 ( D. Kan. 1991) in a rails-to-trails case brought under The Little (continued...)

plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[81]

*Berkley* instructed that plaintiffs who seek the same resolution under the same legal theory will protect class interests fairly, adequately, and without conflict.[82] Here, the present Plaintiffs have sued under the Tucker Act, seeking just compensation for a Fifth Amendment violation. Every opt-in claimant would do the same. Under *Berkley*, then, Plaintiffs satisfy adequacy. Should the need arise later "to address potential differences among individual claimants' claims . . . , the court can then devise a mechanism to handle those issues, having already benefitted greatly by certifying the class, both in terms of time and funds expended by the parties and the court."[83]

As for counsel, there is no fixed standard by which to measure "vigorous" prosecution.[84] This Court has concluded, however, that plaintiffs' counsel demonstrate no likely conflict where, as here, they have no stake in the outcome of the case except for their fees, are not members of the class, and are not related to those who are.[85] Furthermore, counsel have many years of experience in complex and land litigation,[86] and have dedicated their resources to prosecute this case.[87] Accordingly, Plaintiffs and their counsel will represent the class fairly, adequately, and without

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[80](...continued)
Tucker Act, 28 U.S.C. § 1346).

[81] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)(citation omitted).

[82] *Berkley*, at 233. *See also, Taylor*, at 447.

[83] *Berkley*, at 234.

[84] *Hanlon*, at 1021.

[85] *Taylor*, at 447 (finding counsel adequate where they had no stake in the case and were not related to claimants).

[86] Exhs. **G** and **H** (Affidavits of Toomey and McIlhenny, respectively).

[87] Plaintiffs acknowledge that under RCFC 23(g), the Court may request further information bearing on counsels' resources and experience, should the Court so desire. *See Hanlon*, at 1021 (finding no conflict with unchallenged counsel who provided affidavits showing pertinent litigation experience).

conflict.

C. **PLAINTIFFS MEET THE REQUIREMENTS TO MAINTAIN THIS CASE AS A CLASS ACTION UNDER RCFC 23(b) AND *QUINAULT* FACTORS (iii), (v), AND (vi).**

Having met the threshold requirements under RCFC 23(a) and *Quinault* factors (i), (ii), (iv), and (vii), Plaintiffs show below that the Court may maintain this case as a class action under RCFC 23(b) and *Quinault* (iii), (v), and (vii), because (1) the United States acted on grounds generally applicable to the class as a whole, (2) common questions predominate over individual ones, and (3) class action is the superior means to litigate this case because many class members have small stakes that would not be profitable to pursue individually. Overall, class action would serve the interests of justice.

1. **Under RCFC 23(b)(1) And *Quinault* Factor (v), The United States Treated All Putative Class Members Equally When The STB Issued The NITU.**

The STB issues the NITU to enable the railroad and a potential trail operator to negotiate an agreement for railbanking/trail use.[88] The NITU permits the railroad to stop service and salvage its tracks and equipment, *inter alia*.[89] And the NITU process occurs without special consideration of any particular landowner abutting the right-of-way; instead, it affects all burdened landowners equally.[90] Here, the STB, the federal agency with jurisdiction, issued the NITU on 22 April 2003.[91] Thus, the government affected all burdened landowners equally and simultaneously.

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[88] 49 C.F.R. § 1152.29(d)(1).

[89] *Id.*

[90] *See Moore*, 41 Fed. Cl. at 400 (finding that NTSA singles out no putative class member from another).

[91] Exh. J (*BNSF Ry. Co. – Abandonment Exemption – in Sedgwick County, KS*, STB No. AB-6 (Sub-No. 403X), 2003 WL 1909276 (STB, Apr. 22, 2003)). *See also Presault v. United States*, 100 F.3d 1525, 1537 (Fed. Cir. 1996)(government controls railroads).

2. **<u>Under RCFC 23(b)(2) And *Quinault* Factor (iii), The Questions Of Law Or Fact Common To The Class Predominate Over, *i.e.*, Override, Any Individual Issues.</u>**

As noted in Section B.2., above, every putative class member must establish core legal questions involving the existence of a taking and its compensability. It is axiomatic that to do so Plaintiffs will have to establish property interests – their ownership and what the railroad took[92]– as well as damages from the new burden.[93] "The nature of the retained property interests are, in turn, a function of state law and the language of the conveyance to the railroad."[94] While seemingly very individual, those ownership interests are straight-forward and simple to determine, and damages are formulaic. As a result, neither undermines predominance here.

a. **<u>Ownership issues are simple and straight-forward – a matter of document review.</u>**

Under Kansas law and in practical terms, deciding ownership issues could be little easier. Plaintiffs' counsel scoured both the Sedgwick County Register of Deeds and the City of Wichita records, and located the original granting deeds for every property along the right-of-way.[95] All the original granting deeds (17 pages) for the entire tract (20 quarter sections) were by condemnation with the limits of "right-of-way" to "construct its Railway," dated August 1879.[96] There were two subsequent warranty deeds (2 pages) in fee-simple for only two quarter sections, dated February 1880.[97] Under Kansas law, the railroad took only an easement on all but the two quarter sections

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

92 *See Moore*, 41 Fed. Cl. at 397.

93 *Banner v. United States*, 38 Fed. Cl. 700, 704 (1997).

94 *Moore*, 41 Fed. Cl. at 397.

95 Exh. **G** and **H** (Affidavits of Toomey and McIlhenny, respectively).

96 Exh. **B** (Condemnation deeds).

97 Exh. **I** (Warranty Deeds).

taken in fee.[98] Thus, the corollary applies, that landowners along the right-of-way hold in fee the land over which the railroad took an easement.

This conclusion comports with well-established law. "For many years it has been the established law of this state that railroads receive easements only in strips taken as rights-of-way, regardless of whether they are taken by condemnation or deed. The rule is based on long-standing public policy."[99] That public policy disfavors permitting narrow strips of fee-simple ownership lacing through the countryside:

> The courts are generally agreed that when the long narrow strips of land taken from adjacent freehold for a highway, railroad right-of-way, or for other public purpose, are no longer used for such purpose, the full dominion over them returns to the holder of the underlying fee. . . . "The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older ones." This court has quoted this doctrine approvingly in *Barker v. Lashbrook*, 128 Kan. 595, 599.[100]

Thus, under Kansas law the railroad took only an easement, absent contrary proof, which Plaintiffs suggest does not exist. As such, determining the railroad's interest is a matter of reviewing 19 pages of granting deeds, hardly an overwhelming process. And if the government would be willing to

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316 688 1166
316 686 1077 (*fax*)
www.huttonlaw.com

---

[98] *See Stone v. U.S.D. 222*, 278 Kan. 166, 180-81, 91 P.3d 1194 (2004); *State Highway Comm'n v. Puskarich*, 148 Kan. 388, 392, 83 P.2d 132 (1938)(noting that railroad took only an easement by condemnation); *Kansas Central Ry. Co. v. Allen*, 22 Kan. 285, 1879 WL 836, *5 (1879)(finding that railway got easement by condemnation and reversion remains in grantor when railroad purpose ends)(Exh. **O**); *Shawnee County Comm'rs v. Beckwith*, 10 Kan. 603, 1873 WL 699, *2 (1873)(noting that public gets only an easement when it takes land by condemnation)(Exh. **P**).

[99] *Harvest Queen Mill & Elevator Co. v. Sanders*, 189 Kan. 536, 643, 370 P.2d 419 (1962).

[100] *Federal Farm Mortgage Corp. v. Smith*, 149 Kan. 789, 793, 89 P.2d 838 (1939). *See also, Shell Pet. Corp. v. Hollow*, 70 F.2d 811 (10th Cir. 1934)(holding that where grantor previously conveyed by warranty deed land for specific purpose and with reverter provision, under Kansas law the subsequent conveyance passed title to the servient estate).

stipulate to the interest that those pages evidence, the process would all but disappear.

Regarding each claimant's interest, as done in *Donham* and *Moore*, we will provide an entry of appearance to evidence each claimant's intent to opt-in, accompanied by conveyance and current ownership documents to establish each claimant's interest in the right-of-way. The government reviews these documents and challenges them if and where necessary, allowing us time to rebut. This proven process serves to highlight only those properties where a plaintiff's ownership may be in question. As a result, it enables ownership determination simply and quickly without undermining predominance.

**b. <u>Determining damages is formulaic, keyed off of appraisals</u>.**

Despite differences in the damages amounts amongst claimants, determining damages will not undermine predominance here.[101] *Moore* established that damages in Rails-to-Trails cases are formulaic.[102] There, the parties identified various categories of properties that enabled Judge Bruggink to determine compensation for thirteen representative parcels with the intent that the parties apply those values to the remaining parcels. Both sides obtained expert valuations that included price per acre, before-and-after calculations, and, where market proof justified it, severance damages. Judge Bruggink held that it was proper to value the land under the easement at the full value of and at the same "highest and best use" as the adjoining land, rather than valuing the easement land separately according to highest and best use as a corridor.[103] He held further that in the before-and-after calculation, "after" amounts to zero – 100% diminution – because the

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[101] *See Taylor*, at 446; *Berkley*, at 232; *and see Moore v. United States*, 54 Fed. Cl. 747 (2002).
[102] 54 Fed. Cl. 747, generally.
[103] *Id.* at 750.

landowners lose effective remaining use of the land underlying the easement.[104]

There is no reason here to deviate from *Moore*'s guidance. As were the properties diverse in *Moore*, so are they here. The railroad right-of-way runs through commercial, industrial, residential, suburban, and agricultural land. The parties can identify representative parcels, obtain expert valuations for them so that the Court can determine proper compensation for each group, and apply the results to the remaining properties. Thus, damages and their calculations become appropriately formulaic, without undermining predominance of the core legal questions and defenses here. Some might argue for test cases, consolidated cases, or permissive joinder. But this Court "favors the efficiency inherent in a class action approach."[105] It makes especially good sense here where the factual differences are slight, the legal questions predominate, and Plaintiffs are quite willing to use the Court's ADR program to resolve disputed issues.

3. **Under RCFC 23(b)(2) And *Quinault* Factor (vi), Class Action Is The Superior, If Not The Only, Method For The Fair And Efficient Adjudication Of This Case.**

Under RCFC 23 "superiority" speaks to management and the means to "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."[106] It inquires as to (a) individual member interest to control the litigation, (b) existing cases that class members have already filed, and (c) class action management difficulties.[107] Superiority exists where class-wide

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[104] *Id.* at 751.

[105] *Taylor*, at 447.

[106] *Barnes*, at 499 (*quoting* FRCP 23 advisory committee note to 1966 amendment, subdivision (b)(3)).

[107] Exh. **L** (RCFC 23(b)(2)).

litigation reduces litigation costs and promotes efficiency or if no real alternative exists.[108] Under *Quinault*, superiority focuses on equitable matters that would serve best the interests of justice.[109] Under both, superiority is a cost-benefit analysis.[110] Here, it tips in favor of class action.

**a. Individual control of litigation is not an issue in this case where a large number of claims are small.**

Many landowners may have claims so small that they may not be worth pursuing absent this class. Although each person may like to control individual litigation, "those interests may be no more than theoretic where the individual stake is so small as to make a separate action impracticable."[111] We know that "[t]here is no magic number below which claims are automatically small enough or above which class certification would be inappropriate."[112] So, the relevant question is, "would the class members pursue their individual claims if the class were not certified?"[113] Some might, but most claims here would be too small to justify individual litigation. The quarter section maps show that the majority of properties are not large, some as narrow as 50-feet. On several larger properties the actual frontage is relatively short. A few properties are agricultural, a land group that traditionally has a lower price-per-acre than the other groups involved here. At the end of the day, litigation costs in the individual case might exceed damages to some of these properties. While we cannot pinpoint the damages to these properties at this early stage of litigation, under *Quinault* it is

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[108] *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1190, *amended and superceded on denial of rehearing*, 273 F.3d 1266 (9th Cir. 2001); *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3rd Cir. 1996), *aff'd sub nom.*, *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).

[109] *See Taylor*, at 447-48; *see also Moore*, 41 Fed. Cl. at 400.

[110] *Barnes*, at 499.

[111] *Berkley*, at 233 (*citing Amchem*, 521 U.S. at 616).

[112] *Favreau*, at 779 (finding potential recovery of $300-$20,000 insufficient to justify cost of individual litigation).

[113] *See Fisher*, at 205; *see also Taylor*, at 447 (less than $25,000 recovery potential).

"sufficient that the probable cost of litigation would render individual actions unprofitable . . . ."[114]

**b. No other cases exist.**

Notably, no other putative class member has filed an individual action, leading us to believe that, absent class action, few would entertain litigation.

**c. This class action will not be difficult to manage where class members are reasonably identifiable, ownership interests are a matter of simple review, this Court and federal district courts have presided over other Rails-to-Trails classes, and the Court's ADR program is available to help resolve disputes.**

"[I]t states the obvious to say that a court should not shy away from a class action simply because it will require more effort than an ordinary individual case."[115] While a class action may require more work than the individual case, here it should not be difficult. First, most of the putative class members are reasonably identifiable through tax records, enabling precise personal notice[116] to inform them of their possible rights to make a claim and their duties to opt-in to make that claim. Second, as *Moore* taught[117] and as we noted above, deciding ownership interests is quite simple by reviewing the granting deeds – all 19 pages of them – and opt-in documentation. Third, many claimants may have claims that are not worth pursuing individually. Denying them class certification would be the equivalent of refusing them their right to exercise their constitutional rights. Fourth, this Court and many federal district courts have successful experience with Rails-to-Trails class actions; the concept is hardly new. While there may be some benefit to having "more than one judge of this court consider[ ] a particular legal issue" in multiple individual cases, that

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[114] *Berkley*, at 229 (*quoting Cooke*, at 697-98).

[115] *Barnes*, at 500.

[116] The Court approves notice under RCFC 23.

[117] *Moore*, at 398-99 (discussing commonality and predominance; finding that ownership interests were straight-forward by reviewing only a sample of granting deeds (31 of them) in a rails-to-trails case with potentially 2000 claimants). Here, we have all the granting deeds, not just a sample.

value collapses under the high cost of "having hundreds or more of relatively small-dollar lawsuits sprinkled across this court's dockets."[118] Finally, this Court offers us a tremendous ADR program to help resolve disputes, should we need it, which helps streamline this Court's docket. Obviously, the balance favors class action here.

#### 4. **Overall, Class Action Would Serve The Interests Of Justice And Is The Right Thing To Do.**

Under *Quinault* class action must serve the interests of justice.[119] The interests of justice focus on equitable matters, such as finding the most efficient and expeditious means to proceed[120] and protecting claimants' rights under the statute of limitations,[121] among other things . . . in effect, doing what is right.

Here, the statute of limitations runs in April 2009. Obviously we did not file this case on the eve of the statute to protect claimants' rights. Thus, while class action is not necessary to protect the statute, it serves justice for other reasons. At the risk of repeating ourselves, we note them below.

Class action serves the interests of justice where plaintiffs are similarly situated with few factual differences amongst their claims.[122] Here, all Plaintiffs sue under the Tucker Act seeking just compensation for a Fifth Amendment violation that obtained when the government converted to trail use under the NTSA the railroad right-of-way burdening Plaintiffs' property held in fee-simple as controlled by principles of Kansas law.

Class action puts the burden on each claimant to self-identify, thereby establishing the precise

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[118] *Barnes*, at 500.
[119] *Taylor*, at 447-48.
[120] *Id.*
[121] *See Moore*, 41 Fed. Cl. at 400.
[122] *Taylor*, at 447.

class composition.[123]

Further, class action would streamline litigation and save everybody time and money. In cases seeking money judgments against the government, class action "aids speedier and less repetitious litigation."[124] Here, every claim would be only for money damages against the United States. Except for the amount of damages, every claimant would prosecute the same basic case, presenting same or similar indicia of ownership, outlining the same or similar facts regarding railroad operations, proffering the same precedent with which to answer the same core legal questions, producing expert testimony from appraisers for damages, and incurring same or similar expenses – such as for appraisals, surveys, copies, faxes, long distance telephone calls, travel, attorneys' fees, witness fees, and maps, just to name a few. These starkly similar individual cases would clog the Court. So it makes good sense here to streamline into one case what could amount to more than 100 individual same or similar cases that would cost the parties and the Court unnecessary time and expense for overlapping litigation. As the United States Supreme Court said,

> The class-action device was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."[125]

Finally, class action may be the only fiscally prudent way for many small-stakes claimants who have the constitutional right to compensation to seek that compensation.

By these measures, class action would serve the interests of justice.

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

---

[123] *Favreau*, at 780.

[124] *Quinault*, at 1274.

[125] *Berkley*, at 235 (*citing Falcon*, 457 U.S. at 155)(citation omitted; brackets in original)).

Put simply, it's the right thing to do.

## IV. CONCLUSION

Plaintiffs meet the elements of RCFC 23(a) and (b) and the factors under *Quinault*, and show that class action here would serve the interests of justice. Therefore, we ask respectfully that this Court grant our motion for class certification of an opt-in class of all property owners with fee-simple interests to the land underlying the BNSF railroad right-of-way from milepost 504.05 (at Hydraulic Ave., Wichita, KS) to milepost 494.22 (at 159th St. East, the Sedgwick County/Butler County line, KS), so that they might seek to right the government's wrong of converting their property from rails to trails under the NTSA without just compensation.

Dated: 28 March 2006

Humbly submitted,

s/ Deborah B. McIlhenny, Esq.

Deborah B. McIlhenny, KS #18721
Admitted to practice COFC, 10.01.2003
Mark B. Hutton, KS #10112
Admitted to practice COFC, 10.17.1990
HUTTON & HUTTON LAW FIRM, LLC
P.O.B. 638
8100 E. 22nd St. North, Building 1200
Wichita, KS 67201-0638
316.688.1166 (telephone)
316.686.1077 (fax)
Debs.McIlhenny@huttonlaw.com

*With*

Larry D. Toomey, KS #11959
Terry C. Pilgreen, KS # 09306
TOOMEY PILGREEN, LLC
O'Rourke Title Bldg., Second Floor
Wichita, KS 67202
316.264.3700 (telephone)
316.264.3898 (fax)

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E 22nd St N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

## CERTIFICATE OF SERVICE

I certify that today, **28 March 2006**, I mailed via U.S. Mail, postage prepaid a courtesy copy of the foregoing **Memorandum with Exhibits in Support of: Motion for Class Certification** to Honorable Thomas C. Wheeler, U.S. Court of Federal Claims, 717 Madison Place, N.W., Washington, DC 2005; and emailed a copy of the foregoing **Memorandum With Exhibits in Support of: Motion for Class Certification** to the Court of Federal Claims for filing under the ECF program that should provide electronic notice to the following counsel of record, to whom I also sent a courtesy copy by email:

Ms. HelenAnne Listerman, Esq.
Environmental and Natural Resources Division
Natural Resources Section
Ben Franklin Station
Department of Justice
P.O.B. 663
Washington, D.C. 20044-0663
202.305.0239 (telephone)
202.305.0506 (fax)
helenanne.listerman@usdoj.gov

Mr. G. Evan Pritchard, Esq.
Environmental and Natural Resources Division
Natural Resources Section
Department of Justice
601 D Street N.W., Room 3207
Washington, D.C. 20044
202.305.0203 (telephone)
202.305.0506 (fax)
g.evan.pritchard@usdoj.gov

s/ Deborah B. McIlhenny

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E 22nd St. N
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com