# EXHIBITS A-1 and A-2

RECEIVED
SEP 1 4 2005
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ROBERT AND DIANE ALLISON, individually and on behalf of all others similarly situated, | 05-992 |
| Plaintiffs, | Case No.: |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

EXHIBIT A-1

## CLASS ACTION COMPLAINT

Plaintiffs, ROBERT and DIANE ALLISON, individually and on behalf of all others similarly situated, bring this complaint against The United States of America, and for their cause allege the following:

## PARTIES

1. Plaintiffs ROBERT and DIANE ALLISON are adult residents of Sedgwick County, Kansas, and own in fee simple since before 1996 a residential parcel abutting the railroad right-of-way, described as 12420 E. Castlewood Circle, Bridgewood Addition, Wichita, Kansas, Sedgwick County Parcel ID # 112100410100900 (**Exh. A**).

## JURISDICTION AND VENUE

2. Jurisdiction and venue are proper in this Court under 28 U.S. C. § 1491(a)(1) and the Fifth Amendment to the United States Constitution.

## FACTS

3. Plaintiffs Allison own real property in fee simple abutting a railroad right-of-way that stretches 9.78 miles from between milepost 494.22 at 159th Street East that marks the Sedgwick

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (fax)
www.huttonlaw.com

County/Butler County line, to milepost 504.05 near Hydraulic Street, downtown Wichita, Kansas. The St. Louis Wichita and Western Railway Company and the Kansas Midland Railway Company originally acquired the typically 100-foot wide right-of-way from 1879 to 1887. Both companies later became the St. Louis-San Francisco Railway Company (SLSF). SLSF merged into the Burlington Northern Railroad Company (BNRC) in 1980. BNRC and the Atchison Topeka and Santa Fe Railway Company merged in 1995 to become Burlington Northern and Santa Fe Railway Company (BNSF), the most current operator. More than 100 land owners abut that 9.78-mile railroad right-of-way, joinder of whom would be impracticable. Common questions of law or fact exist amongst the land owners and each suffers same or similar injury.

5. The land in question is subject to a right-of-way easement established for railroad purposes only and may be used for railroad purposes only.

6. The National Trail System Act of 1983, 16 U.S.C. § 1247(d) ("NTSA"), allows conversion of easements established for railroad purposes to nature trails upon termination of the railroad's service obligations, and does not construe such conversion as a regulatory abandonment of the right-of-way. Here, the 9.78 mile segment is part of a 16.91 mile stretch that BNSF ceased to operate approximately by year end 2000. BNSF filed an abandonment exemption, and on 14 March 2003 the Surface Transportation Board authorized the exemption, including this 9.78 mile stretch of railroad. The City of Wichita filed a request for issuance of a Notice of Interim Trail Use (NITU) for this 9.78 mile stretch. In its 22 April 2003 decision, the STB issued that NITU that, after an amendment, subsequently culminated in a contract converting the railroad right-of-way to trail use on 24 March 2005.

7. Under Kansas law, the railroad right-of-way was extinguished, *i.e.*, legally abandoned, when the railroad ceased its railroad purpose. At that point the property interest in the right-of-way

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

reverted to the Plaintiffs and the additional land owners along the right-of-way. The conversion of that right-of-way to a trail under the NTSA preempted Plaintiffs' and the additional land owners' rights under state law and imposed an additional burden on the property.

8. The United States has neither condemned the right-of-way property nor paid the land owners for conversion.

**CLAIM FOR RELIEF**

9. The Fifth Amendment bars the government from taking private property without paying just compensation. As well, 28 U.S.C. § 1491(a) mandates relief to any person with a valid constitutional claim against the United States. Here, absent payment of just compensation, statutory conversion of the right-of-way property interest to trail use is an unconstitutional taking of the property rights of Plaintiffs and the additional land owners; imposes an additional burden on the property; and subjects the remaining property to total loss of privacy, trespass, and theft as a result of the proximity of the adjoining trail. Therefore, Plaintiffs and the additional land owners are entitled to just compensation.

**PRAYER**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray that this Court will enter judgment as follows:

1. Declare and certify this action as a proper class action and Plaintiffs as the proper class representatives;

2. Find, adjudge, and decree that the United States converted Plaintiffs' property;

3. Find, adjudge, and decree that that conversion was an unconstitutional taking that deprived Plaintiffs of their property without just compensation;

4. Find, adjudge, and decree that Plaintiffs are entitled to damages as determined at trial;

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316 688.1166
316 686.1077 (*fax*)
www.huttonlaw.com

5. Find, adjudge, and decree that Plaintiffs are entitled to recover their costs and fees according to law; and

6. Award such other and further relief as this Court may deem necessary, proper, and/or appropriate.

Dated: 13 September 2005.

Respectfully submitted,

Deborah B. McIlhenny, KS #18721,
Admitted to practice COFC, 10.01.2003
Mark B. Hutton, KS #10112
Admitted to practice COFC, 10.17.1990
HUTTON & HUTTON LAW FIRM, L.L.C.
P.O.B. 638
8100 E. 22nd St. North, Building 1200
Wichita, KS 67201-0638
316.688.1166 (telephone)
316.686.1077 (fax)
Debs.McIlhenny@huttonlaw.com

*With*

Larry D. Toomey, KS #11959
Terry C. Pilgreen, KS #09306
TOOMEY PILGREEN, L.L.C.
O'Rourke Title Bldg., Second Floor
229 E. William
Wichita, KS 67202
316.264.3700 (telephone)
316.264.3898 (fax)

HUTTON
& HUTTON
Law Firm, L.L.C.

Tallgrass Exec. Park
8100 E. 22nd St. N.
Building 1200
Wichita, Kansas
67226-2312

Mailing Address:
P.O. Box 638
Wichita, Kansas
67201-0638

316.688.1166
316.686.1077 (*fax*)
www.huttonlaw.com

EXHIBIT A

**A. SETTLEMENT STATEMENT** — U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

OMB No. 2502-0265

**B. TYPE OF LOAN**

| | | | |
|---|---|---|---|
| 1. ☐ FHA 2. ☐ FmHA 3. ☒ CONV.UNINS. 4. ☐ VA 5. ☐ CONV.INS. | 6. File Number: 960186 | 7. Loan Number: 3403651 | 8. Mortgage Insurance Case Number: |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | | |
|---|---|---|
| D. NAME AND ADDRESS OF BORROWER:<br>Robert D. Allison<br>Dianne Allison<br><br>12420 Castlewood Circle<br>Wichita, kansas 67206 | E. NAME AND ADDRESS OF SELLER/TAX I.D.No.:<br>Refinance | F. NAME AND ADDRESS OF LENDER:<br>Norwest Mortgage Inc.<br>8606 West 13th Street<br>Wichita, Kansas 67212 |
| G. PROPERTY LOCATION:<br>12420 Castlewood Circle<br>Wichita, Kansas 67206 | H. SETTLEMENT AGENT:<br>LAWYERS TITLE INSURANCE CORPORATION | |
| | PLACE OF SETTLEMENT:<br>P.O. Box 770<br>Wichita, Kansas 67201 | I. SETTLEMENT DATE:<br>07/23/96 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | [redacted] | 403. | |
| 104. Prairie State Bank Payoff | [redacted] | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes to | | 406. City/town taxes to | |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | [redacted] | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | [redacted] | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Application Deposit | [redacted] | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes to | | 510. City/town taxes to | |
| 211. County taxes to | | 511. County taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | [redacted] | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | [redacted] | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | [redacted] | 602. Less reductions in amount due seller (line 520) | |
| **303. CASH (☒ FROM) (☐ TO) BORROWER** | [redacted] | **603. CASH (☐ TO) (☐ FROM) SELLER** | |

Previous edition is obsolete.

HUD-1 (8-87)
RESPA, HB 4305.2

Sedgwick County, Kansas
Real Property Appraisal / Tax Information for

## 12420 E CASTLEWOOD CR

as of Tuesday, September 13, 2005

**Property Owner Name:** ALLISON, ROBERT D & DIANNE
**Legal Description:** LOT 9 BLOCK 1 CRESTVIEW COUNTRY CLUB ESTATES BRIDGEWOOD ADDITION
**Key Number:** C 52946 **Parcel Id:** 112100410100900
**Tax Unit:** 6723 WICHITA **2004 Mill Levy** 113.387
**School District:** USD 259 **Land Use:** SINGLE FAMILY

**Lot Square Feet:** 31813 **Year Built:** 1996 **Style:** Ranch **Exterior Walls:** Wood Frame
**No. of Bedrooms:** 3

**Living Area Square Feet:** 1716 **Value Per Sq Ft:** $103.44
**Lower Level Finished Area:** **Basement Finished Area:** 0

**2004 General Tax:** $2268.57
**2004 Special Tax:** $3.06
**2004 TOTAL TAX:** $2271.63

**Appraisal and Assessment Values**
Values reflect current year plus previous two years if available.

| Appraisal Value | | | | |
|---|---|---|---|---|
| Year | Class | Land | Improvements | Total |
| 2005 | RESIDENTIAL URBAN | $34200 | $143300 | $177500 |
| 2004 | RESIDENTIAL URBAN | $34200 | $143300 | $177500 |
| 2003 | RESIDENTIAL URBAN | $34200 | $138100 | $172300 |
| **Assessment Value** | | | | |
| Year | Class | Land | Improvements | Total |
| 2005 | RESIDENTIAL URBAN | $3933 | $16479 | $20412 |
| 2004 | RESIDENTIAL URBAN | $3933 | $16479 | $20412 |
| 2003 | RESIDENTIAL URBAN | $3933 | $15881 | $19814 |

**2005 Special Tax**

| Specials Breakdown | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code | | | Cert # | Description | 2005 Payment | 2005 Thru Payout | Beg Yr | End Yr |

| | Principal | + | Interest | = | TOTAL |
|---|---|---|---|---|---|
| Total Specials Due for 2005 | $0 | | $0 | | $0 |

Disclaimer: The value per square foot is the total appraised value divided by the square foot living area. When comparing this figure with other properties please be mindful of differences in physical characteristics (like basement finish, detached structures, and lot size.)

Thank you for using the Sedgwick County Tax and Appraisal web application The purpose of this report is to allow Sedgwick County property owners the ability to check both the Tax information and Appraisal value of their property.

If you have questions about your property in regards to the valuation and/or taxes and how to appeal them, please call the Appraiser's Information & Assistance Line at (316) 660-9250

This report is not intended to be used as a commercial service for the purpose of profit. If you wish to obtain more detailed property information, please contact Cindy Etter or visit the Subscriber Access Network Web Site.

Cindy Etter
Subscriber Access Consultant
538 N. Main
Wichita, KS 67203
(316) 660-9860
cetter@sedgwick.gov

The RIGHTs to view this information are in compliance with Kansas statutes that address access to public records granted to the Department of Information and Operations by the governmental entity responsible for the individual databases being accessed. Sedgwick County Division of Information and Operations cannot accept responsibility for the timeliness nor the accuracy of any data being provided via the Internet.

<<Back | Print this page


CONTINENTAL PIPELINE CO EASEMENT
127 th. STREET
50' BUILDING SETBACK
TALLOWOOD DRIVE
CASTLEWOOD COURT
DRIVE
RESERVE A FLOODWAY
1.37 AC
FLOODWAY RESERVE A
CASTLEWOOD
CASTLEWOOD COURT
CASTLEWOOD CIRCLE
20' UTILITY EASEMENT
10' UTILITY EASEMENT
20' DRAINAGE EASEMENT
35' BLDG. SETBACK

# 12420 Castlewood Cir.



# Bridgewood Addition







Sedgwick County http://www.sedgwickcounty.org/gis

**Sedgwick County Geographic Information Services**

525 N. Main, Suite 212, Wichita, KS 67203
316.383.7455

## DISCLAIMER

### Please Read Carefully

It is understood that, while Sedgwick County Geographic Information Services (SCGIS), participating agencies, and information suppliers, have no indication and reason to believe that there are inaccuracies in information provided, SCGIS and its suppliers make no representations of any kind, including, but not limited to, warranties of merchantability or fitness for a particular use, nor are any such warranties to be implied with respect to the information, data or service furnished herein

In no event shall SCGIS become liable to users of these data, or any other party, for any loss or damages, consequential or otherwise, including but not limited to time, money, or goodwill, arising from the use, operation or modification of the data In using these data, users further agrees to indemnify, defend, and hold harmless SCGIS for any and all liability of any nature arising out of or resulting from the lack of accuracy or correctness of the data, or the use of the data.

No person shall sell, give or receive for the purpose of selling or offering for sale, any portion of the data provided herein.

EXHIBIT
A - 2

Effective: [See Text Amendments]

UNITED STATES CODE ANNOTATED
TITLE 16. CONSERVATION
**CHAPTER 27--NATIONAL TRAILS SYSTEM**
**§ 1247. State and local area recreation and historic trails**

(a) Secretary of the Interior to encourage States, political subdivisions, and private interests; financial assistance for State and local projects

The Secretary of the Interior is directed to encourage States to consider, in their comprehensive statewide outdoor recreation plans and proposals for financial assistance for State and local projects submitted pursuant to the Land and Water Conservation Fund Act [16 U.S.C.A. § 460l-4 et seq.], needs and opportunities for establishing park, forest, and other recreation and historic trails on lands owned or administered by States, and recreation and historic trails on lands in or near urban areas. The Secretary is also directed to encourage States to consider, in their comprehensive statewide historic preservation plans and proposals for financial assistance for State, local, and private projects submitted pursuant to the Act of October 15, 1966 (80 Stat. 915), as amended [16 U.S.C.A. § 470 et seq.], needs and opportunities for establishing historic trails. He is further directed, in accordance with the authority contained in the Act of May 28, 1963 (77 Stat. 49) [16 U.S.C.A. § 460l et seq.], to encourage States, political subdivisions, and private interests, including nonprofit organizations, to establish such trails.

(b) Secretary of Housing and Urban Development to encourage metropolitan and other urban areas; administrative and financial assistance in connection with recreation and transportation planning; administration of urban open-space program

The Secretary of Housing and Urban Development is directed, in administering the program of comprehensive urban planning and assistance under section 701 of the Housing Act of 1954 [40 U.S.C.A. § 461], to encourage the planning of recreation trails in connection with the recreation and transportation planning for metropolitan and other urban areas. He is further directed, in administering the urban open-space program under title VII of the Housing Act of 1961 [42 U.S.C.A. § 1500 et seq.], to encourage such recreation trails.

(c) Secretary of Agriculture to encourage States, local agencies, and private interests

The Secretary of Agriculture is directed, in accordance with authority vested in him, to encourage States and local agencies and private interests to establish such trails.

(d) Interim use of railroad rights-of-way

The Secretary of Transportation, the Chairman of the Surface Transportation Board, and the Secretary of the Interior, in administering the Railroad Revitalization and Regulatory Reform Act of 1976 [45 U.S.C.A. § 801 et seq.], shall encourage State and local agencies and private interests to establish appropriate trails using the provisions of such programs. Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

(e) Designation and marking of trails; approval of Secretary of the Interior

Such trails may be designated and suitably marked as parts of the nationwide system of trails by the States, their political subdivisions, or other appropriate administering agencies with the approval of the Secretary of the Interior.

CREDIT(S)

(Pub.L. 90-543, § 8, Oct. 2, 1968, 82 Stat. 925; Pub.L. 95-625, Title V, § 551(22), Nov. 10, 1978, 92 Stat. 3516; Pub.L. 98-11, Title II, § 208, Mar. 28, 1983, 97 Stat. 48; Pub.L. 104-88, Title III, § 317(1), Dec. 29, 1995, 109 Stat. 949.)

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1968 Acts. House Report No. 1631, see 1968 U.S. Code Cong. and Adm. News, p. 3855.

1983 Acts. House Report No. 98-28, see 1983 U.S. Code Cong. and Adm. News, p. 112.

1995 Acts. House Report No. 104-311 and House Conference Report No. 104-422, see 1995 U.S. Code Cong. and Adm. News, p. 793.

References in Text

The Land and Water Conservation Fund Act, referred to in subsec. (a), is Pub.L. 88-578, Sept. 3, 1964, 78 Stat. 897, as amended, which is classified generally to section 460l-4 et seq. of this title. For classification in the Code, see Short Title note set out under section 460l-4 of this title and Tables.

Act of October 15, 1966, referred to in subsec. (a), is Pub.L. 89-665, as amended, popularly known as the "National Historic Preservation Act" which is classified generally to subchapter II (section 470 et seq.) of chapter 1A of this title. For complete classification of this Act to the Code, see section 470 of this title and Tables volume.

Act of May 28, 1963, referred to in subsec. (a), is Pub.L. 88-29, May 28, 1963, 77 Stat. 49, which is classified generally to section 460l et seq. of this title. For complete classification of this Act to the Code, see Tables volume.

Section 461 of Title 40, referred to in subsec. (b), was repealed by Pub.L. 97-35, Title III, § 313(b), Aug. 13, 1981, 95

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Stat. 398.

The Housing Act of 1961, referred to in subsec. (b), is Pub.L. 87-70, June 30, 1961, 75 Stat. 149, as amended. Title VII of the Housing Act of 1961 was classified generally to chapter 8C (section 1500 et seq.) of Title 42, The Public Health and Welfare, and was omitted from the Code pursuant to section 5316 of Title 42 which terminated authority to make grants or loans under such Title VII after Jan. 1, 1975. For complete classification of this Act to the Code, see Short Title note set out under section 1701 of Title 12, Banks and Banking, and Tables volume.

The Railroad Revitalization and Regulatory Reform Act of 1976, referred to in subsec. (d), is Pub. L. 94-210, Feb. 5, 1976, 90 Stat. 31, as amended. For complete classification of this Act to the Code, see Short Title note set out under section 801 of Title 45, Railroads, and Tables volume.

Amendments

1995 Amendments. Subsec. (d). Pub.L. 104-88, § 317(1), substituted "Chairman of the Surface Transportation Board" for "Chairman of the Interstate Commerce Commission" and "Board" for "Commission".

1983 Amendments. Subsec. (d). Pub. L. 98-11, § 208(2), added subsec. (d). Former subsec. (d) was redesignated (e).

Subsec. (e). Pub. L. 98-11, § 208(1), redesignated former subsec. (d) as (e).

1978 Amendments. Subsec. (a). Pub.L. 95-625 inserted in first sentence "and historic" following "establishing park, forest, and other recreation" and following "administered by States, and recreation" and directed the Secretary to encourage States to consider in their plans and proposals needs and opportunities for establishing historic trails.

Effective and Applicability Provisions

1995 Acts. Amendment of this section by section 317(1) of Pub.L. 104-88 effective Jan. 1, 1996, see section 2 of Pub.L. 104-88, set out as a note under section 701 of Title 49, Transportation.

CODE OF FEDERAL REGULATIONS

Abandonment and discontinuance of rail transportation, see 49 CFR § 1152.1 et seq.

Guidelines for implementation of environmental policy, railroads, see 49 CFR § 1105.1 et seq.

LAW REVIEW COMMENTARIES

Beyond 16 U.S.C. § 1247(d): The scope of congress' power to preserve railroad rights-of-way. Note, 18 Hastings Const.L.Q. 907 (1991).

Constitutionality of rails-to-trails conversions under the National Trails Systems Act Amendments of 1983: *Preseault v. ICC.* Note and Comment, 26 Tulsa L.J. 295 (1990).

Does the Rails-to-Trails Act effect a taking of property? Richard A. Allen, 31 Transp. L.J. 35 (2003).

Use of discontinued railroad rights-of-way as recreational hiking and biking trails: Does the National Trails System Act sanction takings? Comment, 33 St.Louis U.L.J. 205 (1988).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LIBRARY REFERENCES

American Digest System

Woods and Forests ⚷5, 8.

Key Number System Topic No. 411.

Corpus Juris Secundum

CJS Carriers § 46, Use of Railroad Rights-Of-Way as Trails.

CJS Railroads § 763, Conversion of Railroad Rights-Of-Way Into Recreational Trails.

RESEARCH REFERENCES

ALR Library

95 ALR 2nd 468, What Constitutes Abandonment of a Railroad Right of Way.

Encyclopedias

38 Am. Jur. Proof of Facts 2d 633, Dedication of Land to Public Use.

2 Am. Jur. Proof of Facts 3d 197, Establishment of Public Prescriptive Easement.

53 Am. Jur. Proof of Facts 3d 519, Proof of Intent to Abandon Easement.

Am. Jur. 2d Eminent Domain II B REF, Divisional References.

26 Am. Jur. 2d Eminent Domain § 207, Additional Uses of Railroad Right-Of-Way.

Am. Jur. 2d Federal Courts § 2273, Generally.

Forms

Federal Procedural Forms § 56:59, Contents of Protest or Comment.

Federal Procedural Forms § 56:70, Notice of Intent to Abandon or Discontinue Rail Service (49 C.F.R. § 1152.21).

Federal Procedural Forms § 13:145, Particular Actions.

Treatises and Practice Aids

Federal Procedure, Lawyers Edition § 67:113, Administrative Appeals, Generally.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Norton Bankruptcy Law and Practice 2d § 137:14, Abandonment of Railroad Line.

Wright & Miller: Federal Prac. & Proc. § 3722, Cases Based on the Existence of a Federal Question.

NOTES OF DECISIONS

**Abandonment 6**
**Abstention 14**
**Constitutionality 1**
**Easements 7a**
**Environmental effects 8**
**Exhaustion of remedies 13**
**Interim use of railroad rights-of-way 7**
**Jurisdiction 10**
**Necessary parties 12**
**Persons entitled to maintain action 9**
**Rules and regulations 2**
**State regulation or control 3**
**Takings 4**
**Time for review 11**
**Voluntary transfers 5**

1. Constitutionality

Assuming that taking of reversionary interest of adjacent landowners occurs when railroad rights-of-way are converted to interim public trail use under amendment to National Trails System Act, Tucker Act remedy is available for such taking claims, and thus Act cannot be deemed to take property without just compensation. Preseault v. I.C.C., U.S.1990, 110 S.Ct. 914, 494 U.S. 1, 108 L.Ed.2d 1. Eminent Domain ⚿ 2.16

Even if right-of-way agreements given by predecessors in interest to owners of property adjacent to unused railroad line were contracts, and provision of National Trails System Act authorizing Interstate Commerce Commission to enter orders permitting railroad rights-of-way to be used on interim basis as recreational trails impaired those contractual rights, Congress acted rationally in enacting statute by electing to postpone railroad abandonment and to encourage interim trail use so as to further its railbanking purpose, and thus, statute did not violate either substantive due process or commerce clause. Glosemeyer v. Missouri-Kansas-Texas R.R., C.A.8 (Mo.) 1989, 879 F.2d 316, certiorari denied 110 S.Ct. 1295, 494 U.S. 1003, 108 L.Ed.2d 473. Commerce ⚿ 85.6; Constitutional Law ⚿ 297

Party holding reversionary interest in railroad right-of-way failed to show that section of National Trails System Act governing conversion of abandoned railroad rights-of-way to nature trails impaired existing contracts, in violation of due process clause of Fifth Amendment, absent showing that legislature had acted in arbitrary and irrational way. National Wildlife Federation v. I.C.C., C.A.D.C.1988, 850 F.2d 694, 271 U.S.App.D.C. 1. Constitutional Law ⚿ 276(1); Railroads ⚿ 82(5)

2. Rules and regulations

Assuming conversion of abandoned railroad rights-of-way to nature trails pursuant to National Trails System Act involved takings, participation of private organizations in such takings did not amount to appropriation of property for private, rather than public, purposes; purposes advanced by rules were implementing Act establishment of interim nature

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

trails and long run preservation of existing railroad rights-of-way. National Wildlife Federation v. I.C.C., C.A.D.C.1988, 850 F.2d 694, 271 U.S.App.D.C. 1. Eminent Domain 2.16

Interstate Commerce Commission's interpretation of National Trails System Act as conditioning so-called rail-to-trail conversions on negotiation of voluntary agreements between abandoning railroads and prospective interim trail users was reasonable; it achieved primary statutory objective of precluding reversions while steering clear of potentially difficult constitutional problems relating to "takings" and payment of "just compensation" which would have accompanied proposed interpretation that Commission was required to order interim trail use once state agency agreed to accept full responsibility for right-of-way. Washington State Dept. of Game v. I.C.C., C.A.9 1987, 829 F.2d 877. Commerce 85.6

3. State regulation or control

Conflict between ordinance's "practical alternative" public agency utility exception (PAUE) requirement and National Trails Systems Act (NTSA) required preemption of ordinance to any railbanked railroad right-of-way, since federal regulation of railroads was pervasive and comprehensive, railbanked corridors remained part of national rail transportation system subject to jurisdiction of Surface Transportation Board (STB), STB entered order declaring that interim trail use could be implemented, and safety, land use, and zoning regulation on recreation trails could be applied only to extent that they did not frustrate development of trail on railbanked right of way. Friends of the East Lake Sammamish Trail v. City of Sammamish, W.D.Wash.2005, 361 F.Supp.2d 1260. Municipal Corporations 53; Railroads 82(1)

Federal law preempts state law on threshold question of whether trail use/rail banking agreement was effective to invoke antiabandonment provisions of National Trail System Act in light of showing that Interstate Commerce Commission (ICC) retained regulatory authority after giving orders to preserve railroad rights-of-way for future reactivation to rail service and to promote public interest in recreational trails. Schneider v. Union Pacific R. Co., D.Neb.1994, 864 F.Supp. 120. Commerce 85.6; States 18.21

4. Takings

Fifth Amendment taking occurs when, pursuant to National Trail Systems Act, state-law reversionary interests are effectively eliminated in connection with conversion of railroad right-of-way to trail use, i.e. if original easement granted to railroad under state property law is not broad enough to encompass recreational trail. Caldwell v. U.S., C.A.Fed.2004, 391 F.3d 1226. Eminent Domain 2.16

Public transportation easement for railroad purposes was converted into new and different easement under California law as result of interim use of land as public recreational trail and linear park through Rails to Trails Act, and although government had legal power and was free to impose such new uses upon fee interests held by adjacent landowners, private property interests taken were not free and government was required to pay just compensation mandated by Fifth Amendment. Toews v. U.S., C.A.Fed.2004, 376 F.3d 1371, rehearing denied. Eminent Domain 2.16

Federal government agency's approval, under Rails-to-Trails Act, of state's act of leasing former railroad easement to city for use as public recreational trail constituted taking of property belonging to owners whose property had been burdened by easement, since either easement had been abandoned at time of such action or use of easement as public trail was outside of scope of original easement for maintenance and operation of railroad, and owners thus held interest under state property law that was protected from governmental expropriation. (Per Plager, Circuit Judge, with three Circuit Judges concurring and two Circuit Judges concurring separately.) Preseault v. U.S., C.A.Fed.1996, 100 F.3d 1525. Eminent Domain 2.16

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Conversion of right-of-way from railroad use to trail use pursuant to National Trails System Act, which had effect of blocking abandonment of right-of-way even though conditions for abandonment under state law were otherwise met, was "taking" for which holders of reversionary interest were entitled to compensation. Swisher v. U.S., D.Kan.2001, 176 F.Supp.2d 1100, amended 201 F.Supp.2d 1131. Eminent Domain 2.16

5. Voluntary transfers

Section of National Trails System Act governing conversion of abandoned railroad rights-of-way to nature trails only allows voluntary transfers of rights-of-way from railroads to trail operators. National Wildlife Federation v. I.C.C., C.A.D.C.1988, 850 F.2d 694, 271 U.S.App.D.C. 1. Railroads 82(1)

Following conversion of right-of-way from railroad use to trail use pursuant to National Trails System Act, holders of reversionary interest in property were not required to convey by quitclaim deed any interest in disputed land in return for just compensation for taking of their reversionary rights. Swisher v. U.S., D.Kan.2001, 176 F.Supp.2d 1100, amended 201 F.Supp.2d 1131. Eminent Domain 166

6. Abandonment

Under Vermont law, railroad right-of-way was abandoned when tracks and equipment were removed, triggering landowners' reversionary interest in the easement, for purposes of determining whether landowners were entitled to compensation when easements were used as bicycle paths pursuant to National Trail Systems Act. Preseault v. U.S., Cl.Ct.1992, 24 Cl.Ct. 818. Eminent Domain 85; Railroads 82(2)

Interim use of former railroad right-of-way as trail was not "abandonment" of right-of-way that would trigger fee owner's reversionary interest. Burnier v. Department of Environmental Resources, Pa.Cmwlth.1992, 611 A.2d 1366, 148 Pa.Cmwlth. 530. Railroads 82(2)

7. Interim use of railroad rights-of-way

In context of railroad's application for exemption from standard abandonment proceeding that is halted due to "railbanking" petition under National Trail Systems Act, abutting property owner's state-law reversion interests are forestalled under Trails Act, and thus owner's Takings Clause cause of action accrues for purposes of Tucker Act's six-year limitations period, when railroad and trail operator communicates to Surface Transportation Board (STB) their intention to negotiate trail-use agreement, and STB issues Notice of Interim Trail Use (NITU) that operates to preclude abandonment under Act; accrual does not occur later with finalization of negotiated agreement or actual transfer of right-of-way to trail operator. Caldwell v. U.S., C.A.Fed.2004, 391 F.3d 1226. Limitation Of Actions 55(5)

Pursuant to regulations promulgated by the Surface Transportation Board, sponsors of trails under the National Trails System Act must submit certain documentation describing the site and indicating the user's willingness to assume full responsibility for management, legal liability, and taxes, as well as an acknowledgment of the user's continuing obligation to meet its responsibilities subject to future reactivation of the right-of-way for rail service. Citizens Against Rails-to-Trails v. Surface Transp. Bd., C.A.D.C.2001, 267 F.3d 1144, 347 U.S.App.D.C. 382. Railroads 82(5)

Interstate Commerce Commission (ICC) had authority retroactively to extend Certificate of Interim Trail Use (CITU) after CITU expired, where railroad did not abandon the right-of-way between expiration and extension of CITU. Birt v. Surface Transp. Bd., C.A.D.C.1996, 90 F.3d 580, 319 U.S.App.D.C. 357, rehearing denied, suggestion for rehearing denied 98 F.3d 644, 321 U.S.App.D.C. 195. Commerce 85.6

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

National Trails System Act and its implementing regulations require that a trail sponsor have the same control over the entire right-of-way corridor that would be held by a railroad in order that the trail sponsor can ensure that any and all uses made of the right-of-way are consistent with the restoration of rail service. Illig v. U.S., Fed.Cl.2003, 58 Fed.Cl. 619. Railroads ⚿ 82(5)

For purposes of six-year statute of limitations on suits against the United States in the Court of Federal Claims, taking claims based on conversion of railroad easement to interim trail use by city pursuant to the National Trails System Act accrued on date that trail use agreement was signed, rather than on prior date that notice of interim trail use (NITU) was issued, or subsequent date that railroad issued quitclaim deed transferring easement to city. Caldwell v. U.S., Fed.Cl.2003, 57 Fed.Cl. 193, affirmed 391 F.3d 1226. Federal Courts ⚿ 1107

7A. Easements

Fact that city, and not federal government, actually established public recreational trail upon land that was formerly railroad easement did not preclude finding that federal government was liable for taking of property belonging to owners whose property had been burdened by easement, since city acted under federal government's authority through Rails to Trails Act. Toews v. U.S., C.A.Fed.2004, 376 F.3d 1371, rehearing denied. Eminent Domain ⚿ 285

Underlying fee owners of property burdened by former railroad easements taken by the United States under the National Trails System Act were not entitled to treat trail as a general easement under Missouri law, and thus use the surface in any way not inconsistent with the purpose of the easement; rather, the Act imposed a new easement across their properties which retained essentially the same characteristics as the original easement, both in its location and exclusivity of use. Illig v. U.S., Fed.Cl.2003, 58 Fed.Cl. 619. Railroads ⚿ 82(5)

8. Environmental effects

Surface Transportation Board reasonably concluded that the National Trails System Act did not require it to conduct a separate environmental assessment before issuance of a certificate of interim trail use (CITU); language used by Congress in the Act focused on Act's purposes of preserving rail corridors for future railroad use and permitting public recreational use of trails, implicitly leaving environmental considerations either to environmental assessments accompanying the abandonment proceeding, the parties' agreement, or other federal or state and local law, and nothing in the text or the legislative history suggested a contrary congressional intent. Citizens Against Rails-to-Trails v. Surface Transp. Bd., C.A.D.C.2001, 267 F.3d 1144, 347 U.S.App.D.C. 382. Environmental Law ⚿ 582

The NEPA does not require the Interstate Commerce Commission (ICC) to consider, as part of an abandonment proceeding, the environmental effects of conversion of a railroad right-of-way to interim trail use pursuant to the Rails to Trails Act; the ICC can exercise little discretion in issuing a Certificate of Interim Trail Use or a Notice of Interim Trail Use and, thus, no purpose can be served by requiring it to conduct an environmental assessment as to trail use in abandonment proceedings. Goos v. I.C.C., C.A.8 1990, 911 F.2d 1283. Environmental Law ⚿ 582

9. Persons entitled to maintain action

Landowners who owned property that adjoined railroad right-of-way had Article III standing to challenge the Surface Transportation Board's issuance of a certificate of interim trail use (CITU) authorizing use of the right-of-way as a trail pursuant to the National Trails System Act. Citizens Against Rails-to-Trails v. Surface Transp. Bd., C.A.D.C.2001, 267 F.3d 1144, 347 U.S.App.D.C. 382. Railroads ⚿ 82(6)

Court of Appeals was required to consider railroad's argument that landowner lacked standing to challenge Interstate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Commerce Commission's (ICC's) decision that NEPA did not apply to ICC's consideration of a conversion of a railroad right-of-way, even though ICC and railroad did not challenge landowner's standing below, but rather railroad first raised argument in its initial brief to Court of Appeals; standing is necessary before Court of Appeals has jurisdiction. Goos v. I.C.C., C.A.8 1990, 911 F.2d 1283. Commerce 158

Non-profit organizations and their members demonstrated "injury in fact," in order to have standing in lawsuit against municipality claiming that ordinance's "practical alternative" public agency utility exception (PAUE) requirement, which stymied county's efforts to implement trail, was preempted by National Trails Systems Act (NTSA), on plaintiffs' allegations that they used trail, their activities and pastimes were affected by proposed trail development plans, and their economic and property interests, due to their investment in development of trail, and their contractual interest in right-of-way, would have been affected if county failed in its efforts to develop trail due to PAUE. Friends of the East Lake Sammamish Trail v. City of Sammamish, W.D.Wash.2005, 361 F.Supp.2d 1260. Railroads 82(6)

Evidence in class action against the United States, asserting Fifth Amendment takings claims arising out of conversion of former rail line to trail use pursuant to the Rail-to-Trails Act, supported conclusion that claimants' property did not abut rail corridor, and thus they could not claim ownership to lands affected by the Trails Act. Moore v. U.S., Fed.Cl.2003, 58 Fed.Cl. 134. Eminent Domain 300

Purported holders of reversionary interests in former railroad right-of-way allegedly consisting of abandoned railroad easements had no compensable property interests, precluding relief on their claim that government took their property without just compensation under authority of National Trails System Act, which enabled use of right-of-way as bicycle path; holders bought burdened properties with expectations rooted in evolving federal law regulating abandonments of railroads and repeatedly sold or transferred their interests during a period in which federal laws impacted conditions under which their reversionary interests could be expected to ripen. Preseault v. U.S., Fed.Cl.1992, 27 Fed.Cl. 69, reversed 100 F.3d 1525. Eminent Domain 85; Railroads 82(5)

10. Jurisdiction

Railroad's continued negotiations with city for "rails to trails" conversion showed an intent not to abandon the right-of-way, notwithstanding the railroad's incidental use of the words "abandonment" and "abandoned" in letters regarding the rail line, for purposes of determining whether Interstate Commerce Commission (ICC) retained jurisdiction to extend Certificate of Interim Trail Use (CITU). Birt v. Surface Transp. Bd., C.A.D.C.1996, 90 F.3d 580, 319 U.S.App.D.C. 357, rehearing denied, suggestion for rehearing denied 98 F.3d 644, 321 U.S.App.D.C. 195. Commerce 85.6

Federal district court retained subject matter jurisdiction of removed suit challenging transfers of easements under federal "Rails to Trails" statute, despite plaintiff's asserted dropping of federal claims and retention of only state law claims; plaintiff's state law rights were preempted by federal statute, with any available relief coming from federal law. Louisiana-Pacific Corp. v. Texas Dept. of Transp., E.D.Tex.1999, 43 F.Supp.2d 708. Removal Of Cases 25(1)

District court lacked subject matter jurisdiction to hear challenge to interim trail use order of Interstate Commerce Commission (ICC) where challenge was based on nonconstitutional grounds; plaintiffs brought actions in state court to try to quiet title to real estate and claimed that railroad's rights to that real estate had been abandoned. Schneider v. Union Pacific R. Co., D.Neb.1994, 864 F.Supp. 120. Commerce 85.6

Property owners' claims against nonprofit corporation involved in converting inactive railroad corridors into recreational trails and against director and commissioners of the Washington State Parks and Recreation Commission for taking private property without just compensation and for violating of National Trails System Act amounted to requests to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

enjoin or for review of final Interstate Commerce Commission (ICC) orders permitting interim trail use/rail banking on rail corridors, and as such were within exclusive jurisdiction of Court of Appeals. Dave v. Rails to Trails Conservancy, E.D.Wash.1994, 863 F.Supp. 1285, affirmed 79 F.3d 940. Federal Courts 🔑 1132

District court had jurisdiction to consider challenge by landowners adjacent to abandoned railroad right-of-way to National Trails System Act section authorizing Interstate Commerce Commission to enter orders permitting railroad rights-of-way to be used on an interim basis as recreational trails, but not ICC regulations implementing statute or order applying statute and regulations to right-of-way adjacent to their property; under Hobbs Act, federal circuit Courts of Appeal had exclusive jurisdiction to consider implementing regulations and order. Glosemeyer v. Missouri-Kansas-Texas R. Co., E.D.Mo.1988, 685 F.Supp. 1108, affirmed 879 F.2d 316, certiorari denied 110 S.Ct. 1295, 494 U.S. 1003, 108 L.Ed.2d 473. Commerce 🔑 85.6

11. Time for review

Landowners' petition for review of Interstate Commerce Commission's (ICC) denial of their motion to reopen decision to issue notice of interim trail use in abandonment proceeding concerning rail line which existed pursuant to easement over landowners' property was timely, even though it was filed more than 60 days after decision which landowners sought to reopen, where motion to reopen presented new material to ICC; namely, that landowners were denied opportunity to submit protests to interim trail use because they were unaware of rail-line owner's motion seeking such use. Fritsch v. I.C.C., C.A.D.C.1995, 59 F.3d 248, 313 U.S.App.D.C. 252, rehearing and suggestion for rehearing in banc denied, certiorari denied 116 S.Ct. 1262, 516 U.S. 1171, 134 L.Ed.2d 210. Administrative Law And Procedure 🔑 722.1; Commerce 🔑 157

12. Necessary parties

County, as property owner, project permit applicant, entity financially responsible for railbed pursuant to Notice of Interim Trail Use (NITU), and ultimate operator of trail, was not "necessary party," in lawsuit against municipality claiming that ordinance's "practical alternative" public agency utility exception (PAUE) requirement was preempted by National Trails Systems Act (NTSA), since interest in subject matter alone did not make county necessary party and county was aware of litigation and chose to entrust non-profit organization and its members to adequately litigate issue of federal preemption. Friends of the East Lake Sammamish Trail v. City of Sammamish, W.D.Wash.2005, 361 F.Supp.2d 1260. Federal Civil Procedure 🔑 219

13. Exhaustion of remedies

Exhaustion of administrative remedies was not required for court to hear conflict preemption challenge under National Trails Systems Act (NTSA) to ordinance's "practical alternative" public agency utility exception (PAUE) requirement. Friends of the East Lake Sammamish Trail v. City of Sammamish, W.D.Wash.2005, 361 F.Supp.2d 1260. Railroads 🔑 82(6)

14. Abstention

*Pullman* abstention doctrine, which prevented federal court's resolution of federal constitutional question if case could be resolved on questions of state law, did not apply to lawsuit against municipality which claimed that ordinance's "practical alternative" public agency utility exception (PAUE) requirement was preempted by National Trails Systems Act (NTSA); case was not about how ordinance applied, it was about constitutionality of ordinance in light of Supremacy Clause. Friends of the East Lake Sammamish Trail v. City of Sammamish, W.D.Wash.2005, 361 F.Supp.2d 1260. Federal Courts 🔑 47.1

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

16 U.S.C.A. § 1247, 16 USCA § 1247

Current through P.L. 109-161 (excluding P.L. 109-135, 109-148, 109-155, P.L. 109-157) approved 12-30-05

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

C

CODE OF FEDERAL REGULATIONS
TITLE 49--TRANSPORTATION
SUBTITLE B--OTHER REGULATIONS RELATING TO TRANSPORTATION
CHAPTER X--SURFACE TRANSPORTATION BOARD, DEPARTMENT OF TRANSPORTATION
SUBCHAPTER B--RULES OF PRACTICE
PARTS 1150 TO 1174--LICENSING PROCEDURES
PARTS 1150 TO 1159--RAIL LICENSING PROCEDURES
PART 1152--ABANDONMENT AND DISCONTINUANCE OF RAIL LINES AND RAIL TRANSPORTATION UNDER 49 U.S.C. 10903
SUBPART C--PROCEDURES GOVERNING NOTICE, APPLICATIONS, FINANCIAL ASSISTANCE, ACQUISITION FOR PUBLIC USE, AND TRAIL USE

Current through December 28, 2005; 70 FR 76935

§ 1152.29 Prospective use of rights-of-way for interim trail use and rail banking.

(a) If any state, political subdivision, or qualified private organization is interested in acquiring or using a right-of-way of a rail line proposed to be abandoned for interim trail use and rail banking pursuant to 16 U.S.C. 1247(d), it must file a comment or otherwise include a request in its filing (in a regulated abandonment proceeding) or a petition (in an exemption proceeding) indicating that it would like to do so. The comment/request or petition must include:

(1) A map depicting, and an accurate description of, the right-of-way, or portion thereof (including mileposts), proposed to be acquired or used;

(2) A statement indicating the user's willingness to assume full responsibility: for managing the right-of-way; for any legal liability arising out of the use of the right-of-way (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability); and for the payment of all taxes assessed against the right-of-way; and

(3) An acknowledgment that interim trail use is subject to the user's continuing to meet its responsibilities described in paragraph (a)(2) of this section, and subject to possible future reconstruction and reactivation of the right-of-way for rail service. The statement must be in the following form:

Statement of Willingness To Assume Financial Responsibility

In order to establish interim trail use and rail banking under 16 U.S.C. 1247(d) and 49 CFR 1152.29, _____ (Interim Trail User) is willing to assume full responsibility for management of, for any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against the right-of-way owned by _____ (Railroad) and operated by _____ (Railroad). The property, known as _____ (Name of Branch Line), extends from railroad milepost _____ near _____ (Station Name), to railroad milepost _____, near _____ (Station name), a distance of _____ miles in [County(ies), (State(s)]. The right-of-way is part of a line of railroad proposed for abandonment in Docket No. STB AB-___ (Sub-No. ___).

A map of the property depicting the right-of-way is attached.

___ (Interim Trail User) acknowledges that use of the right-of-way is subject to the user's continuing to meet its responsibilities described above and subject to possible future reconstruction and reactivation of the right-of-way for rail service. A copy of this statement is being served on the railroad(s) on the same date it is being served on the Board.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b)(1) In abandonment application proceedings under 49 U.S.C. 10903, interim trail use statements are due within the 45-day protest and comment period following the date the abandonment application is filed. See § 1152.25(c). The applicant carrier's response notifying the Board whether and with whom it intends to negotiate a trail use agreement is due within 15 days after the close of the protest and comment period (i.e., 60 days after the abandonment application is filed).

(i) In every proceeding where a Trails Act request is made, the Board will determine whether the Trails Act is applicable.

(ii) If the Trails Act is not applicable because of failure to comply with § 1152.29(a), or is applicable but the carrier either does not intend to negotiate an agreement, or does not timely notify the Board of its intention to negotiate, a decision on the merits will be issued and no Certificate of Interim Trail Use or Abandonment (CITU) will be issued. If the carrier is willing to negotiate an agreement, and the public convenience and necessity permit abandonment, the Board will issue a CITU.

(2) In exemption proceedings, a petition containing an interim trail use statement is due within 10 days after the date the notice of exemption is published in the Federal Register in the case of a class exemption and within 20 days after publication in the Federal Register of the notice of filing of a petition for exemption in the case of a petition for exemption. When an interim trail use comment(s) or petition(s) is filed in an exemption proceeding, the railroad's reply to the Board (indicating whether and with whom it intends to negotiate an agreement) is due within 10 days after the date a petition requesting interim trail use is filed.

(3) Late-filed trail use statements must be supported by a statement showing good cause for late filing.

(c) Regular and NERSA abandonment proceedings.

(1) If continued rail service does not occur pursuant to 49 U.S.C. 10904 and § 1152.27, and a railroad agrees to negotiate an interim trail use/rail banking agreement, then the Board will issue a CITU to the railroad and to the interim trail user for that portion of the right-of-way to be covered by the agreement. The CITU will: Permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and material consistent with interim trail use and rail banking, as long as it is consistent with any other Board order, 30 days after the date it is issued (10 days after issuance in NERSA proceedings); and permit the railroad to fully abandon the line if no trail use agreement is reached 180 days after it is issued, subject to appropriate conditions, including labor protection and environmental matters.

(2) The CITU will indicate that any interim trail use is subject to future restoration of rail service, and subject to the user continuing to meet the financial obligations for the right-of-way. The CITU will also provide that, if the user intends to terminate trail use, it must send the Board a copy of the CITU and request that it be vacated on a specified date. The Board will reopen the abandonment proceeding, vacate the CITU, and issue a decision permitting immediate abandonment for the involved portion of the right-of-way. Copies of the decision will be sent to:

(i) The abandonment applicant;

(ii) The owner of the right-of-way; and

(iii) The current trail user.

(3) If an application to construct and operate a rail line over the right-of-way is authorized under 49 U.S.C. 10901 and 49 CFR part 1150, or exempted under 49 U.S.C. 10502, then the CITU will be vacated accordingly.

(d) Exempt abandonment proceedings.

(1) If continued rail service does not occur under 49 U.S.C. 10904 and § 1152.27 and a railroad agrees to negotiate an interim trail use/rail banking agreement, then the Board will issue a Notice of Interim Trail Use or Abandonment (NITU) to the railroad and to the interim trail user for the portion of the right-of-way to be covered by the agreement. The NITU will: permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking, as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

long as it is consistent with any other Board order, 30 days after the date it is issued; and permit the railroad to fully abandon the line if no agreement is reached 180 days after it is issued, subject to appropriate conditions, including labor protection and environmental matters.

(2) The NITU will indicate that interim trail use is subject to future restoration of rail service, and subject to the user continuing to meet the financial obligations for the right-of-way. The NITU will also provide that, if the user intends to terminate trail use, it must send the Board a copy of the NITU and request that it be vacated on a specific date. The Board will reopen the exemption proceeding, vacate the NITU, and issue a decision reinstating the exemption for that portion of the right-of-way. Copies of the decision will be sent to:

(i) The abandonment exemption applicant;

(ii) The owner of the right-of-way; and

(iii) The current trail user.

(3) If an application to construct and operate a rail line over the right-of-way is authorized under 49 U.S.C. 10901 and 49 CFR part 1150, or exempted under 49 U.S.C. 10502, then the NITU will be vacated accordingly.

(e)(1) Where late-filed trail use statements are accepted, the Director (or designee) will telephone the railroad to determine whether abandonment has been consummated and, if not, whether the railroad is willing to negotiate an interim trail use agreement. The railroad shall confirm, in writing, its response, within 5 days. If abandonment has been consummated, the trail use request will be dismissed. If abandonment has not been consummated but the railroad refuses to negotiate, then trail use will be denied. If abandonment has not been consummated and the railroad is willing to negotiate, the abandonment proceeding will be reopened, the abandonment decision granting an application, petition for exemption or notice of exemption will be vacated, and an appropriate CITU or NITU will be issued. The effective date of the CITU or NITU will be the same date as the vacated decision or notice.

(2) A railroad that receives authority from the Board to abandon a line (in a regulated abandonment proceeding under 49 U.S.C. 10903, or by individual or class exemption issued under 49 U.S.C. 10502) shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line (e.g., discontinued operations, salvaged the track, canceled tariffs, and intends that the property be removed from the interstate rail network). The notice shall provide the name of the STB proceeding and its docket number, a brief description of the line, and a statement that the railroad has consummated, or fully exercised, the abandonment authority on a certain date. The notice shall be filed within 1 year of the service date of the decision permitting the abandonment (assuming that the railroad intends to consummate the abandonment). Notices will be deemed conclusive on the point of consummation if there are no legal or regulatory barriers to consummation (such as outstanding conditions, including Trails Act conditions). If, after 1 year from the date of service of a decision permitting abandonment, consummation has not been effected by the railroad's filing of a notice of consummation, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire. In that event, a new proceeding would have to be instituted if the railroad wants to abandon the line. Copies of the railroad's notice of consummation shall be filed with the Secretary of the Board. In addition, the notice of consummation shall be sent to the State Public Service Commission (or equivalent agency) of every state through which the line passes. If, however, any legal or regulatory barrier to consummation exists at the end of the one-year time period, the notice of consummation must be filed not later than 60 days after satisfaction, expiration or removal of the legal or regulatory barrier. For good cause shown, a railroad may file a request for an extension of time to file a notice so long as it does so sufficiently in advance of the expiration of the deadline for notifying the Board of consummation to allow for timely processing.

(f)(1) When a trail user intends to terminate trail use and another person intends to become a trail user by assuming financial responsibility for the right-of-way, then the existing and future trail users shall file, jointly:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(i) A copy of the extant CITU or NITU; and

(ii) A Statement of Willingness to Assume Financial Responsibility by the new trail user.

(2) The parties shall indicate the date on which responsibility for the right-of-way is to transfer to the new trail user. The Board will reopen the abandonment or exemption proceeding, vacate the existing NITU or CITU; and issue an appropriate replacement NITU or CITU to the new trail user.

(g) In proceedings where a timely trail use statement is filed, but due to either the railroad's indication of its unwillingness to negotiate interim trail use agreement, or its failure to timely notify the Board of its willingness to negotiate, a decision authorizing abandonment or an exemption notice or decision is issued instead of a CITU or NITU, and subsequently the railroad and trail use proponent nevertheless determine to negotiate an interim trail use agreement under the Trails Act, then the railroad and trail use proponent must file a joint pleading requesting that an appropriate CITU or NITU be issued. If the abandonment has not been consummated, the Board will reopen the proceeding, vacate the outstanding decision or notice (or portion thereof), and issue an appropriate CITU or NITU that will permit the parties to negotiate for a period agreed to by the parties in their joint filing, but not to exceed 180 days, at the end of which, the CITU or NITU will convert into a decision or notice permitting abandonment.

[62 FR 34670, June 27, 1997; 64 FR 53268, Oct. 1, 1999]

<General Materials (GM) - References, Annotations, or Tables>

49 C. F. R. § 1152.29

49 CFR § 1152.29

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.