# EXHIBITS J, K, and L

EXHIBIT
tabbles'
J

SURFACE TRANSPORTATION BOARD (S.T.B.)

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY--ABANDONMENT EXEMPTION--IN SEDGWICK COUNTY, KS

Decided: April 22, 2003

*1 Service Date: Late Release April 22, 2003

SURFACE TRANSPORTATION BOARD DECISION AND NOTICE OF INTERIM TRAIL USE OR ABANDONMENT
STB Docket No. AB-6 (Sub-No. 403X)

By the Board, David M. Konschnik, Director, Office of Proceedings.

The Burlington Northern and Santa Fe Railway Company (BNSF) filed a notice of exemption under 49 CFR 1152 Subpart F-Exempt Abandonments to abandon its line of railroad, between milepost 494.22 and milepost 505.20 in and near Wichita, KS, and from milepost 515.23 to milepost 509.30 between Wichita and Valley Center, in Sedgwick County, KS, a total distance of 16.91 miles. Notice of the exemption was served and published in the Federal Register on March 24, 2003 (68 FR 14272). The exemption is scheduled to become effective on April 23, 2003.

The Board's Section of Environmental Analysis (SEA) served an environmental assessment (EA) in this proceeding on March 28, 2003. In the EA, SEA recommends that the following conditions be imposed on any decision granting abandonment authority. The first condition requires that, once abandonment plans are finalized and prior to the commencement of abandonment activities, BNSF shall consult with the Kansas Department of Health and Environment - Bureau of Water on the need to file a Notice of Intent for construction stormwater discharges under section 402 of the Clean Water Act, the disposal requirements for removal of any railroad ties, and the need to prepare and submit a water pollution control plan and to report the results of this consultation to the Board. The second condition requires that, once abandonment plans are finalized and prior to the commencement of abandonment activities, BNSF shall consult with the Kansas Department of Agriculture - Division of Water Resources on the need for a state permit for activities within a stream or watercourse and to report the results of this consultation to the Board. The third condition, which addresses the concerns raised by the Kansas Department of Wildlife and Parks, requires that BNSF shall reseed any vegetation impacted by abandonment activities with native grasses and forbs and implement erosion control measures, as needed. Comments to the EA were due by April 11, 2003. No comments were received by the due date. Accordingly, the environmental conditions recommended by SEA in the EA will be imposed.

On March 26, 2003, the City of Wichita (the City) filed a request for issuance of a notice of interim trail use (NITU) pursuant to section 8(d) of the National Trails System Act, 16 U.S.C. 1247(d), and 49 CFR 1152.29, for a 9.78-mile segment of the right-of-way extending from milepost 494.22 at the Butler County/Sedgwick County line, westward to milepost 504.00 near Hydraulic Street, in downtown Wichita. The City has submitted a statement of willingness to assume financial responsibility for the management of, for any legal liability arising out of the transfer or use of (unless

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for payment of any and all taxes that may be levied or assessed against, the right-of-way, as required at 49 CFR 1152.29, and has acknowledged that the use of the right-of-way for trail purposes is subject to future reconstruction and reactivation for rail service. In a response submitted on March 28, 2003, BNSF states that it supports the issuance of a NITU.

***2** Because the City's request complies with the requirements of 49 CFR 1152.29 and BNSF is willing to negotiate with the City for the 9.78-mile line segment, a NITU will be issued. The parties may negotiate an agreement during the 180-day period prescribed below. If the parties reach a mutually acceptable final agreement, no further Board action is necessary. If no agreement is reached within 180 days, BNSF may fully abandon the relevant portion of the line, provided the environmental conditions imposed in this decision are met. See 49 CFR 1152.29(d)(1). Use of the right-of-way for trail purposes is subject to restoration for railroad purposes.

As conditioned, this decision will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. This proceeding is reopened.

2. Upon reconsideration, the notice served and published in the Federal Register on March 24, 2003, exempting the abandonment of the line described above is modified to the extent necessary to implement interim trail use/rail banking for the portion of the line from milepost 494.22 at the Butler County/Sedgwick County line, to milepost 504.00 near Hydraulic Street, for a period of 180 days from the service date of this decision and notice (until October 19, 2003), and subject to the conditions that: (1) once abandonment plans are finalized and prior to commencement of abandonment activities, BNSF shall consult with the Kansas Department of Health and Environment - Bureau of Water on the need to file a Notice of Intent for construction stormwater discharges under section 402 of the Clean Water Act, the disposal requirements for removal of any railroad ties, and the need to prepare and submit a water pollution control plan and to report the results of this consultation to the Board; (2) once abandonment plans are finalized and prior to commencement of abandonment activities, BNSF shall consult with the Kansas Department of Agriculture - Division of Water Resources on the need for a state permit for activities within a stream or watercourse and to report the results of this consultation to the Board; and (3) that BNSF shall reseed any vegetation impacted by abandonment activities with native grasses and forbs and implement erosion control measures, as needed.

3. If an interim trail use/rail banking agreement is reached for the above-described 9.78-mile line segment, it must require the trail user to assume, for the term of the agreement, full responsibility for management of, for any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

4. Interim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations for the right-of-way.

***3** 5. If interim trail use is implemented, and subsequently the user intends to terminate trail use, it must send the Board a copy of this decision and notice and request that it be vacated on a specified date.

6. If an agreement for interim trail use/rail banking is reached by October 19, 2003, interim trail use may be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

implemented. If no agreement is reached by that time, BNSF may fully abandon the relevant portion of the line, provided the conditions imposed in this proceeding are met. See 49 CFR 1152.29(d)(1).

7. This decision is effective on the date of service.

Vernon A. Williams

Secretary

2003 WL 1909276 (S.T.B.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

tabbles

K

-BNSF RAILWAY COMPANY

RAILBANKING AND DONATION CONTRACT

This Railbanking and Donation Contract (the "**Contract**") is entered into this 24TH day of MARCH, 2005, by and between BNSF Railway Company (hereafter, "**BNSF**"), a Delaware corporation, and The City of Wichita (hereafter, "**Donee**"), a political subdivision of the State of Kansas.

WITNESSETH

WHEREAS, pursuant to 16 U.S.C. Section 1247(d) of the National Trails Systems Act, as amended, and the terms and conditions set forth herein, BNSF is willing to effect a donation to Donee of certain interests in a rail corridor and trail-related structures (including land, bridges, culverts, trestles, and earthwork) situated between MP 494.22 and MP 504.05 in Sedgwick County, Kansas, as more particularly described on **Exhibit A** attached hereto and made a part hereof. Collectively, the real property and personal property conveyed herein shall be referred to as the "**Property** ".

WHEREAS, Donee is willing to accept the donation of the Property on the terms and conditions set forth herein;

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions set forth herein, the parties hereby agree as follows:

1. Property to be Donated.

(a) Subject to and in accordance with the terms, covenants, conditions, restrictions and reservations contained in this Contract, BNSF will donate and quitclaim the Property to Donee by Quitclaim Deed, in the exact form attached hereto as **Exhibit B** (the "**Deed**") and, if applicable, by Bill of Sale in the exact form attached hereto as **Exhibit C** (the "**Bill of Sale**"). No monetary consideration shall be paid by Donee to BNSF for the Property. Donee shall accept the Property and shall assume responsibility for the Property and shall comply with the terms and conditions of this Contract. Any and all personal property owned by BNSF or any third parties located on the Property and not expressly conveyed herein may be removed by BNSF prior to the Closing. Except as may be expressly provided otherwise herein, any and all personal property of BNSF remaining on the Property as of Closing and not reserved herein, in the Deed or in the Bill of Sale or used in BNSF's daily operations shall pass to Donee. Donee acknowledges and affirms that Donee's assumption of the Property in no way entitles Donee to any right, title, interest or use in, to and of any BNSF trademark, service mark or other intellectual property.

(b) Donee acknowledges and affirms that BNSF may not hold fee simple title or any other interest in the Property, that BNSF's interest in the Property, if any, may rise only to the level of an easement for railroad purposes. Donee is willing to accept BNSF's title to the Property, if any, on this basis and expressly releases BNSF, its successors and assigns from any claims that Donee or its successors may have as a result of an abandonment or discontinuance of the line of rail running over or adjacent to the Property. In light of BNSF's disclosure that it may not hold a fee interest in the Property, Donee shall indemnify, defend and hold BNSF harmless from any suit or claim for damages, punitive or otherwise, expenses, attorneys' fees, or civil

penalties that may be imposed on BNSF as the result of any person or entity claiming an interest in the Property or claiming that BNSF did not have the right to transfer the Property to Donee.

2. Covenants, Conditions, Restrictions and Reservations. The following covenants, conditions, restrictions, and reservations set forth in this **Section 2** and those set forth in **Section 3** hereinbelow shall run with the land and shall be binding upon the successors and assigns of Donee and inure to the benefit of BNSF and its successors and assigns:

(a) BNSF reserves access rights across and to the entire Property for emergency purposes and for the exercise of any rights related to retained interests in the Property as deemed necessary or advisable by BNSF, without charge and without notification to Donee; provided, however, BNSF's exercise of this reservation shall not permanently damage improvements placed on the Property by Donee or its successors and shall not unduly burden the use of the Property as a recreational trail.

(b) BNSF retains and reserves unto itself all rail, ties, spikes, tie plates, rail anchors, ballast, signaling and communications equipment, crossings and crossing equipment, signage, roundhouses, depots, and other support facilities, track materials and supplies, whether or not same are deemed affixed to the Property ("**Salvage Materials**"). BNSF shall have a continuing right of entry on the Property for a period of three hundred sixty-five (365) days from the date of Closing ("**Salvage Period**") in order to allow BNSF and its contractors to salvage said Salvage Materials. BNSF shall have the right, but not the obligation, to salvage all or a part of said Salvage Materials. Any Salvage Materials remaining on the Property after the Salvage Period shall be deemed abandoned and relinquished unto Donee; provided, however, to the extent any such Salvage Materials remaining are owned by any third party (e.g., crossing equipment owned in whole or in part by a governmental authority), in no event shall said interests be conveyed unto Donee.

3. Interim Trails Use. This Contract and any conveyance pursuant to its terms shall be interpreted to conform to Section 8(d) of the National Trails Systems Act, 16 U.S.C. Section 1247(d), and the rules and regulations of the STB related thereto, all as amended from time to time.

(a) Donee shall assume, indemnify, defend, and hold harmless BNSF from all financial, managerial and legal responsibility and liability for said Property, including without limitation any liabilities and responsibilities assumed by or placed upon Donee pursuant to and in accordance with the NITU, Statement of Willingness to Assume Financial Responsibility filed by Donee with the U.S. Surface Transportation Board ("**STB**"), and any applicable STB orders related to this transaction. Donee acknowledges that any interim trail use by Donee or its assigns shall be subject to the possibility of future restoration of rail service pursuant to federal law and/or BNSF's retained interests. Donee further agrees to take all steps necessary, at no expense to BNSF, to comply with any and all state and federal requirements relating to such interim trail use and/or restoration.

are "owners" 3d party beneficiaries?

(b) It is agreed and understood that the use of the Property by Donee (or its assignees) shall not impair future restoration of rail service pursuant to the National Trails System Act and Donee acknowledges that BNSF reserves the right to reactivate and restore rail service on the Property. Should BNSF or any such assignee of BNSF exercise this right at any time, Donee (or its assigns) shall allow reactivation of rail service on the terms and conditions herein. Upon BNSF's notice of intent to restore rail service, Donee shall reconvey the Property

to BNSF free and clear of any encumbrances or liens not in effect prior to Closing (or shall otherwise commit to clear such encumbrances and/or liens within a reasonable period of time) at no cost to BNSF (except to the extent expressly provided otherwise hereinbelow), and this Contract shall be terminated (subject to survival of all rights, obligations, liabilities, and indemnities which arose or accrued prior to the termination). Upon termination of this Contract pursuant to this subparagraph, Donee shall have the right to salvage any non-rail-related facilities or improvements on the Property, provided such salvage shall be completed within one hundred eighty (180) days of written notice of intent to restore rail service, and any materials not salvaged within said time period shall be forfeited by Donee absent written waiver by BNSF. In the event BNSF, or its successor, provides a notice of intent to restore rail service pursuant to the National Trails Systems Act, as amended, any reconveyance of the Property shall be at fair market value, which shall be determined by a neutral appraisal process agreed upon between the parties, with the costs thereof to share equally. In the event any dispute arises between the parties as to the fair market value determination or process for determination, such disputes shall be finally resolved pursuant to the dispute resolution procedures set forth in **Section 21** of this Contract.

(c) In no event shall this Contract be construed to create a joint enterprise for the use or operation of the Property.

(d) In the event of restoration of rail service, BNSF shall not be liable for any penalties or direct, indirect, or consequential damages or costs, losses, or expenses arising out of such restoration.

4. Inspections. In accordance with the provisions of this Section, and subject to Donee's signing BNSF's standard Right of Entry Agreement, Donee, or its designated representatives, shall have reasonable access to the Property and may conduct, at its sole cost and expense, such surveys, studies, tests, or inspections as it deems appropriate. Donee shall promptly provide copies of all such reports to BNSF. Prior to conducting any such surveys, studies, tests, or inspections on the Property, Donee shall require all contractors doing any test or inspection of the Property to provide BNSF with a certificate of insurance evidencing Commercial General Liability insurance coverage of at least $1,000,000 with BNSF named as an additional insured and showing worker's compensation coverage with a waiver of subrogation rights against BNSF. Donee shall conduct all surveys, studies, tests, and inspections of the Property in a manner that will not interfere with the operations of BNSF thereon and will not harm or damage the Property or cause any claim adverse to BNSF, and immediately following such surveys, studies, tests, and inspections Donee shall restore the Property to the condition existing immediately prior to such activities. Donee shall give BNSF reasonable prior notice of any such surveys, studies, tests, or inspections and BNSF shall have the right to be present during any such surveys, studies, tests, or inspections. Donee shall not disclose the results of any such surveys, studies, tests, or inspections to any third parties except as required by applicable law or with written consent of BNSF. Donee shall indemnify and hold BNSF harmless from and against any claims for injury or death to persons, damage to property or other losses, damages or claims including, without limitation, in each instance, attorneys' fees and litigation costs, arising out of any action of any person or firm entering the Property on Donee's behalf as aforesaid or any breach by Donee of its obligations under this Section.

5. Conditions to Closing. The following shall be conditions to BNSF's obligation to consummate the transaction. In the event any of these conditions are not satisfied by the applicable date indicated below (or if no date is indicated below then by the date that is forty-five (45) days after the Contract Date), BNSF may in its sole discretion elect to extend such date or terminate this Contract by

written notice to Donee. In the event BNSF elects to proceed to Closing, the following terms and conditions, to the extent they remain unfulfilled, shall survive Closing.

(a) The STB shall have issued a Notice of Interim Trail Use ("**NITU**") in STB Docket No. AB-6 (Sub-No. 403X), *The Burlington Northern and Santa Fe Railway Company Abandonment in Sedgwick County, Kansas* (now BNSF Railway Company), in accordance with 16 U.S.C. Section 1247(d), the STB's rules and regulations pertaining to interim trails use, and other applicable authorities. The terms hereof shall be governed by and construed in accordance with the issuance of a NITU in the referenced STB docket as requested by Donee and acceded to by BNSF. Prior to Closing, contingent upon authority of the STB, BNSF will have discontinued service on the Property and canceled applicable common carrier rates and service. In lieu of notice of consummation of abandonment, if required by STB's rules and regulations, BNSF shall provide notice to STB of consummation and implementation of this Contract. Notice of consummation shall not be a condition of Closing.

(b) Donee shall execute and deliver to BNSF (i) the Acknowledgement Section of Internal Revenue Service Form 8283, attached as **Exhibit D** to this Contract, (ii) a Charitable Contribution Receipt, attached as **Exhibit E** to this Contract, and (iii) a copy of its letter from the Internal Revenue Service stating that it is a tax exempt entity which is qualified to receive tax deductible donations. In addition, Donee shall take all actions and execute and deliver such other documents that are necessary or advisable to allow BNSF to take a tax deduction with regard to the donation described in this Contract.

(c) If the approval of any federal, state or local governmental agency is required for the donation of the Property, it is understood and agreed that the consummation of this Contract is conditioned upon obtaining such approval and that both parties shall use their best efforts to obtain such approval. In the event any governmental agency shall impose additional material terms or conditions upon this conveyance or revoke the authority to enter into such agreement, either party may terminate this Contract without liability to the other, regardless of whether the transaction has closed. In such event, Donee shall not be entitled to any reimbursement for payment of any fees or costs of the transaction.

(d) Donee shall obtain and deliver to BNSF by the date that is thirty (30) days after the Contract Date, at Donee's sole cost and expense, any survey or plat required by the applicable city, county or other governmental authority to convey the Property. Such survey or plat shall be subject to BNSF's approval in its sole discretion.

(e) Intentionally deleted.

(f) Donee shall have performed each of Donee's obligations under this Contract.

6. Closing. The consummation of the donation by delivery of the Deed (the "**Closing**") shall occur promptly upon satisfaction of the conditions to Closing set forth in **Section 5** above. The Closing shall occur via mail or overnight delivery and BNSF shall deliver to Donee (i) a sufficient number of original counterparts of the Deed to enable Donee to file an original in each county in which the Property is located; and (ii) an executed Bill of Sale transferring the bridges, culverts, trestles, and earthwork, if applicable. Donee shall pay all costs of Closing (except BNSF's costs of preparation of documents to be delivered at Closing). This includes, but is not limited to any transaction fees, transfer

taxes, escrow and service fees, wire service fees, recording fees and sales taxes associated with this Contract or any of the conveyances or assignments governed by this Contract.

7. No Prorations. All outstanding assessments due and payable prior to the Closing shall be paid by BNSF and any such assessments due and payable after the Closing shall be paid by Donee. No pro-rations will be made. If the Property is not separately assessed, the parties shall cooperate to cause the Property to be separately assessed as soon as possible after Closing and until such time the parties will equitably apportion the taxes attributable to the Property. Donee agrees to purchase, affix and cancel any and all documentary stamps in the amount prescribed by statute, and to pay any and all required transfer taxes, excise taxes and any and all fees incidental to recordation of the conveyance instrument. Donee shall be liable and shall indemnify BNSF for all costs, expenses, and judgments to or against BNSF, including all of BNSF's legal fees and expenses arising out of Donee's failure to comply with the requirements of this Section and same shall constitute a lien against the Property until paid by the Donee. Any judgment against BNSF which may appear of record as a lien against the Property shall be settled and satisfied by BNSF if and when it is judicially determined to be valid, and BNSF shall indemnify the Donee for all loss arising out of BNSF's failure to have a judgment lien so settled and satisfied.

8. Condition of Property. As a material consideration of BNSF's willingness to enter into this transaction, Donee represents and warrants that **DONEE IS AWARE THAT DONEE IS ACQUIRING THE PROPERTY ON AN "AS-IS WITH ALL FAULTS" BASIS WITH ANY AND ALL PATENT AND LATENT DEFECTS, INCLUDING THOSE RELATING TO THE ENVIRONMENTAL CONDITION OF THE PROPERTY, AND THAT DONEE IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER FROM BNSF AS TO ANY MATTERS CONCERNING THE PROPERTY,** including the physical condition of the Property; zoning status; tax consequences of this transaction; utilities; operating history or projections or valuation; compliance by the Property with Environmental Laws (defined below) or other laws, statutes, ordinances, decrees, regulations and other requirements applicable to the Property; the presence of any Hazardous Substances (defined below), wetlands, asbestos, lead, lead-based paint or other lead containing structures, urea formaldehyde, or other environmentally sensitive building materials in, on, under, or in proximity to the Property; the condition or existence of any of the above ground or underground structures or improvements, including tanks and transformers in, on or under the Property; the condition of title to the Property; and any leases, easements, reservations, permits, orders, licenses, or other rights or agreements, affecting the Property. **BNSF EXPRESSLY DISCLAIMS ANY WARRANTIES FOR THE PROPERTY OR APPURTENANCES THERETO, INCLUDING, WITHOUT LIMITATION, WARRANTIES AS TO TITLE, MERCHANTABILITY, HABITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR CONFORMITY OF THE PROPERTY TO ITS INTENDED USE.**

9. Environmental.

(a) Donee represents to BNSF that Donee is aware of the risk that Hazardous Substances may be present on, under, in or about the Property and that Donee has conducted, or will conduct prior to Closing, such investigations of the Property, including but not limited to, the physical and environmental conditions thereof, as Donee deems necessary to satisfy itself as to the condition of the Property and will rely solely upon same and not upon any information provided by or on behalf of BNSF or its agents or employees with respect thereto. Donee assumes the risk that adverse matters may not have been revealed by Donee's investigations, and Donee shall indemnify, hold harmless and hereby waives, releases and discharges forever BNSF (and BNSF's

affiliates, officers, directors, shareholders, employees, agents, licensees and invitees) from any and all present or future, known or unknown, claims, demands, causes of action (including, but not limited to, those in contract, tort and strict liability), damages (including, without limitation, consequential and punitive), Losses (herein defined), injuries, liabilities, costs (including, but not limited to, fines, penalties, court costs and attorneys' fees) arising from or in any way related to (i) any latent or patent conditions of the Property, (ii) any bodily injury or death or loss or damage to the property of any person or persons whomever, including the parties hereto, in any manner arising from or growing out of the acts or omissions, negligent or otherwise, of Donee or its officers, directors, shareholders, employees, agents, licensees and invitees in connection with the entry upon, occupation or use of the Property, and/or (iii) any alleged or actual presence, use, storage, generation, manufacture, transport, release, leak, spill, disposal or other handling of any Hazardous Substances in, on, under or about the Property. As used in this Section, the term "**Losses**" shall include without limitation (a) the cost of any investigation, removal, remedial or other response action that is required by any Environmental Law, that is required by judicial order or by order of or agreement with any governmental authority, or that is necessary or otherwise is reasonable under the circumstances, (b) capital expenditures necessary to cause BNSF's remaining property or the operations or business of BNSF on its remaining property to be in compliance with the requirements of any Environmental Law, and (c) costs imposed under any Environmental Law enacted after Closing. As used in this Contract, the term "**Environmental Law**" means any federal, state or local statute, regulation, code, rule, ordinance, order, judgment, decree, injunction or common law pertaining in any way to the protection of human health or the environment, including without limitation, the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Toxic Substances Control Act, and any similar or comparable state or local law. As used in this Contract, the term "**Hazardous Substance**" means any hazardous, toxic, radioactive or infectious substance, material, contaminant or waste as defined, listed or regulated under any Environmental Law, and includes without limitation, petroleum oil and any of its fractions.

(b) The rights of BNSF under this Section shall be in addition to and not in lieu of any other rights or remedies to which it may be entitled under this Contract or otherwise. This indemnity specifically includes the obligation of Donee to remove, close, remediate, reimburse or take other actions requested or required by any governmental agency concerning any Hazardous Substances or contaminants on the Property.

10. Insurance. Intentionally omitted.

11. Indemnifications.

(a) **TO THE FULLEST EXTENT PERMITTED BY LAW, DONEE SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS BNSF AND BNSF'S AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE "INDEMNITEES") FOR, FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, DAMAGES, LOSSES, LIENS, FINES, PENALTIES, COSTS, CAUSES OF ACTION, SUITS, JUDGMENTS, AND EXPENSES (INCLUDING, WITHOUT LIMITATION, CLAIMS AND LIABILITIES RELATING TO PERSONAL INJURY, BODILY INJURY OR PROPERTY DAMAGE) (COLLECTIVELY, THE "CLAIMS") OF ANY PERSON OR ENTITY WHOMSOEVER, DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM OR RELATED**

TO (IN WHOLE OR IN PART) (I) DONEE'S OWNERSHIP OR USE OF THE PROPERTY; (II) ANY BREACH BY DONEE OF ANY OF ITS REPRESENTATIONS OR WARRANTIES SET FORTH HEREIN, OR ANY FAILURE BY DONEE TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS CONTRACT; (III) ANY CLAIMS OF THIRD PARTIES CAUSED BY DONEE'S NONPERFORMANCE OR PERFORMANCE AFTER CLOSING UNDER ANY CONTRACT, LEASE, PERMIT, LICENSE, EASEMENT OR COMMITMENT RELATING TO THE PROPERTY; OR (IV) ANY ACT OR OMISSION, INCLUDING NEGLIGENCE, OF DONEE, ITS EMPLOYEES, INDEPENDENT CONTRACTORS, SUBCONTRACTORS, LESSEES, LICENSEES, PERMITTEES, INVITEES, OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY OR UNDER THE CONTROL OF ANY OF THEM, EVEN IF SUCH CLAIMS ARISE IN WHOLE OR IN PART FROM ANY THE NEGLIGENCE OF ANY INDEMNITEE. THE ONLY CLAIMS WITH RESPECT TO WHICH DONEE'S OBLIGATION TO INDEMNIFY THE INDEMNITEES DOES NOT APPLY ARE CLAIMS TO THE EXTENT FINALLY ADJUDICATED TO HAVE BEEN PROXIMATELY CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF AN INDEMNITEE.

(b) DONEE SHALL PROMPTLY ADVISE BNSF IN WRITING OF ANY ACTION, ADMINISTRATIVE OR LEGAL PROCEEDING OR INVESTIGATION AS TO WHICH THIS INDEMNIFICATION MAY APPLY, AND DONEE, AT DONEE'S EXPENSE, SHALL ASSUME ON BEHALF OF BNSF (AND THE OTHER INDEMNITEES), AND CONDUCT WITH DUE DILIGENCE AND IN GOOD FAITH THE DEFENSE THEREOF WITH COUNSEL SELECTED BY DONEE WHO IS REASONABLY SATISFACTORY TO BNSF; PROVIDED, HOWEVER, THAT BNSF SHALL HAVE THE RIGHT, AT ITS OPTION, TO BE REPRESENTED THEREIN BY ADVISORY COUNSEL OF ITS OWN SELECTION AND AT ITS OWN EXPENSE. IN THE EVENT OF FAILURE BY DONEE TO FULLY PERFORM IN ACCORDANCE WITH THIS INDEMNIFICATION, BNSF, AT ITS OPTION, AND WITHOUT RELIEVING DONEE OF ITS OBLIGATIONS HEREUNDER, MAY SO PERFORM, BUT ALL COSTS AND EXPENSES SO INCURRED BY BNSF IN THAT EVENT SHALL BE REIMBURSED BY DONEE TO BNSF, TOGETHER WITH INTEREST ON THE SAME FROM THE DATE ANY SUCH EXPENSE WAS PAID BY BNSF UNTIL REIMBURSED BY DONEE, AT THE RATE OF INTEREST PROVIDED TO BE PAID ON JUDGMENTS, BY THE LAW OF THE JURISDICTION TO WHICH INTERPRETATION OF THIS CONTRACT IS SUBJECT. THIS INDEMNIFICATION SHALL NOT BE LIMITED TO DAMAGES, COMPENSATION OR BENEFITS PAYABLE UNDER INSURANCE POLICIES, WORKERS' COMPENSATON ACTS, DISABILITY BENEFIT ACTS, OR OTHER EMPLOYEES' BENEFIT ACTS.

(c) TO THE FULLEST EXTENT PERMITTED BY LAW, DONEE FURTHER AGREES, REGARDLESS OF ANY NEGLIGENCE OR ALLEGED NEGLIGENCE OF ANY INDEMNITEE, TO INDEMNIFY AND HOLD HARMLESS THE INDEMNITEES AGAINST AND SHALL ASSUME THE DEFENSE OF ANY LIABILITIES ASSERTED AGAINST OR SUFFERED BY ANY INDEMNITEE UNDER OR RELATED TO THE FEDERAL EMPLOYERS' LIABILITY ACT ("FELA") WHENEVER EMPLOYEES OF DONEE OR ANY OF ITS AGENTS, INVITEES, CONTRACTORS OR SUBCONTRACTORS CLAIM OR ALLEGE THAT THEY ARE EMPLOYEES OF ANY INDEMNITEE OR OTHERWISE. THIS INDEMNITY SHALL ALSO EXTEND, ON THE SAME BASIS, TO FELA CLAIMS BASED ON ACTUAL OR ALLEGED

**VIOLATIONS OF ANY FEDERAL, STATE OR LOCAL LAWS OR REGULATIONS, INCLUDING BUT NOT LIMITED TO THE SAFETY APPLIANCE ACT, THE BOILER INSPECTION ACT, THE OCCUPATIONAL HEALTH AND SAFETY ACT, THE RESOURCE CONSERVATION AND RECOVERY ACT, AND ANY SIMILAR STATE OR FEDERAL STATUTE.**

12. Default/Remedies. In the event either party breaches any of its obligations hereunder or under the Right of Entry Agreement and such breach is not cured within five (5) business days after written notice thereof from the non-breaching party, the non-breaching party may, at its election and without prejudice, terminate this Contract. If such breach occurs after Closing, the non-breaching party shall be entitled to stipulated damages in the amount of the appraised fair market value of the Property, and if such breach occurs prior to Closing, the non-breaching party shall be entitled to stipulated damages in the amount of $5,000.00 from the breaching party, and the parties shall have no further obligation hereunder except for those that expressly survive termination. The parties acknowledge and agree that actual damages are difficult to ascertain and that such sum represents a reasonable estimate of a party's actual damages in the event of such breach. Nothing contained in the foregoing shall be deemed to limit any liability, obligation or remedy related to (i) Donee's indemnification obligations set forth herein or in the Right of Entry Agreement or (ii) any breach of this Contract occurring after Closing.

13. Liens of BNSF's Mortgages. BNSF shall use commercially reasonable efforts to deliver to Donee, who shall place of record, good and sufficient releases of the liens of BNSF's mortgages, where required under the terms of any mortgage on the Property that secures debt for which BNSF is liable, within a reasonable period of time after Closing. In the event BNSF shall be unable to obtain said releases for any reason within two (2) years from the date of Closing, BNSF shall have the right to terminate this Contract upon serving written notice of termination upon Donee within thirty (30) days thereafter, and both parties shall thereupon be released and discharged from all liabilities and obligations hereunder, except liabilities and indemnity for loss and damage which arose or accrued prior to the termination. In such event, Donee shall reconvey title to the Property to BNSF free and clear of defects or objections to the same extent as if no conveyance had been made to Donee hereunder.

14. Authority. Donee warrants and affirms that it has the necessary authority to enter into this Contract and that all of the obligations hereunder are enforceable and legally binding on the Donee and its successors. Donee represents and warrants to BNSF it is a political subdivision of the State of Kansas, validly existing and in good standing under applicable law. The person executing this Contract on behalf of the Donee warrants and affirms that he or she is fully authorized to do so for and on behalf of the Donee.

15. Notices. All notices and other communications under this Contract shall be in writing and deemed properly served if delivered by hand to the party addressed or, if mailed, when received by the United States Postal Service in registered or certified mail, postage prepaid, or, if sent by a national overnight service, when received by the carrier service in a prepaid mailer, return receipt required, addressed as follows:

BNSF: Assistant Vice President
Property Management Department
BNSF Railway Company
P.O. Box 961050
2650 Lou Menk Drive
Fort Worth, TX 76161-0050

Donee: The City of Wichita
455 N. Main Street
Wichita, KS 67202
Attn:____________________

Either party hereto may change the address or addressee to which notices are to be given by providing written notice of the change to the other party without need of amendment to this Contract.

16. Survival of Rights and Obligations; Term. This Contract and the rights and obligations hereunder shall survive Closing, shall not be merged into the Deed and shall be continuing in nature. Unless earlier terminated pursuant to the terms of this Contract, this Contract shall survive Closing and shall continue in force and effect during the pendency of interim trail use. Donee's indemnification obligations set forth in this Contract shall survive termination of this Contract.

17. Real Estate Commissions. If any real estate broker or agent can establish a valid claim for commission or other compensation as a result of Donee having used their services in connection with the grant of the Property, all such commission or other compensation shall be borne by Donee.

18. Successors and Assigns. Wherever referred to herein, the term Donee shall imply, mean and apply to Donee, its successors, assigns, heirs, executors, administrators, or designees, who shall be severally and collectively liable for any and all performance hereunder. Wherever referred to herein, the term BNSF shall imply, mean and apply to BNSF, its successors, assigns, heirs, executors, administrators, or designees, who shall be severally and collectively liable for any and all performance hereunder.

19. Tax Deferred Exchange. BNSF reserves the right to assign this Contract to a qualified intermediary within the meaning of Section 1031 of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.1031(k)-1(g), for the purpose of completing a tax-deferred exchange under said Section 1031. BNSF shall bear all expenses associated with the use of a qualified intermediary, or necessary to qualify this transaction as a tax-deferred exchange. Donee shall cooperate with BNSF, with respect to any tax-deferred exchange or any other tax-related transaction pertaining to the transfer of the Property (including, without limitation, any donation tax deductions) and to execute such documents as may be required to effect any permissible tax-deferred exchange or other tax-related transaction.

20. Governing Law. This Contract shall be governed by and construed in accordance with the internal laws of the State of Kansas and applicable federal laws pertaining to NITUs, without reference to the conflicts of laws or choice of law provisions thereof.

21. Disputes. All claims, counterclaims, disputes, and other matters in question between the parties arising out of or relating to the Contract will be decided by binding arbitration if the parties so mutually agree, or otherwise in the U.S. District Court for the District of Kansas, located in Kansas City, Kansas.

22. Section Headings. The titles of sections and subsections herein have been inserted as a matter of convenience of reference only and shall not control or affect the meaning or construction of any of the terms or provisions herein.

23. Effect of Waiver. Any waiver by BNSF or failure of BNSF to insist upon full and complete performance of Donee's obligations set forth herein shall not constitute a waiver or release of BNSF's right to insist upon full and complete performance of any other obligations herein, or a waiver or

release of BNSF's right to insist upon full and complete performance of the obligations that were waived or not enforced for periods prior to, or following, the waiver or failure to insist upon full and complete performance.

24. Amendments. No amendment to, or waiver of any provision of, this Contract shall be binding on any of the parties hereto unless such amendment or waiver is in writing and, if an amendment, is executed by both parties, and if a waiver, is executed by the party against whom enforcement of such waiver is sought.

25. Time of Essence. Time is of the essence in the performance of this Contract.

26. Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Contract, the prevailing party shall be entitled to recover all costs and expenses incurred by it in connection therewith, including its reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which it may be entitled.

**27. CONSTRUCTION. BNSF AND DONEE ACKNOWLEDGE THAT EACH PARTY AND, IF IT SO CHOOSES, ITS COUNSEL, HAVE REVIEWED AND REVISED THIS CONTRACT AND THAT THE NORMAL RULE OF CONSTRUCTION TO THE EFFECT THAT ANY AMBIGUITIES ARE TO BE RESOLVED AGAINST THE DRAFTING PARTY WILL NOT BE EMPLOYED IN THE INTERPRETATION OF THIS CONTRACT OR ANY AMENDMENTS OR EXHIBITS HERETO.**

28. Severability. If any provision of this Contract is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable and this Contract shall be construed and enforced as if such illegal, invalid or unenforceable provision is not a part hereof, and the remaining provisions hereof shall remain in full force and effect. In lieu of any illegal, invalid or unenforceable provision herein, there shall be added automatically as a part of this Agreement a provision as similar in its terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

29. Entire Agreement. This Contract contains the entire agreement of the parties hereto with respect to the Property and any other prior understandings or agreements are merged herein and no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein or incorporated herein by reference shall be of any force or effect.

30. Execution. This Contract is executed in duplicate originals of equal force and effect. It is specifically agreed and understood by the parties hereto that the Donee shall, before _______________, 2005, accept and sign this Contract and return both copies to BNSF's address set forth in **Section 15**. Failure of the Donee to perform within the time restrictions will render this Contract null and void in its entirety.

31. Counterparts. To facilitate execution, this Contract may be executed in as may counterparts as may be convenient or required. It shall not be necessary that the signature or acknowledgement of, or on behalf of, each party, or that the signature of all persons required to bind any party or the acknowledgment of such party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Contract to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, and the respective acknowledgments of, each of the parties hereto. Any signature or

acknowledgment page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures or acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature or acknowledgment pages.

[The balance of this page has been intentionally left blank.]

Accepted and agreed to the ____ day of __________, 2005 (the "**Contract Date**").

BNSF:

**BNSF RAILWAY COMPANY,**
a Delaware Corporation

By: ______________
Print Name: Peter J. Rickershauser
Title: Vice President

**DONEE:**

**CITY OF WICHITA**

By: ______________
Print Name: CARLOS MAYANS
Title: MAYOR

Attest: Karen Sublett
City Clerk

APPROVED AS TO FORM:
Gary E. Rebenstorf

Attachments:

| | |
|---|---|
| Exhibit A - | Description of Property |
| Exhibit B- | Quitclaim Deed |
| Exhibit C- | Bill of Sale |
| Exhibit D- | IRS Form 8283 |
| Exhibit E- | Charitable Contribution Receipt |

**EXHIBIT A**

DESCRIPTION OF PROPERTY

All that portion of BNSF Railway Company's (formerly The Burlington Northern and Santa Fe Railway Company and formerly St. Louis-San Francisco Railway Company) 100.0 foot wide Andover to Wichita, Kansas Branch Line right of way, being 50.0 feet wide on each side of said Railway Company's Main Track centerline, as originally located and constructed upon, over and across the N½N½S½ of Section 12, and across Sections 11, 10, 9, 8 and 7, all in Township 27 South, Range 2 East, and across Section 12, the SE¼ and the SE¼SW¼ of Section 11, the NW¼ and the NW¼SW¼ of Section 14, the S½ of Section 15 and the E½E½SE¼ of Section 16, all in Township 27 South Range 1 East, all of the 6th P. M., Sedgwick County, Kansas, bounded on the East by the East line of said Section 12, Township 27 South, Range 2 East, also being the East line of Sedgwick County, and bounded on the West by the Westerly right of way line of Hydraulic Street in the City of Wichita at Milepost 504.05.

Andover to Wichita, KS 8-21-03

**<u>EXHIBIT B</u>**

QUITCLAIM DEED

THIS QUITCLAIM DEED, made this ________ day of ________________, 2005, by and between BNSF RAILWAY COMPANY, a Delaware corporation, formerly The Burlington Northern and Santa Fe Railway Company, ("**BNSF**"), and CITY OF WICHITA, a political subdivision of the State of Kansas, with its principal office at 455 N. Main Street, Wichita, KS 67202 ("**Donee**").

WITNESSETH: That BNSF, for Ten and No/100 Dollars ($10.00) and other good and valuable consideration, to it in hand paid, the receipt of which is hereby acknowledged, does hereby REMISE, RELEASE and FOREVER QUITCLAIM, without any covenants of warranty whatsoever and without recourse to BNSF, its successors and assigns, unto Donee, its successors and assigns, all of its right, title and interest, if any, in real estate and its rights under any leases related to such real estate, if any, subject however to all existing interests, including but not limited to all reservations, rights-of-way, leases, easements and other encumbrances, of record or otherwise, located in the County of Sedgwick, State of Kansas, more particularly described on the attached **<u>Exhibit A</u>** which is fully incorporated herein by reference (the "**Property**").

SUBJECT, to the terms of that certain Railbanking and Donation Contract, dated __________, 2005 ("**Contract**"), which terms shall be incorporated herein, this conveyance is dependent upon and pursuant to the issuance of a Notice of Interim Trail Use ("**NITU**") in Surface Transportation Board ("**STB**") Docket No. AB-6 (Sub-No. 403X), The Burlington Northern and Santa Fe Railway Company – Abandonment Exemption in Sedgwick County, Kansas (now BNSF Railway Company), in accordance with 16 U.S.C. Section 1247(d), the STB's rules and regulations pertaining to interim trails use, and other applicable authorities, all as amended from time to time;

SUBJECT, to interpretation pursuant to and in conformity with Section 8(d) of the National Trails Systems Act, 16 U.S.C. Section 1247(d), and the rules and regulations of the STB related thereto, all as may be amended from time to time. Donee shall assume, indemnify, defend, and hold harmless BNSF from all financial, managerial and legal responsibility for the Property, including without limitation any liabilities and responsibilities assumed by or placed upon Donee pursuant to and in accordance with the NITU, Donee's Statement of Willingness to Assume Financial Responsibility filed with the STB, and any applicable STB orders related to this conveyance and any leases affecting the Property. Donee acknowledges that any interim trail use by Donee or its assigns shall be subject to the possibility of future restoration of rail service and/or BNSF's retained interests pursuant to the Contract and/or federal law. Donee shall take all steps necessary, at no expense to BNSF, to comply with any and all state and federal requirements relating to such interim trail use and/or restoration;

SUBJECT, to Donee's obligation that interim trail use by Donee shall not impair future restoration of rail service pursuant to the National Trails Systems Act, as amended.

RESERVING, unto BNSF, the right to reactivate and restore rail service on the Property. Should BNSF or any such assignee of BNSF exercise this right at any time, Donee or its assignee shall allow reactivation of rail service on the terms and conditions set forth in the Contract. Upon BNSF's notice of intent to restore rail service, Donee shall reconvey the Property to BNSF free and clear of any encumbrances or liens not in effect prior to Closing at no cost to BNSF except to the extent expressly provided otherwise in said Contract; and

ALSO RESERVING, unto BNSF, its successors and assigns, access rights across and to the entire Property for emergency purposes and for the exercise of any rights related to retained interests in the Property as deemed necessary or advisable by BNSF, without charge and without notification to Donee; provided, however, BNSF's exercise of this reservation shall not permanently damage improvements placed on the Property by Donee or its successors and shall not unduly burden the use of the Property as a recreational trail;

ALSO RESERVING, unto BNSF all rail, ties, spikes, tie plates, rail anchors, ballast, signaling and communications equipment, crossings and crossing equipment, signage, roundhouses, depots, and other support facilities, track materials and supplies, whether or not same are deemed affixed to the Property ("**Salvage Materials**"), including all rights to assign or transfer such Salvage Materials to third party assignees. BNSF, its contractors and/or third party assignees shall have a continuing right of entry on the Property for a period of 365 days from the date of Closing ("**Salvage Period**") in order to allow BNSF, its contractors and/or its third party assignees to salvage said Salvage Materials. BNSF, its contractors and/or its third party assignees shall have the right, but not the obligation, to salvage all or a part of said Salvage Materials. Any Salvage Materials remaining on the Property after the Salvage Period shall be deemed abandoned and relinquished unto Donee; provided, however, to the extent any such Salvage Materials remaining are owned by any third party (e.g., crossing equipment owned in whole or in part by a governmental authority), said interests shall not be conveyed unto Donee.

Donee has been allowed to make an inspection of the Property and has knowledge as to the past use of the Property. Based upon this inspection and knowledge, Donee is aware of the condition of the Property and **DONEE SPECIFICALLY ACKNOWLEDGES THAT THE PROPERTY IS BEING QUITCLAIMED ON AN "AS-IS WITH ALL FAULTS" BASIS WITH ANY AND ALL PATENT AND LATENT DEFECTS, INCLUDING THOSE RELATING TO THE ENVIRONMENTAL CONDITION OF THE PROPERTY, AND DONEE IS NOT RELYING ON ANY REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER FROM BNSF AS TO ANY MATTERS CONCERNING THE PROPERTY,** including, without limitation, the physical condition of the Property; zoning status; tax consequences of this transaction; utilities; operating history or projections or valuation; compliance by the Property with Environmental Laws (defined below) or other laws, statutes, ordinances, decrees, regulations and other requirements applicable to the Property; the presence of any Hazardous Substances (defined below), wetlands, asbestos, lead, lead-based paint or other lead containing structures, urea formaldehyde, or other environmentally sensitive building materials in, on, under, or in proximity to the Property; the condition or existence of any of the above ground or underground structures or improvements, including tanks and transformers in, on or under the Property; the condition of title to the Property; and any leases, easements, reservations, permits, orders, licenses, or other rights or agreements, affecting the Property. **BNSF EXPRESSLY DISCLAIMS ANY WARRANTIES FOR THE PROPERTY OR APPURTENANCES THERETO, INCLUDING, WITHOUT LIMITATION, WARRANTIES AS TO TITLE, MERCHANTABILITY, HABITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR CONFORMITY OF THE PROPERTY TO ITS INTENDED USE.**

Donee acknowledges and represents to BNSF that Donee is aware of the risk that Hazardous Substances may be present on, under, in or about the Property and that Donee has conducted such investigations of the Property, including but not limited to, the physical and environmental conditions thereof, that Donee deemed necessary to satisfy itself as to the condition of the Property and will rely solely upon same and not upon any information provided by or on behalf of BNSF or its agents or employees with respect thereto. **DONEE ASSUMES THE RISK THAT ADVERSE MATTERS MAY NOT HAVE BEEN REVEALED BY DONEE'S INVESTIGATIONS, AND DONEE SHALL**

**INDEMNIFY, HOLD HARMLESS AND HEREBY WAIVES, RELEASES AND DISCHARGES FOREVER BNSF (AND BNSF'S AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, LICENSEES AND INVITEES) FROM ANY AND ALL PRESENT OR FUTURE, KNOWN OR UNKNOWN, CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING, BUT NOT LIMITED TO, THOSE IN CONTRACT, TORT AND STRICT LIABILITY), DAMAGES (INCLUDING, WITHOUT LIMITATION, CONSEQUENTIAL AND PUNITIVE), LOSSES, INJURIES, LIABILITIES, COSTS (INCLUDING, BUT NOT LIMITED TO, FINES, PENALTIES, COURT COSTS AND ATTORNEYS' FEES) ARISING FROM OR IN ANY WAY RELATED TO (I) ANY LATENT OR PATENT CONDITIONS OF THE PROPERTY, (II) ANY BODILY INJURY OR DEATH OR LOSS OR DAMAGE TO THE PROPERTY OF ANY PERSON OR PERSONS WHOMEVER, INCLUDING THE PARTIES HERETO, IN ANY MANNER ARISING FROM OR GROWING OUT OF THE ACTS OR OMISSIONS, NEGLIGENT OR OTHERWISE, OF DONEE OR ITS OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, LICENSEES AND INVITEES IN CONNECTION WITH THE ENTRY UPON, OCCUPATION OR USE OF THE PROPERTY, AND/OR (III) ANY ALLEGED OR ACTUAL PRESENCE, USE, STORAGE, GENERATION, MANUFACTURE, TRANSPORT, RELEASE, LEAK, SPILL, DISPOSAL OR OTHER HANDLING OF ANY HAZARDOUS SUBSTANCES IN, ON, UNDER OR ABOUT THE PROPERTY.** As used herein, the term "**Environmental Law**" means any federal, state or local statute, regulation, code, rule, ordinance, order, judgment, decree, injunction or common law pertaining in any way to the protection of human health or the environment, including without limitation, the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Toxic Substances Control Act, and any similar or comparable state or local law. As used herein, the term "**Hazardous Substance**" means any hazardous, toxic, radioactive or infectious substance, material, contaminant or waste as defined, listed or regulated under any Environmental Law, and includes without limitation, petroleum oil and any of its fractions.

If any of the terms under this quitclaim deed shall be unlawful or void for violation of (a) the rule against perpetuities or some analogous statutory provision, or (b) any other statutory or common law rules imposing like or similar time limits, then such terms shall continue only for the period of twenty-one (21) years after the death of the last survivor of the lineal descendants of Elizabeth II, Queen of England, living as of the date hereof.

**Donee acknowledges that, according to BNSF's records, BNSF's interest in the Property may be subject to reversion upon abandonment of use for railroad purposes or cessation of interim trail use, and that the quitclaim deed releases and conveys only BNSF's interest, if any, it may have in the Property.**

**Donee also acknowledges that a material consideration for this conveyance, without which it would not be made, is the agreement by Donee, for itself and for its successors and assigns, that BNSF, its predecessors, successors, and assigns shall be in no manner responsible to Donee, any subsequent owner, purchaser, or any person for any claims, demands, damages, causes of action, including loss of access, or suits regarding the quiet and peaceable possession of the Property, title thereto, or condition thereof.**

**TO HAVE AND TO HOLD** the Property unto the said Donee, its successors and assigns, forever.

[Signature and acknowledgment pages follow]

**IN WITNESS WHEREOF**, the said BNSF has caused this instrument to be signed by its authorized representative, attested by its Assistant Secretary, and its corporate seal to be affixed hereto on the day and year first above written.

BNSF:

BNSF RAILWAY COMPANY,
a Delaware Corporation

By: ______________________________
Print Name: ______________________________
Title: ______________________________

Accepted:

DONEE:

CITY OF WICHITA,
a political subdivision of the State of Kansas

By: ______________________________
Print Name: ______________________________
Title: ______________________________

APPROVED AS TO FORM:

[signature]

STATE OF ________________ )
) ss.
COUNTY OF ___________ )

On this ________ day of ___________________, 20__, before me appeared _________________________, to me personally known, who being by me duly sworn, did say that he or she is _______________________ of __________ County, ____________, a _____________________, and that said instrument was signed in behalf of said __________________ by authority of its Board of Directors or other applicable governing body and said _____________________________ acknowledged said instrument to be the duly authorized free act and deed of said _______________________.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my notarial seal the day and year last above written.

________________________________
Notary Public

My Commission Expires:____________

STATE OF TEXAS )
) ss.
COUNTY OF TARRANT )

On this ____ day of ____________________, 20__, before me appeared ____________________________________________, to me personally known, who being by me duly sworn, did say that he or she is ________________________________________________ of BNSF RAILWAY COMPANY, that the seal affixed to the foregoing instrument is the corporate seal of said corporation and that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors and said _____________________________________________ acknowledged said instrument to be the free act and deed of said corporation.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my notarial seal the day and year last above written.

_____________________________________
Notary Public

My Commission Expires: ____________________

*[Exhibit A to be attached prior to execution by the parties]*

# EXHIBIT C

## BILL OF SALE

BNSF RAILWAY COMPANY, a Delaware corporation ("**BNSF**"), with an address of 2500 Lou Menk Drive, AOB-3, Fort Worth, Texas 76131, in consideration of Ten Dollars ($10.00) and other good and valuable consideration to it paid by CITY OF WICHITA, a political subdivision of the State of Kansas, ("**Donee**"), with an address of 455 N. Main Street, Wichita, KS 67202, receipt whereof is hereby acknowledged, has assigned, transferred and delivered and by these presents does hereby sell, assign, transfer and deliver unto the Donee, without any covenants of warranty whatsoever and without recourse to BNSF, all of its right, title and interest, if any, in and to all bridges, culverts, trestles, and earthwork ("**Personal Property**"), presently used in the ownership and operation of the rail line located on or along the premises between MP 494.22 and MP 504.00 in Sedgwick County, State of Kansas, which premises are more particularly described in **Exhibit A** attached hereto ("**Real Property**"); provided, however, this conveyance shall not include rail, ties, spikes, tie plates, rail anchors, ballast, signaling and communications equipment, crossings and crossing equipment, signage, roundhouses, depots, and other support facilities, track materials and supplies, whether or not same are deemed affixed to the Real Property ("**Salvage Materials**"). BNSF, its contractors and/or its third party assignees shall have a continuing right of entry on the Real Property for a period of 365 days from the date of Closing ("**Salvage Period**") in order to allow BNSF, its contractors and/or its third party assignees to salvage said Salvage Materials. BNSF, its contractors and/or third party assignees shall have the right, but not the obligation, to salvage all or a part of said Salvage Materials. Any Salvage Materials remaining on the Real Property after the Salvage Period shall be deemed abandoned and relinquished unto Donee; provided, however, to the extent any such Salvage Materials remaining are owned by any third party (e.g., crossing equipment owned in whole or in part by a governmental authority), said interests shall not be conveyed unto Donee.

**BNSF HEREBY DISCLAIMS ANY REPRESENTATION OR WARRANTY, WHETHER EXPRESS OR IMPLIED, AS TO THE DESIGN OR CONDITION OF THE PERSONAL PROPERTY, ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE PERSONAL PROPERTY, THE CONFORMITY OF THE PERSONAL PROPERTY TO ITS INTENDED USES OR THE QUALITY OF THE TITLE TO THE PERSONAL PROPERTY. BNSF SHALL NOT BE LIABLE TO DONEE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY IN TORT) WITH RESPECT TO THE DESIGN, CONDITION, QUALITY, SAFETY, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, OF THE PERSONAL PROPERTY OR THE CONFORMITY OF THE PERSONAL PROPERTY TO ITS INTENDED USES. DONEE ACCEPTS THE PERSONAL PROPERTY IN "AS IS, WHERE IS" AND "WITH ALL FAULTS" CONDITION, AND SUBJECT TO ALL LIMITATIONS ON BNSF'S RIGHTS, INTEREST, AND TITLE TO THE PROPERTY COMPRISING THE PERSONAL PROPERTY.**

TO HAVE AND TO HOLD, together with all appurtenances thereunto belonging to the Donee, its successors and assigns, forever.

[Signature page follows]

IN WITNESS WHEREOF, BNSF has caused this Bill of Sale to be signed by its duly authorized officers this ______ day of ____________, 20005.

BNSF:

BNSF RAILWAY COMPANY,
a Delaware Corporation

By: ______________________________
Print Name:________________________
Title: ____________________________

Accepted:

DONEE:

CITY OF WICHITA,
a political subdivision of the State of Kansas

By: ______________________________
Print Name:________________________
Title: ____________________________

APPROVED AS TO FORM:
Gary E. Rebenstorf

*[Exhibit A to be attached prior to execution by the parties]*

**EXHIBIT D**

IRS FORM 8283

[See following two pages]

Form **8283**
(Rev. October 1998)
Department of the Treasury
Internal Revenue Service

# Noncash Charitable Contributions

▶ Attach to your tax return if you claimed a total deduction of over $500 for all contributed property.

▶ See separate instructions.

OMB No. 1545-0908

Attachment Sequence No. 55

Name(s) shown on your income tax return

Identifying number

**Note:** *Figure the amount of your contribution deduction before completing this form. See your tax return instructions.*

**Section A**—List in this section **only** items (or groups of similar items) for which you claimed a deduction of $5,000 or less. Also, list certain publicly traded securities even if the deduction is over $5,000 (see instructions).

**Part I** Information on Donated Property—If you need more space, attach a statement.

| 1 | (a) Name and address of the donee organization | (b) Description of donated property |
|---|---|---|
| A | | |
| B | | |
| C | | |
| D | | |
| E | | |

**Note:** *If the amount you claimed as a deduction for an item is $500 or less, you do not have to complete columns (d), (e), and (f).*

| | (c) Date of the contribution | (d) Date acquired by donor (mo., yr.) | (e) How acquired by donor | (f) Donor's cost or adjusted basis | (g) Fair market value | (h) Method used to determine the fair market value |
|---|---|---|---|---|---|---|
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |

**Part II** Other Information—Complete line 2 if you gave less than an entire interest in property listed in Part I. Complete line 3 if conditions were attached to a contribution listed in Part I.

2 If, during the year, you contributed less than the entire interest in the property, complete lines a–e.

a Enter the letter from Part I that identifies the property ▶ ________. If Part II applies to more than one property, attach a separate statement.

b Total amount claimed as a deduction for the property listed in Part I: (1) For this tax year ▶ ________.
(2) For any prior tax years ▶ ________.

c Name and address of each organization to which any such contribution was made in a prior year (complete only if different from the donee organization above):

Name of charitable organization (donee)

Address (number, street, and room or suite no.)

City or town, state, and ZIP code

d For tangible property, enter the place where the property is located or kept ▶ ________

e Name of any person, other than the donee organization, having actual possession of the property ▶ ________

3 If conditions were attached to any contribution listed in Part I, answer questions a – c and attach the required statement (see instructions).

| | Yes | No |
|---|---|---|
| a Is there a restriction, either temporary or permanent, on the donee's right to use or dispose of the donated property? | | |
| b Did you give to anyone (other than the donee organization or another organization participating with the donee organization in cooperative fundraising) the right to the income from the donated property or to the possession of the property, including the right to vote donated securities, to acquire the property by purchase or otherwise, or to designate the person having such income, possession, or right to acquire? | | |
| c Is there a restriction limiting the donated property for a particular use? | | |

**For Paperwork Reduction Act Notice, see page 4 of separate instructions.** Cat. No. 62299J Form **8283** (Rev. 10-98)

Name(s) shown on your income tax return | Identifying number

**Section B—Appraisal Summary**—List in this section only items (or groups of similar items) for which you claimed a deduction of more than $5,000 per item or group. **Exception.** Report contributions of certain publicly traded securities only in Section A.

If you donated art, you may have to attach the complete appraisal. See the **Note** in Part I below.

**Part I** Information on Donated Property—To be completed by the taxpayer and/or appraiser.

4 Check type of property:

☐ Art* (contribution of $20,000 or more) ☐ Real Estate ☐ Gems/Jewelry ☐ Stamp Collections

☐ Art* (contribution of less than $20,000) ☐ Coin Collections ☐ Books ☐ Other

*Art includes paintings, sculptures, watercolors, prints, drawings, ceramics, antique furniture, decorative arts, textiles, carpets, silver, rare manuscripts, historical memorabilia, and other similar objects.

**Note:** *If your total art contribution deduction was $20,000 or more, you must attach a complete copy of the signed appraisal. See instructions.*

| 5 | (a) Description of donated property (if you need more space, attach a separate statement) | (b) If tangible property was donated, give a brief summary of the overall physical condition at the time of the gift | (c) Appraised fair market value |
|---|---|---|---|
| A | | | |
| B | | | |
| C | | | |
| D | | | |

| | (d) Date acquired by donor (mo., yr.) | (e) How acquired by donor | (f) Donor's cost or adjusted basis | (g) For bargain sales, enter amount received | See instructions: (h) Amount claimed as a deduction | See instructions: (i) Average trading price of securities |
|---|---|---|---|---|---|---|
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |

**Part II** Taxpayer (Donor) Statement—List each item included in Part I above that the appraisal identifies as having a value of $500 or less. See instructions.

I declare that the following item(s) included in Part I above has to the best of my knowledge and belief an appraised value of not more than $500 (per item). Enter identifying letter from Part I and describe the specific item. See instructions. ▶ ____________

Signature of taxpayer (donor) ▶ Date ▶

**Part III** Declaration of Appraiser

I declare that I am not the donor, the donee, a party to the transaction in which the donor acquired the property, employed by, or related to any of the foregoing persons, or married to any person who is related to any of the foregoing persons. And, if regularly used by the donor, donee, or party to the transaction, I performed the majority of my appraisals during my tax year for other persons.

Also, I declare that I hold myself out to the public as an appraiser or perform appraisals on a regular basis; and that because of my qualifications as described in the appraisal, I am qualified to make appraisals of the type of property being valued. I certify that the appraisal fees were not based on a percentage of the appraised property value. Furthermore, I understand that a false or fraudulent overstatement of the property value as described in the qualified appraisal or this appraisal summary may subject me to the penalty under section 6701(a) (aiding and abetting the understatement of tax liability). I affirm that I have not been barred from presenting evidence or testimony by the Director of Practice.

**Sign Here** Signature ▶ Title ▶ Date of appraisal ▶

Business address (including room or suite no.) | Identifying number

City or town, state, and ZIP code

**Part IV** Donee Acknowledgment—To be completed by the charitable organization.

This charitable organization acknowledges that it is a qualified organization under section 170(c) and that it received the donated property as described in Section B, Part I, above on ▶ ____________ (Date)

Furthermore, this organization affirms that in the event it sells, exchanges, or otherwise disposes of the property described in Section B, Part I (or any portion thereof) within 2 years after the date of receipt, it will file **Form 8282**, Donee Information Return, with the IRS and give the donor a copy of that form. This acknowledgment does not represent agreement with the claimed fair market value.

Does the organization intend to use the property for an unrelated use? . . . . . . . . . . . . . . ▶ ☐ Yes ☐ No

Name of charitable organization (donee) | Employer identification number

Address (number, street, and room or suite no.) | City or town, state, and ZIP code

Authorized signature | Title | Date

**EXHIBIT E**

CHARITABLE CONTRIBUTION RECEIPT

Substantiation for Charitable Donations of $250 or More

Internal Revenue Code Section 170(f)(8) requires that the recipient (Donee) of any single charitable gift of $250 or more give the donor written confirmation of the receipt of such a gift, including a description and a good faith estimate of the value of any goods and services provided by the recipient (Donee) in exchange for the donor making the gift.

In order to comply with this Code Section, the City of Wichita, a political subdivision of the State of Kansas, hereby certifies that it received the following contribution from BNSF Railway Company:

Cash or check in the amount of: $__________________
Or
Property consisting of: ____________________________________________________

______________________________________________________________________

Date contribution received: ______________

Were any goods and/or services **provided to** BNSF Railway Company in return for this contribution?

Yes_______ No_______

If yes, a description of those goods and services is provided below with a statement of monetary value:
______________________________________________________________________

Value: $_______________________________

Organization Name: City of Wichita, a political subdivision of the State of Kansas
Address: 455 N. Main Street, Wichita, KS 67202
Telephone/Fax: ____________________________________________

Organization Tax ID#: ___________________

Signature: ________________________ Date: _________________________

Name: ___________________________ Title: _________________________


East Wichita BNSF Railbanking
159TH (Butler County)
37TH
29TH
21ST
13TH
CENTRAL
KELLOGG
HARRY
PAWNEE
143RD
127TH
GREENWICH
WEBB
ROCK
WOODLAWN
OLIVER
HILLSIDE
HYDRAULIC
96
54
254
235
BNSF East Wichita Railbanking
Abandoned Railroad
Active Railroads


BNSF East-Wichita Railbanking
37TH
29TH
21ST
13TH
CENTRAL
US54
HARRY
PAWNEE
31ST
39TH
47TH
55TH
159TH
143RD
127TH
GREENWICH
WEBB
ROCK
WOODLAWN
OLIVER
CLIFTON
HYDRAULIC
BROADWAY
SENECA
MERIDIAN
WEST
HOOVER
RIDGE
87TH
BNSF EAST WICHITA
WICHITA
96
54
35
135
235
Proposed Railbanking
BNSF East Wichita
Railroads
To be Abandoned

EXHIBIT
tabbles'
L

person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**(c) Pleading Reasons for Nonjoinder.** A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as prescribed in subdivision (a)(1)–(2) hereof who are not joined, and the reasons why they are not joined.

**(d) Exception of Class Actions.** This rule is subject to the provisions of RCFC 23.

(As revised and reissued May 1, 2002.)

**Rules Committee Note**
**2002 Revision**

Reference to RCFC 14 was deleted from subdivision (a) and other minor changes have been made in order to more closely conform to FRCP 19. Some differences, however, were retained—the most significant being the deletion of the last sentence of FRCP 19(a) from this court's rule. The last sentence addresses objections to venue raised by a joined party. Such objections would not be assertable in this court.

**Rule 20. Permissive Joinder of Parties**

**(a) Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. A plaintiff need not be interested in obtaining all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief.

**(b) Separate Trials.** The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom the party asserts no claim and who asserts no claim against the party, and may order separate trials or make other orders to prevent delay or prejudice.

(As revised and reissued May 1, 2002.)

**Rules Committee Note**
**2002 Revision**

The authority previously contained in RCFC 20(a)(1)–(2), permitting unrestricted joinder of additional plaintiffs to a pending multi-party action, proved cumbersome in practice and an impediment to sound case management. The joinder of additional plaintiffs should proceed by appropriate motion under RCFC 15. Accordingly, RCFC 20 was modified so as to more closely parallel the text of the corresponding FRCP.

**Rule 21. Misjoinder and Non-Joinder of Parties**

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

(As revised and reissued May 1, 2002.)

**Rules Committee Note**
**2002 Revision**

The last sentence of the former rule, "To add plaintiffs, see RCFC 20(a)(1)–(2)," was eliminated to more closely conform the rule to FRCP 21.

**Rule 22. Interpleader** [Not used.]

**Rules Committee Note**
**2002 Revision**

The interpleader practice permitted under FRCP 22 is, for the most part, incompatible with the jurisdiction exercisable by this court. However, in those cases where the United States is in the position of a stakeholder facing the risks of double liability, RCFC 14 provides the means for summoning a third party.

**Rule 23. Class Actions**

**(a) Prerequisites to a Class Action.** One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the

class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

**(1)** the United States has acted or refused to act on grounds generally applicable to the class; and

**(2)** the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

**(c) Determining by Order Whether to Certify a Class Action; Appointing Class Counsel; Notice and Membership in Class; Judgment; Multiple Classes and Subclasses.**

**(1)(A)** When a person sues or is sued as a representative of a class, the court must—at an early practicable time—determine by order whether to certify the action as a class action.

**(B)** An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g).

**(C)** An order under RCFC 23(c)(1) may be altered or amended before final judgment.

**(2)(A)** [Not used.]

**(B)** For any class certified under RCFC 23(b), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:

• the nature of the action,

• the definition of the class certified,

• the class claims, issues, or defenses,

• that a class member may enter an appearance through counsel if the member so desires,

• that the court will include in the class any member who requests inclusion, stating when and how members may elect to be included, and

• the binding effect of a class judgment on class members under RCFC 23.

**(3)** The judgment in an action maintained as a class action under subdivision (b), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and whom the court finds to be members of the class.

**(4)** When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

**(d) Orders in Conduct of Actions.** In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they

consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under RCFC 16, and may be altered or amended as may be desirable from time to time.

**(e) Settlement, Voluntary Dismissal, or Compromise.**

**(1)(A)** The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.

**(B)** The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

**(C)** The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

**(2)** The parties seeking approval of a settlement, voluntary dismissal, or compromise under RCFC 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

**(3)** [Not used.]

**(4)(A)** Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires court approval under RCFC 23(e)(1)(A).

**(B)** An objection made under RCFC 23(e)(4)(A) may be withdrawn only with the court's approval.

**(f) Appeals.** [Not used.]

**(g) Class Counsel.**

**(1) Appointing Class Counsel.**

**(A)** Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.

**(B)** An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.

**(C)** In appointing class counsel, the court

**(i)** must consider:

- the work counsel has done in identifying or investigating potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class;

**(ii)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

**(iii)** may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

**(iv)** may make further orders in connection with the appointment.

**(2) Appointment Procedure.**

**(A)** The court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action.

**(B)** When there is one applicant for appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under RCFC 23(g)(1)(B) and (C). If more than one adequate applicant seeks appointment as class counsel, the court must appoint the applicant best able to represent the interests of the class.

**(C)** The order appointing class

counsel may include provisions about the award of attorney fees or nontaxable costs under RCFC 23(h).

**(h) Attorney Fees Award.** In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law:

**(1) Motion for Award of Attorney Fees.** [Not used.]

**(2) Objections to Motion.** [Not used.]

**(3) Hearing and Findings.** [Not used.]

**(4) Reference to Special Master or Magistrate Judge.** [Not used.]

(As revised and reissued May 1, 2002; as amended July 1, 2004.)

**Rules Committee Notes**
**2002 Revision**

RCFC 23 has been completely rewritten. Although the court's rule is modeled largely on the comparable FRCP, there are significant differences between the two rules. In the main, the court's rule adopts the criteria for certifying and maintaining a class action as set forth in *Quinault Allottee Ass'n v. United States*, 197 Ct. Cl. 134, 453 F.2d 1272 (1972).

Because the relief available in this court is generally confined to individual money claims against the United States, the situations justifying the use of a class action are correspondingly narrower than those addressed in FRCP 23. Thus, the court's rule does not accommodate, *inter alia*, the factual situations redressable through declaratory and injunctive relief contemplated under FRCP 23(b)(1) and (b)(2).

Additionally, unlike the FRCP, the court's rule contemplates only opt-in class certifications, not opt-out classes. The latter were viewed as inappropriate here because of the need for specificity in money judgments against the United States, and the fact that the court's injunctive powers—the typical focus of an opt-out class—are more limited than those of a district court.

Finally, the court's rule does not contain a provision comparable to FRCP 23(f). That subdivision, which provides that a "court of appeals may in its discretion permit an appeal from an order . . . granting or denying class certification," has its origin in 28 U.S.C. § 1292(e), which authorizes the Supreme Court to promulgate rules that provide for an appeal of an interlocutory decision other than those set out in Section 1292. Because no comparable statutory authority exists for this court's promulgation of a similar rule, subdivision (f) has been omitted. It should be noted, however, that the Court of Federal Claims may certify questions to the Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. §§ 1292(b), 1295.

**2004 Amendment**

In addition to the rule changes introduced in 2002, the text of the current rule also incorporates the revisions to FRCP 23 effective December 1, 2003. These revisions, which appear as subdivisions (c), (e), (g), and (h) of the rule, adopt the text of the FRCP except where modification in wording was necessary to accommodate the "opt-in" character of this court's class action practice.

**Rule 23.1 Derivative Actions by Shareholders**

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on this court which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or