# EXHIBIT M, Part 1

EXHIBIT
tabbies
Exh. M, Part 1

# 2006 EDITION

# FEDERAL CIVIL JUDICIAL PROCEDURE and RULES

As amended to February 10, 2006

Rules of Civil Procedure
Rules of Judicial Panel on Multidistrict Litigation
Rules—Habeas Corpus Cases
Rules—Motion Attacking Sentence
Rules of Evidence
Rules of Appellate Procedure
Rules of the Supreme Court

---

Includes laws through Public Law 109–169, approved January 11, 2006

Title 28, Judiciary and Judicial Procedure
Act June 25, 1948, c. 646, §§ 2 to 39
Appendix:
  Judicial Personnel Financial Disclosure Requirements [Repealed]
  Development of Mechanisms for Resolving Minor Disputes [Codified]
Constitution of the United States
Title 5, Government Organization and Employees
  App. 4—Financial Disclosure Requirements of Federal Personnel
Consolidated Index

THOMSON
WEST™

Mat#40412776

urrences and if any ques-
to all these persons will
ons (and any vessel, cargo
admiralty process in rem)
as defendants if there is
ıtly, severally, or in the
ief in respect of or arising
ı, occurrence, or series of
and if any question of law
endants will arise in the
dant need not be interest-
ing against all the relief
be given for one or more
o their respective rights to
nore defendants according
.

'he court may make such
party from being embar-
expense by the inclusion of
party asserts no claim and
st the party, and may order
ıer orders to prevent delay

ff. July 1, 1966; Mar. 2, 1987,

MITTEE NOTES

doption

ere stated are in substance the
California, Illinois, New Jersey,
ent only a moderate expansion
practice to cover both law and

lso [former] Equity Rules 26
, 37 (Parties Generally—Inter-
s), and 42 (Joint and Several

for the joinder of parties are
ction and Venue Unaffected).
The first sentence is derived
*e Judicature Act* (The Annual
Compare Calif.Code Civ.Proc.
; Ill.Rev.Stat. (1937) ch. 110,
(2 Cum.Supp., 1911–1924),
1. The second sentence is de-
*Jnder the Judicature Act* (The
3, r. 4. The third sentence is
the fourth from O. 16, r.r. 1 and

This is derived from *English*
*Act* (The Annual Practice, 1937)

mendment

le 18(a) and the Advisory Com-
as been thought that a lack of
the word "them," as it appeared
contributed to the view, taken by
limited the joinder of claims in

certain situations of permissive party joinder. Although the amendment of Rule 18(a) should make clear that this view is untenable, it has been considered advisable to amend Rule 20(a) to eliminate any ambiguity. See 2 Barron & Holtzoff, *Federal Practice & Procedure* 202 (Wright Ed. 1961).

A basic purpose of unification of admiralty and civil procedure is to reduce barriers to joinder; hence the reference to "any vessel," etc.

#### 1987 Amendment

The amendments are technical. No substantive change is intended.

## Rule 21. Misjoinder and Non-Joinder of Parties

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

### ADVISORY COMMITTEE NOTES

#### 1937 Adoption

See *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 16, r. 11. See also [former] Equity Rules 43 (Defect of Parties—Resisting Objection) and 44 (Defect of Parties—Tardy Objection).

For separate trials see Rules 13(i) (Counterclaims and Cross-Claims: Separate Trials; Separate Judgments), 20(b) (Permissive Joinder of Parties: Separate Trials), and 42(b) (Separate Trials, generally) and the note to the latter rule.

## Rule 22. Interpleader

(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C., §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 2, 1987, eff. Aug. 1, 1987.)

### ADVISORY COMMITTEE NOTES

#### 1937 Adoption

The first paragraph provides for interpleader relief along the newer and more liberal lines of joinder in the alternative. It avoids the confusion and restrictions that developed around actions of strict interpleader and actions in the nature of interpleader. Compare *John Hancock Mutual Life Insurance Co. v. Kegan et al.*, 22 F.Supp. 326 (D.C.Md.1938). It does not change the rules on service of process, jurisdiction, and venue, as established by judicial decision.

The second paragraph allows an action to be brought under the recent interpleader statute when applicable. By this paragraph all remedies under the statute are continued, but the manner of obtaining them is in accordance with these rules. For temporary restraining orders and preliminary injunctions under this statute, see Rule 65(e).

This rule substantially continues such statutory provisions as U.S.C., Title 38, § 445 [now 784] (Actions on claims; jurisdiction; parties; procedure; limitation; witnesses; definitions) (actions upon veterans' contracts of insurance with the United States), providing for interpleader by the United States where it acknowledges indebtedness under a contract of insurance with the United States; U.S.C., Title 49, § 97 (Interpleader of conflicting claimants) (by carrier which has issued bill of lading). See Chaffee, *The Federal Interpleader Act of 1936: I and II* (1936), 45 Yale L.J. 963, 1161.

#### 1948 Amendment

The amendment effective October 20, 1949, substituted the reference to "Title 28, U.S.C., §§ 1335, 1397, and 2361," at the end of the first sentence of paragraph (2), for the reference to "Section 24(26) of the Judicial Code, as amended, U.S.C., Title 28, § 41(26)." The amendment also substituted the words "those provisions" in the second sentence of paragraph (2) for the words "that section."

#### 1987 Amendment

The amendment is technical. No substantive change is intended.

## Rule 23. Class Actions

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which

would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**(c) Determining by Order Whether to Certify a Class Action; Appointing Class Counsel; Notice and Membership in Class; Judgment; Multiple Classes and Subclasses.**

(1)(A) When a person sues or is sued as a representative of a class, the court must—at an early practicable time—determine by order whether to certify the action as a class action.

(B) An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

(C) An order under Rule 23(c)(1) may be altered or amended before final judgment.

(2)(A) For any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class.

(B) For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

**(d) Orders in Conduct of Actions.** In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

**(e) Settlement, Voluntary Dismissal, or Compromise.**

(1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.

(B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

ay enter an appearance
oer so desires,
lude from the class any
usion, stating when and
oe excluded, and
class judgment on class
3).
action maintained as a
vision (b)(1) or (b)(2),
o the class, shall include
the court finds to be
judgment in an action
ction under subdivision
rable to the class, shall
ribe those to whom the
sion (c)(2) was directed,
ed exclusion, and whom
ers of the class.
(A) an action may be
class action with respect
a class may be divided
bclass treated as a class,
rule shall then be con-
gly.
Actions. In the conduct
applies, the court may
determining the course
ng measures to prevent
ion in the presentation of
equiring, for the protec-
lass or otherwise for the
it notice be given in such
ect to some or all of the
iction, or of the proposed
of the opportunity of
they consider the repre-
to intervene and present
rwise to come into the
ns on the representative
requiring that the plead-
therefrom allegations as
persons, and that the
(5) dealing with similar
rders may be combined
, and may be altered or
ble from time to time.
Dismissal, or Compro-

approve any settlement,
mpromise of the claims,
tified class.
ct notice in a reasonable
ers who would be bound
, voluntary dismissal, or

(C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(2) The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(3) In an action previously certified as a class action under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(4)(A) Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires court approval under Rule 23(e)(1)(A).

(B) An objection made under Rule 23(e)(4)(A) may be withdrawn only with the court's approval.

(f) **Appeals.** A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

(g) **Class Counsel.**

(1) **Appointing Class Counsel.**

(A) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.

(B) An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.

(C) In appointing class counsel, the court

(i) must consider:

- the work counsel has done in identifying or investigating potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class;

(ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(iii) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

(iv) may make further orders in connection with the appointment.

(2) **Appointment Procedure.**

(A) The court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action.

(B) When there is one applicant for appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1)(B) and (C). If more than one adequate applicant seeks appointment as class counsel, the court must appoint the applicant best able to represent the interests of the class.

(C) The order appointing class counsel may include provisions about the award of attorney fees or nontaxable costs under Rule 23(h).

(h) **Attorney Fees Award.** In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties as follows:

(1) **Motion for Award of Attorney Fees.** A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) **Objections to Motion.** A class member, or a party from whom payment is sought, may object to the motion.

(3) **Hearing and Findings.** The court may hold a hearing and must find the facts and state its conclusions of law on the motion under Rule 52(a).

(4) **Reference to Special Master or Magistrate Judge.** The court may refer issues related to the amount of the award to a special master or to a magistrate judge as provided in Rule 54(d)(2)(D).

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 24, 1998, eff. Dec. 1, 1998; Mar. 27, 2003, eff. Dec. 1, 2003.)

## ADVISORY COMMITTEE NOTES

### 1937 Adoption

**Note to Subdivision (a).** This is a substantial restatement of [former] Equity Rule 38 (Representatives of Class) as that rule has been construed. It applies to all actions, whether formerly denominated legal or equitable. For a general analysis of class actions, effect of judgment, and requisites of jurisdiction see Moore, *Federal Rules of Civil Procedure: Some Problems Raised by the Preliminary Draft*, 25 Georgetown L.J. 551, 570 et seq. (1937); Moore and Cohn, *Federal Class Actions*, 32 Ill.L.Rev. 307 (1937); Moore and Cohn, *Federal Class Actions—Jurisdiction and Effect of Judgment*, 32 Ill.L.Rev. 555–567 (1938); Lesar, *Class Suits and the Federal Rules*, 22 Minn.L.Rev. 34 (1937); cf. Arnold

and James, *Cases on Trials, Judgments and Appeals* (1936) 175; and see Blume, *Jurisdictional Amount in Representative Suits*, 15 Minn.L.Rev. 501 (1931).

The general test of [former] Equity Rule 38 (Representatives of Class) that the question should be "one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court," is a common test. For states which require the two elements of a common or general interest and numerous persons, as provided for in [former] Equity Rule 38, see Del.Ch. Rule 113; Fla.Comp.Gen.Laws Ann. (Supp., 1936) § 4918(7); Georgia Code (1933) § 37–1002, and see *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 16, r. 9. For statutory provisions providing for class actions when the question is one of common or general interest or when the parties are numerous, see Ala.Code Ann. (Michie, 1928) § 5701; 2 Ind.Stat.Ann. (Burns, 1933) § 2–220; N.Y.C.P.A. (1937) 195; Wis.Stat. (1935) § 260.12. These statutes have, however, been uniformly construed as though phrased in the conjunctive. See *Garfein v. Stiglitz*, 260 Ky. 430, 86 S.W.2d 155 (1935). The rule adopts the test of [former] Equity Rule 38, but defines what constitutes a "common or general interest". Compare with code provisions which make the action dependent upon the propriety of joinder of the parties. See Blume, *The "Common Questions" Principle in the Code Provision for Representative Suits*, 30 Mich.L.Rev. 878 (1932). For discussion of what constitutes "numerous persons" see Wheaton, *Representative Suits Involving Numerous Litigants*, 19 Corn.L.Q. 399 (1934); Note, 36 Harv.L.Rev. 89 (1922).

**Clause (1), Joint, Common, or Secondary Right.** This clause is illustrated in actions brought by or against representatives of an unincorporated association. See *Oster v. Brotherhood of Locomotive Firemen and Enginemen*, 271 Pa. 419, 114 Atl. 377 (1921); *Pickett v. Walsh*, 192 Mass. 572, 78 N.E. 753, 6 L.R.A., N.S., 1067 (1906); *Colt v. Hicks*, 97 Ind.App. 177, 179 N.E. 335 (1932). Compare Rule 17(b) as to when an unincorporated association has capacity to sue or be sued in its common name; *United Mine Workers of America v. Coronado Coal Co.*, 42 S.Ct. 570, 259 U.S. 344, 66 L.Ed. 975, 27 A.L.R. 762 (1922) (an unincorporated association was sued as an entity for the purpose of enforcing against it a federal substantive right); Moore, *Federal Rules of Civil Procedure: Some Problems Raised by the Preliminary Draft*, 25 Georgetown L.J. 551, 566 (for discussion of jurisdictional requisites when an unincorporated association sues or is sued in its common name and jurisdiction is founded upon diversity of citizenship). For an action brought by representatives of one group against representatives of another group for distribution of a fund held by an unincorporated association, see *Smith v. Swormstedt*, 16 How. 288, 14 L.Ed. 942 (U.S. 1853). Compare *Christopher, et al. v. Brusselback*, 1938, 58 S.Ct. 350, 302 U.S. 500, 82 L.Ed. 388.

For an action to enforce rights held in common by policyholders against the corporate issuer of the policies, see *Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921). See also *Terry v. Little*, 101 U.S. 216, 25 L.Ed. 864 (1880); *John A. Roebling's Sons Co. v. Kinnicutt*, 248 Fed. 596 (D.C.N.Y., 1917) dealing with the right held in common by creditors to enforce the statutory liability of stockholders.

Typical of a secondary action is a suit by stockholders to enforce a corporate right. For discussion of the general nature of these actions see *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936); Glenn, *The Stockholder's Suit—Corporate and Individual Grievances*, 33 Yale L.J. 580 (1924); McLaughlin, *Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit*, 46 Yale L.J. 421 (1937). See also Subdivision (b) of this rule which deals with Shareholder's Action; Note, 15 Minn.L.Rev. 453 (1931).

**Clause (2).** A creditor's action for liquidation or reorganization of a corporation is illustrative of this clause. An action by a stockholder against certain named defendants as representatives of numerous claimants presents a situation converse to the creditor's action.

**Clause (3).** See *Everglades Drainage League v. Napoleon Broward Drainage Dist.*, 253 Fed. 246 (D.C.Fla., 1918); *Gramling v. Maxwell*, 52 F.2d 256 (D.C.N.C., 1931), approved in 30 Mich.L.Rev. 624 (1932); *Skinner v. Mitchell*, 108 Kan. 861, 197 Pac. 569 (1921); *Duke of Bedford v. Ellis* (1901) A.C. 1, for class actions when there were numerous persons and there was only a question of law or fact common to them; and see Blume, *The "Common Questions" Principle in the Code Provision for Representative Suits*, 30 Mich. L.Rev. 878 (1932).

**Note to Subdivision (b).** This is [former] Equity Rule 27 (Stockholder's Bill) with verbal changes. See also *Hawes v. Oakland*, 104 U.S. 450, 26 L.Ed. 827 (1882) and former Equity Rule 94, promulgated January 23, 1882, 104 U.S. IX.

**Note to Subdivision (c).** See McLaughlin, Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit, 46 Yale L.J. 421 (1937).

### Supplementary Note

**Note.** Subdivision (b), relating to secondary actions by shareholders, provides among other things, that in such an action the complainant "shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law * * *".

As a result of the decision in *Erie R. Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817 (decided April 25, 1938, after this rule was promulgated by the Supreme Court, though before it took effect) a question has arisen as to whether the provision above quoted deals with a matter of substantive right or is a matter of procedure. If it is a matter of substantive law or right, then under *Erie R. Co. v. Tompkins* clause (1) may not be validly applied in cases pending in states whose local law permits a shareholder to maintain such actions, although not a shareholder at the time of the transactions complained of. The Advisory Committee, believing the question should be settled in the courts, proposes no change in Rule 23 but thinks rather that the situation should be explained in an appropriate note.

The rule has a long history. In *Hawes v. Oakland*, 1882, 104 U.S. 450, the Court held that a shareholder could not maintain such an action unless he owned shares at the time of the transactions complained of, or unless they devolved on him by operation of law. At that time the decision in *Swift v. Tyson*, 1842, 16 Peters 1, was the law, and the federal courts considered themselves free to establish their own principles of equity jurisprudence, so the Court was not in 1882 and has not been, until *Erie R. Co. v. Tompkins* in 1938, concerned



with the ques
substantive rig

Following tl
same term, tl
[former] Equit
above quoted
mer] Equity F
Rule 27, of wh

In *City of Q*
520, the Cour
order to give
Court at that
for courts of e

Some other
27 prior to tl
*Dimpfel v. Oh*
209, 28 L.Ed.
S.Ct. 251, 180
*Northern Ry.*,
666; *Jacobson*
F.Supp. 255,
*Oakland* as es
not with juris
action, or have
analogous to t
results in a dis

Those state
ing stock after
founded on tl
shareholder at
as a right to tl
1911, 202 N.Y.

The first ca
*Tompkins*, in
*mers v. Hears*
[former] Equi
effect. In a v
the decisions
section of [for
principle of s
1911, 202 N.Y
States Supren
with establishi
tive law" but
principle of la
subsequently

He then cc
treat the equ
law", if "[form
in view of *Eri*
this Court to
course by di
Rule."

In *Piccard*
F.Supp. 1006,
1941, 120 F.2d
transactions c
held an inter
original plaint
"a matter of
York where tl
*v. Tompkins*.

Pltfs' Mtn for Class Cert-000155

*ider v. Tennessee Valley*
36, 80 L.Ed. 688 (1936);
*porate and Individual*
McLaughlin, *Capacity*
*te a Stockholder's Suit*,
bdivision (b) of this rule
1; Note, 15 Minn.L.Rev.

or liquidation or reorga-
tive of this clause. An
in named defendants as
nts presents a situation

*image League v. Napole-*
d. 246 (D.C.Fla., 1918);
6 (D.C.N.C., 1931), ap-
); *Skinner v. Mitchell*,
*Duke of Bedford v. Ellis*
n there were numerous
n of law or fact common
*mon Questions" Princi-*
*sentative Suits*, 30 Mich.

[former] Equity Rule 27
ges. See also *Hawes v.*
827 (1882) and former
y 23, 1882, 104 U.S. IX
McLaughlin, Capacity of
a Stockholder's Suit, 46

**Note**

o secondary actions by
things, that in such an
) that the plaintiff was a
ransaction of which he
ter devolved on him by

*rie R. Co. v. Tompkins*,
ded April 25, 1938, after
Supreme Court, though
arisen as to whether the
a matter of substantive
. If it is a matter of
*Erie R. Co. v. Tompkins*
ied in cases pending in
shareholder to maintain
older at the time of the
Advisory Committee, be-
d in the courts, proposes
rather that the situation
e note.
*Hawes v. Oakland*, 1882,
a shareholder could not
wned shares at the time
unless they devolved on
e the decision in *Swift v.*
w, and the federal courts
lish their own principles
t was not in 1882 and has
*okins* in 1938, concerned

with the question whether *Hawes v. Oakland* dealt with substantive right or procedure.

Following the decision in *Hawes v. Oakland*, and at the same term, the Court, to implement its decision, adopted [former] Equity Rule 94, which contained the same provision above quoted from Rule 23 F.R.C.P. The provision in [former] Equity Rule 94 was later embodied in [former] Equity Rule 27, of which the present Rule 23 is substantially a copy.

In *City of Quincy v. Steel*, 1887, 120 U.S. 241, 245, 7 S.Ct. 520, the Court referring to *Hawes v. Oakland* said: "In order to give effect to the principles there laid down, this Court at that term adopted Rule 94 of the rules of practice for courts of equity of the United States."

Some other cases dealing with [former] Equity Rules 94 or 27 prior to the decision in *Erie R. Co. v. Tompkins* are *Dimpfel v. Ohio & Miss. R.R.*, 1884, 3 S.Ct. 573, 110 U.S. 209, 28 L.Ed. 121; *Illinois Central R. Co. v. Adams*, 1901, 21 S.Ct. 251, 180 U.S. 28, 34, 45L.Ed. 410; *Venner v. Great Northern Ry.*, 1908, 28 S.Ct. 328, 209 U.S. 24, 30, 52 L.Ed. 666; *Jacobson v. General Motors Corp.*, S.D.N.Y.1938, 22 F.Supp. 255, 257. These cases generally treat *Hawes v. Oakland* as establishing a "principle" of equity, or as dealing not with jurisdiction but with the "right" to maintain an action, or have said that the defense under the equity rule is analogous to the defense that the plaintiff has no "title" and results in a dismissal "for want of equity."

Those state decisions which held that a shareholder acquiring stock after the event may maintain a derivative action are founded on the view that it is a right belonging to the shareholder at the time of the transaction and which passes as a right to the subsequent purchaser. See *Pollitz v. Gould*, 1911, 202 N.Y. 11, 94 N.E. 1088.

The first case arising after the decision in *Erie R. Co. v. Tompkins*, in which this problem was involved, was *Summers v. Hearst*, S.D.N.Y.1938, 23 F.Supp. 986. It concerned [former] Equity Rule 27, as Federal Rule 23 was not then in effect. In a well considered opinion Judge Leibell reviewed the decisions and said: "The federal cases that discuss this section of [former] Rule 27 support the view that it states a principle of substantive law." He quoted *Pollitz v. Gould*, 1911, 202 N.Y. 11, 94 N.E. 1088, as saying that the United States Supreme Court "seems to have been more concerned with establishing this rule as one of practice than of substantive law" but that "whether it be regarded as establishing a principle of law or a rule of practice, this authority has been subsequently followed in the United States courts."

He then concluded that, although the federal decisions treat the equity rule as "stating a principle of substantive law", if "[former] Equity Rule 27 is to be modified or revoked in view of *Erie R. Co. v. Tompkins*, it is not the province of this Court to suggest it, much less impliedly to follow that course by disregarding the mandatory provisions of the Rule."

In *Piccard v. Sperry Corporation*, S.D.N.Y.1941, 36 F.Supp. 1006, 1009–10, affirmed without opinion, C.C.A.2d 1941, 120 F.2d 328, a shareholder, not such at the time of the transactions complained of, sought to intervene. The court held an intervenor was as much subject to Rule 23 as an original plaintiff; and that the requirement of Rule 23(b) was "a matter of practice," not substance, and applied in New York where the state law was otherwise, despite *Erie R. Co. v. Tompkins*. In *New York v. Guaranty Trust Co. of New York*, C.C.A.2, 1944, 143 F.2d 503, rev'd on other grounds, 1945, 65 S.Ct. 1464, the court said: "Restrictions on the bringing of stockholders' actions, such as those imposed by F.R.C.P. 23(b) or other state statutes are procedural," citing the *Piccard* and other cases.

Some other federal decisions since 1938 touch the question.

In *Gallup v. Caldwell*, C.C.A.3, 1941, 120 F.2d 90, 95 arising in New Jersey, the point was raised but not decided, the court saying that it was not satisfied that the then New Jersey rule differed from Rule 23(b), and that "under the circumstances the proper course was to follow Rule 23(b)."

In *Mullins v. DeSoto Securities Co.*, W.D.La.1942, 45 F.Supp. 871, 878, the point was not decided, because the court found the Louisiana rule to be the same as that stated in Rule 23(b).

In *Toebelman v. Missouri-Kansas Pipe Line Co.*, D.Del. 1941, 41 F.Supp. 334, 340, the court dealt only with another part of Rule 23(b), relating to prior demands on the stockholders and did not discuss *Erie R. Co. v. Tompkins*, or its effect on the rule.

In *Perrott v. United States Banking Corp.*, D.Del.1944, 53 F.Supp. 953, it appeared that the Delaware law does not require the plaintiff to have owned shares at the time of the transaction complained of. The court sustained Rule 23(b), after discussion of the authorities, saying:

"It seems to me the rule does not go beyond procedure. * * * Simply because a particular plaintiff cannot qualify as a proper party to maintain such an action does not destroy or even whittle at the cause of action. The cause of action exists until a qualified plaintiff can get it started in a federal court."

In *Bankers Nat. Corp. v. Barr*, S.D.N.Y.1945, 9 Fed.Rules Serv. 23b.11, Case 1, the court held Rule 23(b) to be one of procedure, but that whether the plaintiff was a stockholder was a substantive question to be settled by state law.

The New York rule, as stated in *Pollitz v. Gould*, supra, has been altered by an act of the New York Legislature, Chapter 667, Laws of 1944, effective April 9, 1944, General Corporation Law, § 61, which provides that "in any action brought by a shareholder in the right of a * * * corporation, it must appear that the plaintiff was a stockholder at the time of the transaction of which he complains, or that his stock thereafter devolved upon him by operation of law." At the same time a further and separate provision was enacted, requiring under certain circumstances the giving of security for reasonable expenses and attorney's fees, to which security the corporation in whose right the action is brought and the defendants therein may have recourse. (Chapter 668, Laws of 1944, effective April 9, 1944, General Corporation Law, § 61–b.) These provisions are aimed at so-called "strike" stockholders' suits and their attendant abuses. *Shielcrawt v. Moffett*, Ct.App.1945, 294 N.Y. 180, 61 N.E.2d 435, rev'g 51 N.Y.S.2d 188, aff'g 49 N.Y.S.2d 64; *Noel Associates, Inc. v. Merrill*, Sup.Ct.1944, 184 Misc. 646, 63 N.Y.S.2d 143.

Insofar as § 61 is concerned, it has been held that the section is procedural in nature. *Klum v. Clinton Trust Co.*, Sup.Ct.1944, 183 Misc. 340, 48 N.Y.S.2d 267; *Noel Associates, Inc. v. Merrill*, supra. In the latter case the court pointed out that "The 1944 amendment to Section 61 rejected the rule laid down in the Pollitz case and substituted, in place thereof, in its precise language, the rule which has long prevailed in the Federal Courts and which is now Rule 23(b)

* * *". There is, nevertheless, a difference of opinion regarding the application of the statute to pending actions. See *Klum v. Clinton Trust Co.*, supra (applicable); *Noel Associates, Inc. v. Merrill*, supra (inapplicable).

With respect to § 61–b, which may be regarded as a separate problem, *Noel Associates, Inc. v. Merrill*, supra, it has been held that even though the statute is procedural in nature—a matter not definitely decided—the Legislature evinced no intent that the provisions should apply to actions pending when it became effective. *Shielcrawt v. Moffett*, supra. As to actions instituted after the effective date of the legislation, the constitutionality of § 61–b is in dispute. See *Wolf v. Atkinson*, Sup.Ct.1944, 182 Misc. 675, 49 N.Y.S.2d 703 (constitutional); *Citron v. Mangel Stores Corp.*, Sup.Ct. 1944, 50 N.Y.S.2d 416 (unconstitutional); Zlinkoff, *The American Investor and the Constitutionality of § 61–b of the New York General Corporation Law*, 1945, 54 Yale L.J. 352.

New Jersey also enacted a statute, similar to Chapters 667 and 668 of the New York law. See P.L.1945, Ch. 131, R.S.Cum.Supp. 14:3–15. The New Jersey provision similar to Chapter 668, § 61–b, differs, however, in that it specifically applies retroactively. It has been held that this provision is procedural and hence will not govern a pending action brought against a New Jersey corporation in the New York courts. *Shielcrawt v. Moffett*, Sup.Ct.N.Y.1945, 184 Misc. 1074, 56 N.Y.S.2d 134.

See, also, generally, 2 Moore's *Federal Practice*, 1938, 2250–2253, and Cum.Supplement § 23.05.

The decisions here discussed show that the question is a debatable one, and that there is respectable authority for either view, with a recent trend towards the view that Rule 23(b)(1) is procedural. There is reason to say that the question is one which should not be decided by the Supreme Court ex parte, but left to await a judicial decision in a litigated case, and that in the light of the material in this note, the only inference to be drawn from a failure to amend Rule 23(b) would be that the question is postponed to await a litigated case.

The Advisory Committee is unanimously of the opinion that this course should be followed.

If, however, the final conclusion is that the rule deals with a matter of substantive right, then the rule should be amended by adding a provision that Rule 23(b)(1) does not apply in jurisdictions where state law permits a shareholder to maintain a secondary action, although he was not a shareholder at the time of the transactions of which he complains.

### 1966 Amendment

**Difficulties with the original rule.** The categories of class actions in the original rule were defined in terms of the abstract nature of the rights involved: the so-called "true" category was defined as involving "joint, common, or secondary rights"; the "hybrid" category, as involving "several" rights related to "specific property"; the "spurious" category, as involving "several" rights affected by a common question and related to common relief. It was thought that the definitions accurately described the situations amenable to the class-suit device, and also would indicate the proper extent of the judgment in each category, which would in turn help to determine the res judicata effect of the judgment if questioned in a later action. Thus the judgments in "true" and "hybrid" class actions would extend to the class (although in somewhat different ways); the judgment in a "spurious" class action would extend only to the parties including intervenors. See Moore, *Federal Rules of Civil Procedure: Some Problems Raised by the Preliminary Draft*, 25 Geo.L.J. 551, 570–76 (1937).

In practice the terms "joint," "common," etc., which were used as the basis of the Rule 23 classification proved obscure and uncertain. See Chafee, *Some Problems of Equity* 245–46, 256–57 (1950); Kalven & Rosenfield, *The Contemporary Function of the Class Suit*, 8 U. of Chi.L.Rev. 684, 707 & n. 73 (1941); Keeffe, Levy & Donovan, *Lee Defeats Ben Hur*, 33 Corn.L.Q. 327, 329–36 (1948); *Developments in the Law: Multiparty Litigation in the Federal Courts*, 71 Harv. L.Rev. 874, 931 (1958); Advisory Committee's Note to Rule 19, as amended. The courts had considerable difficulty with these terms. See, e.g., *Gullo v. Veterans' Coop. H. Assn.*, 13 F.R.D. 11 (D.D.C.1952); *Shipley v. Pittsburgh & L.E.R. Co.*, 70 F.Supp. 870 (W.D.Pa.1947); *Deckert v. Independence Shares Corp.*, 27 F.Supp. 763 (E.D.Pa.1939), rev'd 108 F.2d 51 (3d Cir. 1939), rev'd, 311 U.S. 282 (1940), on remand, 39 F.Supp. 592 (E.D.Pa.1941), rev'd sub nom. *Pennsylvania Co. for Ins. on Lives v. Deckert*, 123 F.2d 979 (3d Cir.1941) (see Chafee, supra, at 264–65).

Nor did the rule provide an adequate guide to the proper extent of the judgments in class actions. First, we find instances of the courts classifying actions as "true" or intimating that the judgments would be decisive for the class where these results seemed appropriate but were reached by dint of depriving the word "several" of coherent meaning. See, e.g., *System Federation No. 91 v. Reed*, 180 F.2d 991 (6th Cir.1950); *Wilson v. City of Paducah*, 100 F.Supp. 116 (W.D.Ky.1951); *Citizens Banking Co. v. Monticello State Bank*, 143 F.2d 261 (8th Cir.1944); *Redmond v. Commerce Trust Co.*, 144 F.2d 140 (8th Cir.1944), cert. denied, 323 U.S. 776 (1944); *United States v. American Optical Co.*, 97 F.Supp. 66 (N.D.Ill.1951); *National Hairdressers' & C. Assn. v. Philad Co.*, 34 F.Supp. 264 (D.Del.1940); 41 F.Supp. 701 (D.Del.1940), aff'd mem., 129 F.2d 1020 (3d Cir.1942). Second, we find cases classified by the courts as "spurious" in which, on a realistic view, it would seem fitting for the judgments to extend to the class. See, e.g., *Knapp v. Bankers Sec. Corp.*, 17 F.R.D. 245 (E.D.Pa.1954), aff'd 230 F.2d 717 (3d Cir.1956); *Giesecke v. Denver Tramway Corp.*, 81 F.Supp. 957 (D.Del.1949); *York v. Guaranty Trust Co.*, 143 F.2d 503 (2d Cir.1944), rev'd on grounds not here relevant, 326 U.S. 99 (1945) (see Chafee, supra, at 208); cf. *Webster Eisenlohr, Inc. v. Kalodner*, 145 F.2d 316, 320 (3d Cir.1944), cert. denied, 325 U.S. 867 (1945). But cf. the early decisions, *Duke of Bedford v. Ellis*, [1901] A.C. 1; *Sheffield Waterworks v. Yeomans*, L.R. 2 Ch.App. 8 (1866); *Brown v. Vermuden*, 1 Ch.Cas. 272, 22 Eng.Rep. 796 (1676).

The "spurious" action envisaged by original Rule 23 was in any event an anomaly because, although denominated a "class" action and pleaded as such, it was supposed not to adjudicate the rights or liabilities of any person not a party. It was believed to be an advantage of the "spurious" category that it would invite decisions that a member of the "class" could, like a member of the class in a "true" or "hybrid" action, intervene on an ancillary basis without being required to show an independent basis of Federal jurisdiction, and have the benefit of the date of the commencement of the action for purposes of the statute of limitations. See 3 Moore's *Federal Practice*, pars. 23.10[1], 23.12 (2d ed.1963).

These results were attained in some instances but not in others. On the statute of limitations, see *Union Carbide & Carbon Corp. v. Nisley,* 300 F.2d 561 (10th Cir.1961), pet. cert. dism., 371 U.S. 801 (1963); but cf. *P. W. Husserl, Inc. v. Newman,* 25 F.R.D. 264 (S.D.N.Y.1960); *Athas v. Day,* 161 F.Supp. 916 (D.Colo.1958). On ancillary intervention, see *Amen v. Black,* 234 F.2d 12 (10th Cir.1956), cert. granted, 352 U.S. 888 (1956), dism. on stip., 355 U.S. 600 (1958); but cf. *Wagner v. Kemper,* 13 F.R.D. 128 (W.D.Mo.1952). The results, however, can hardly depend upon the mere appearance of a "spurious" category in the rule; they should turn on more basic considerations. See discussion of subdivision (c)(1) below.

Finally, the original rule did not squarely address itself to the question of the measures that might be taken during the course of the action to assure procedural fairness, particularly giving notice to members of the class, which may in turn be related in some instances to the extension of the judgment to the class. See Chafee, supra, at 230–31; Keeffe, Levy & Donovan, supra; *Developments in the law,* supra, 71 Harv. L.Rev. at 937–38; Note, *Binding Effect of Class Actions,* 67 Harv.L.Rev. 1059, 1062–65 (1954); Note, *Federal Class Actions: A Suggested Revision of Rule 23,* 46 Colum.L.Rev. 818, 833–36 (1946); Mich.Gen.Court R. 208.4 (effective Jan. 1, 1963); Idaho R.Civ.P. 23(d); Minn.R.Civ.P. 23.04; N.Dak.R.Civ.P. 23(d).

*The amended rule* describes in more practical terms the occasions for maintaining class actions; provides that all class actions maintained to the end as such will result in judgments including those whom the court finds to be members of the class, whether or not the judgment is favorable to the class; and refers to the measures which can be taken to assure the fair conduct of these actions.

**Subdivision** (a) states the prerequisites for maintaining any class action in terms of the numerousness of the class making joinder of the members impracticable, the existence of questions common to the class, and the desired qualifications of the representative parties. See Weinstein, *Revision of Procedure: Some Problems in Class Actions,* 9 Buffalo L.Rev. 433, 458–59 (1960); 2 Barron & Holtzoff, *Federal Practice & Procedure* § 562, at 265, § 572, at 351–52 (Wright ed. 1961). These are necessary but not sufficient conditions for a class action. See, e.g., *Giordano v. Radio Corp. of Am.,* 183 F.2d 558, 560 (3d Cir.1950); *Zachman v. Erwin,* 186 F.Supp. 681 (S.D.Tex.1959); *Baim & Blank, Inc. v. Warren-Connelly Co., Inc.,* 19 F.R.D. 108 (S.D.N.Y.1956). Subdivision (b) describes the additional elements which in varying situations justify the use of a class action.

**Subdivision (b)(1).** The difficulties which would be likely to arise if resort were had to separate actions by or against the individual members of the class here furnish the reasons for, and the principal key to, the propriety and value of utilizing the class-action device. The considerations stated under clauses (A) and (B) are comparable to certain of the elements which define the persons whose joinder in an action is desirable as stated in Rule 19(a), as amended. See amended Rule 19(a)(2)(i) and (ii), and the Advisory Committee's Note thereto; Hazard, *Indispensable Party: The Historical Origin of a Procedural Phantom,* 61 Colum.L.Rev. 1254, 1259–60 (1961); cf. 3 Moore, supra, par. 23.08, at 3435.

**Clause (A):** One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct. The class action device can be used effectively to obviate the actual or virtual dilemma which would thus confront the party opposing the class. The matter has been stated thus: "The felt necessity for a class action is greatest when the courts are called upon to order or sanction the alteration of the status quo in circumstances such that a large number of persons are in a position to call on a single person to alter the status quo, or to complain if it is altered, and the possibility exists that [the] actor might be called upon to act in inconsistent ways." Louisell & Hazard, *Pleading and Procedure: State and Federal* 719 (1962); see *Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356, 366–67 (1921). To illustrate: Separate actions by individuals against a municipality to declare a bond issue invalid or condition or limit it, to prevent or limit the making of a particular appropriation or to compel or invalidate an assessment, might create a risk of inconsistent or varying determinations. In the same way, individual litigations of the rights and duties of riparian owners, or of landowners' rights and duties respecting a claimed nuisance, could create a possibility of incompatible adjudications. Actions by or against a class provide a ready and fair means of achieving unitary adjudication. See *Maricopa County Mun. Water Con. Dist. v. Looney,* 219 F.2d 529 (9th Cir.1955); *Rank v. Krug,* 142 F.Supp. 1, 154–59 (S.D.Calif.1956), on app., *State of California v. Rank,* 293 F.2d 340, 348 (9th Cir.1961); *Gart v. Cole,* 263 F.2d 244 (2d Cir.1959), cert. denied 359 U.S. 978 (1959); cf. *Martinez v. Maverick Cty. Water Con. & Imp. Dist.,* 219 F.2d 666 (5th Cir.1955); 3 Moore, supra, par. 23.11[2], at 3458–59.

**Clause (B):** This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit. In an action by policy holders against a fraternal benefit association attacking a financial reorganization of the society, it would hardly have been practical, if indeed it would have been possible, to confine the effects of a validation of the reorganization to the individual plaintiffs. Consequently a class action was called for with adequate representation of all members of the class. See *Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356 (1921); *Waybright v. Columbian Mut. Life Ins. Co.,* 30 F.Supp. 885 (W.D.Tenn.1939); cf. *Smith v. Swormstedt,* 16 How. (57 U.S.) 288 (1853). For much the same reason actions by shareholders to compel the declaration of a dividend[,] the proper recognition and handling of redemption or pre-emption rights, or the like (or actions by the corporation for corresponding declarations of rights), should ordinarily be conducted as class actions, although the matter has been much obscured by the insistence that each shareholder has an individual claim. See *Knapp v. Bankers Securities Corp.,* 17 F.R.D. 245 (E.D.Pa.1954), aff'd, 230 F.2d 717 (3d Cir. 1956); *Giesecke v. Denver Tramway Corp.,* 81 F.Supp. 957 (D.Del.1949); *Zahn v. Transamerica Corp.,* 162 F.2d 36 (3d Cir.1947); *Speed v. Transamerica Corp.,* 100 F.Supp. 461 (D.Del.1951); *Sobel v. Whittier Corp.,* 95 F.Supp. 643 (E.D.Mich.1951), app. dism., 195 F.2d 361 (6th Cir.1952); *Goldberg v. Whittier Corp.,* 111 F.Supp. 382 (E.D.Mich.1953); *Dann v. Studebaker-Packard Corp.,* 288 F.2d 201 (6th Cir. 1961); *Edgerton v. Armour & Co.,* 94 F.Supp. 549 (S.D.Cal-

ir.1950); *Ames v. Mengel Co.*, 190 F.2d 344 (2d Cir.1951). (These shareholders' actions are to be distinguished from derivative actions by shareholders dealt with in new Rule 23.1). The same reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust. See *Boesenberg v. Chicago T. & T. Co.*, 128 F.2d 245 (7th Cir.1942); *Citizens Banking Co. v. Monticello State Bank*, 143 F.2d 261 (8th Cir.1944); *Redmond v. Commerce Trust Co.*, 144 F.2d 140 (8th Cir.1944), cert. denied, 323 U.S. 776 (1944); cf. *York v. Guaranty Trust Co.*, 143 F.2d 503 (2d Cir.1944), rev'd on grounds not here relevant, 326 U.S. 99 (1945).

In various situations an adjudication as to one or more members of the class will necessarily or probably have an adverse practical effect on the interests of other members who should therefore be represented in the lawsuit. This is plainly the case when claims are made by numerous persons against a fund insufficient to satisfy all claims. A class action by or against representative members to settle the validity of the claims as a whole, or in groups, followed by separate proof of the amount of each valid claim and proportionate distribution of the fund, meets the problem. Cf. *Dickinson v. Burnham*, 197 F.2d 973 (2d Cir.1952), cert. denied, 344 U.S. 875 (1952); 3 Moore, supra, at par. 23.09. The same reasoning applies to an action by a creditor to set aside a fraudulent conveyance by the debtor and to appropriate the property to his claim, when the debtor's assets are insufficient to pay all creditors' claims. See *Heffernan v. Bennett & Armour*, 110 Cal.App.2d 564, 243 P.2d 846 (1952); cf. *City & County of San Francisco v. Market Street Ry.*, 95 Cal.App.2d 648, 213 P.2d 780 (1950). Similar problems, however, can arise in the absence of a fund either present or potential. A negative or mandatory injunction secured by one of a numerous class may disable the opposing party from performing claimed duties toward the other members of the class or materially affect his ability to do so. An adjudication as to movie "clearances and runs" nominally affecting only one exhibitor would often have practical effects on all the exhibitors in the same territorial area. Cf. *United States v. Paramount Pictures, Inc.*, 66 F.Supp. 323, 341–46 (S.D.N.Y. 1946); 334 U.S. 131, 144–48 (1948). Assuming a sufficiently numerous class of exhibitors, a class action would be advisable. (Here representation of subclasses of exhibitors could become necessary; see subdivision (c)(3)(B).)

**Subdivision (b)(2).** This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration. See *Potts v. Flax*, 313 F.2d 284 (5th Cir. 1963); *Bailey v. Patterson*, 323 F.2d 201 (5th Cir. 1963), cert. denied, 376 U.S. 910, (1964); *Brunson v. Board of Trustees of School District No. 1, Clarendon Cty., S.C.*, 311 F.2d 107 (4th Cir. 1962), cert. denied, 373 U.S. 933 (1963); *Green v. School Bd. of Roanoke, Va.*, 304 F.2d 118 (4th Cir. 1962); *Orleans Parish School Bd. v. Bush*, 242 F.2d 156 (5th Cir. 1957), cert. denied, 354 U.S. 921 (1957); *Mannings v. Board of Public Inst. of Hillsborough County, Fla.*, 277 F.2d 370 (5th Cir. 1960); *Northcross v. Board of Ed. of City of Memphis*, 302 F.2d 818 (6th Cir. 1962), cert. denied, 370 U.S. 944 (1962); *Frasier v. Board of Trustees of Univ. of N.C.*, 134 F.Supp. 589 (M.D.N.C.1955, 3-judge court), aff'd 350 U.S. 979 (1956). Subdivision (b)(2) is not limited to civil-rights cases. Thus an action looking to specific or declaratory relief could be brought by a numerous class of purchasers, say retailers of a given description, against a seller alleged to have undertaken to sell to that class at prices higher than those set for other purchasers, say retailers of another description, when the applicable law forbids such a pricing differential. So also a patentee of a machine, charged with selling or licensing the machine on condition that purchasers or licensees also purchase or obtain licenses to use an ancillary unpatented machine, could be sued on a class basis by a numerous group of purchasers or licensees, or by a numerous group of competing sellers or licensors of the unpatented machine, to test the legality of the "tying" condition.

**Subdivision (b)(3).** In the situations to which this subdivision relates, class-action treatment is not as clearly called for as in those described above, but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Cf. Chafee, supra, at 201.

The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed. See *Oppenheimer v. F. J. Young & Co., Inc.*, 144 F.2d 387 (2d Cir. 1944); *Miller v. National City Bank of N.Y.*, 166 F.2d 723 (2d Cir. 1948); and for like problems in other contexts, see *Hughes v. Encyclopaedia Britannica*, 199 F.2d 295 (7th Cir. 1952); *Sturgeon v. Great Lakes Steel Corp.*, 143 F.2d 819 (6th Cir. 1944). A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability,

ivil-rights field
:ing unlawfully
ire incapable of
3 F.2d 284 (5th
(5th Cir. 1963),
*n v. Board of
Cty., S.C.*, 311
J.S. 933 (1963);
:d 118 (4th Cir.
2 F.2d 156 (5th
; *Mannings v.
, Fla.*, 277 F.2d
' *Ed. of City of*
lenied, 370 U.S.
*Univ. of N.C.*,
), aff'd 350 U.S.
l to civil-rights
eclaratory relief
ourchasers, say
eller alleged to
:es higher than
ers of another
such a pricing
e, charged with
:hat purchasers
ses to use an
on a class basis
nsees, or by a
censors of the
e "tying" condi-

hich this subdi-
s clearly called
nevertheless be
particular facts.
n which a class
t, and expense,
ersons similarly
ess or bringing
, supra, at 201.
of holding that
ubdivision, that
inate over the
only where this
be achieved by
view, a fraud
use of similar
ation for a class
ed, if liability is
ges suffered by
hand, although
be unsuited for
rial variation in
or degrees of
addressed. See
4 F.2d 387 (2d
*N.Y.*, 166 F.2d
other contexts,
9 F.2d 295 (7th
*p.*, 143 F.2d 819
g in injuries to
ate for a class
t questions, not
ses of liability,

would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried. See *Pennsylvania R.R. v. United States*, 111 F.Supp. 80 (D.N.J.1953); cf. Weinstein, supra, 9 Buffalo L.Rev. at 469. Private damage claims by numerous individuals arising out of concerted antitrust violations may or may not involve predominating common questions. See *Union Carbide & Carbon Corp. v. Nisley*, 300 F.2d 561 (10th Cir. 1961), pet. cert. dism., 371 U.S. 801 (1963); cf. *Weeks v. Bareco Oil Co.*, 125 F.2d 84 (7th Cir. 1941); *Kainz v. Anheuser-Busch, Inc.*, 194 F.2d 737 (7th Cir. 1952); *Hess v. Anderson, Clayton & Co.*, 20 F.R.D. 466 (S.D.Calif.1957).

That common questions predominate is not itself sufficient to justify a class action under subdivision (b)(3), for another method of handling the litigious situation may be available which has greater practical advantages. Thus one or more actions agreed to by the parties as test or model actions may be preferable to a class action; or it may prove feasible and preferable to consolidate actions. Cf. Weinstein, supra, 9 Buffalo L.Rev. at 438–54. Even when a number of separate actions are proceeding simultaneously, experience shows that the burdens on the parties and the courts can sometimes be reduced by arrangements for avoiding repetitious discovery or the like. Currently the Coordinating Committee on Multiple Litigation in the United States District Courts (a subcommittee of the Committee on Trial Practice and Technique of the Judicial Conference of the United States) is charged with developing methods for expediting such massive litigation. To reinforce the point that the court with the aid of the parties ought to assess the relative advantages of alternative procedures for handling the total controversy, subdivision (b)(3) requires, as a further condition of maintaining the class action, that the court shall find that that procedure is "superior" to the others in the particular circumstances.

Factors (A)–(D) are listed, non-exhaustively, as pertinent to the findings. The court is to consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit. See *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 88–90, 93–94 (7th Cir. 1941) (anti-trust action); see also *Pentland v. Dravo Corp.*, 152 F.2d 851 (3d Cir. 1945), and Chafee, supra, at 273–75, regarding policy of Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C. § 216(b), prior to amendment by Portal-to-Portal Act of 1947, § 5(a). [The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended.]

In this connection the court should inform itself of any litigation actually pending by or against the individuals. The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretic rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable. The burden that separate suits would impose on the party opposing the class, or upon the court calendars, may also fairly be considered. (See the discussion, under subdivision (c)(2) below, of the right of members to be excluded from the class upon their request.)

Also pertinent is the question of the desirability of concentrating the trial of the claims in the particular forum by means of a class action, in contrast to allowing the claims to be litigated separately in forums to which they would ordinarily be brought. Finally, the court should consider the problems of management which are likely to arise in the conduct of a class action.

**Subdivision (c)(1).** In order to give clear definition to the action, this provision requires the court to determine, as early in the proceedings as may be practicable, whether an action brought as a class action is to be so maintained. The determination depends in each case on satisfaction of the terms of subdivision (a) and the relevant provisions of subdivision (b).

An order embodying a determination can be conditional; the court may rule, for example, that a class action may be maintained only if the representation is improved through intervention of additional parties of a stated type. A determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound. A negative determination means that the action should be stripped of its character as a class action. See subdivision (d)(4). Although an action thus becomes a nonclass action, the court may still be receptive to interventions before the decision on the merits so that the litigation may cover as many interests as can be conveniently handled; the questions whether the intervenors in the nonclass action shall be permitted to claim "ancillary" jurisdiction or the benefit of the date of the commencement of the action for purposes of the statute of limitations are to be decided by reference to the laws governing jurisdiction and limitations as they apply in particular contexts.

Whether the court should require notice to be given to members of the class of its intention to make a determination, or of the order embodying it, is left to the court's discretion under subdivision (d)(2).

**Subdivision (c)(2)** makes special provision for class actions maintained under subdivision (b)(3). As noted in the discussion of the latter subdivision, the interests of the individuals in pursing their own litigations may be so strong here as to warrant denial of a class action altogether. Even when a class action is maintained under subdivision (b)(3), this individual interest is respected. Thus the court is required to direct notice to the members of the class of the right of each member to be excluded from the class upon his request. A member who does not request exclusion may, if he wishes, enter an appearance in the action through his counsel; whether or not he does so, the judgment in the action will embrace him.

The notice[,] setting forth the alternatives open to the members of the class, is to be the best practicable under the circumstances, and shall include individual notice to the members who can be identified through reasonable effort. (For further discussion of this notice, see the statement under subdivision (d)(2) below.)

**Subdivision (c)(3).** The judgment in a class action maintained as such to the end will embrace the class, that is, in a class action under subdivision (b)(1) or (b)(2), those found by the court to be class members; in a class action under subdivision (b)(3), those to whom the notice prescribed by subdivision (c)(2) was directed, excepting those who requested exclusion or who are ultimately found by the court not to be members of the class. The judgment has this scope whether it is favorable or unfavorable to the class. In a

(b)(1) or (b)(2) action the judgment "describes" the members of the class, but need not specify the individual members; in a (b)(3) action the judgment "specifies" the individual members who have been identified and described the others.

Compare subdivision (c)(4) as to actions conducted as class actions only with respect to particular issues. Where the class-action character of the lawsuit is based solely on the existence of a "limited fund," the judgment, while extending to all claims of class members against the fund, has ordinarily left unaffected the personal claims of nonappearing members against the debtor. See 3 Moore, supra, par. 23.11[4].

Hitherto, in a few actions conducted as "spurious" class actions and thus nominally designed to extend only to parties and others intervening before the determination of liability, courts have held or intimated that class members might be permitted to intervene after a decision on the merits favorable to their interests, in order to secure the benefits of the decision for themselves, although they would presumably be unaffected by an unfavorable decision. See, as to the propriety of this so-called "one-way" intervention in "spurious" actions, the conflicting views expressed in *Union Carbide & Carbon Corp. v. Nisley*, 300 F.2d 561 (10th Cir. 1961), pet. cert. dism., 371 U.S. 801 (1963); *York v. Guaranty Trust Co.*, 143 F.2d 503, 529 (2d Cir. 1944), rev'd on grounds not here relevant, 326 U.S. 99 (1945); *Pentland v. Dravo Corp.*, 152 F.2d 851, 856 (3d Cir. 1945); *Speed v. Transamerica Corp.*, 100 F.Supp. 461, 463 (D.Del.1951); *State Wholesale Grocers v. Great Atl. & Pac. Tea Co.*, 24 F.R.D. 510 (N.D.Ill.1959); *Alabama Ind. Serv. Stat. Assn. v. Shell Pet. Corp.*, 28 F.Supp. 386, 390 (N.D.Ala.1939); *Tolliver v. Cudahy Packing Co.*, 39 F.Supp. 337, 339 (E.D.Tenn.1941); Kalven & Rosenfield, supra, 8 U. of Chi.L.Rev. 684 (1941); Comment, 53 Nw.U.L.Rev. 627, 632–33 (1958); *Developments in the Law*, supra, 71 Harv.L.Rev. at 935; 2 Barron & Holtzoff, supra, § 568; but cf. *Lockwood v. Hercules Powder Co.*, 7 F.R.D. 24, 28–29 (W.D.Mo.1947); *Abram v. San Joaquin Cotton Oil Co.*, 46 F.Supp. 969, 976–77 (S.D.Calif.1942); Chafee, supra, at 280, 285; 3 Moore, supra, par. 23.12, at 3476. Under proposed subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class, as above stated.

Although thus declaring that the judgment in a class action includes the class, as defined, subdivision (c)(3) does not disturb the recognized principle that the court conducting the action cannot predetermine the *res judicata* effect of the judgment; this can be tested only in a subsequent action. See Restatement, Judgments § 86, comment (h), § 116 (1942). The court, however, in framing the judgment in any suit brought as a class action, must decide what its extent or coverage shall be, and if the matter is carefully considered, questions of *res judicata* are less likely to be raised at a later time and if raised will be more satisfactorily answered. See Chafee, supra, at 294; Weinstein, supra, 9 Buffalo L.Rev. at 460.

**Subdivision (c)(4).** This provision recognizes that an action may be maintained as a class action as to particular issues only. For example, in a fraud or similar case the action may retain its "class" character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.

Two or more classes may be represented in a single action. Where a class is found to include subclasses divergent in interest, the class may be divided correspondingly, and each subclass treated as a class.

**Subdivision (d)** is concerned with the fair and efficient conduct of the action and lists some types of orders which may be appropriate.

The court should consider how the proceedings are to be arranged in sequence, and what measures should be taken to simplify the proof and argument. See subdivision (d)(1). The orders resulting from this consideration, like the others referred to in subdivision (d), may be combined with a pretrial order under Rule 16, and are subject to modification as the case proceeds.

**Subdivision (d)(2)** sets out a non-exhaustive list of possible occasions for orders requiring notice to the class. Such notice is not a novel conception. For example, in "limited fund" cases, members of the class have been notified to present individual claims after the basic class decision. Notice has gone to members of a class so that they might express any opposition to the representation, see *United States v. American Optical Co.*, 97 F.Supp. 66 (N.D.Ill.1951), and 1950–51 CCH Trade Cases 64573–74 (par. 62869); cf. *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 94 (7th Cir. 1941), and notice may encourage interventions to improve the representation of the class. Cf. *Oppenheimer v. F. J. Young & Co.*, 144 F.2d 387 (2d Cir. 1944). Notice has been used to poll members on a proposed modification of a consent decree. See record in *Sam Fox Publishing Co. v. United States*, 366 U.S. 683 (1961).

Subdivision (d)(2) does not require notice at any stage, but rather calls attention to its availability and invokes the court's discretion. In the degree that there is cohesiveness or unity in the class and the representation is effective, the need for notice to the class will tend toward a minimum. These indicators suggest that notice under subdivision (d)(2) may be particularly useful and advisable in certain class actions maintained under subdivision (b)(3), for example, to permit members of the class to object to the representation. Indeed, under subdivision (c)(2), notice must be ordered, and is not merely discretionary, to give the members in a subdivision (b)(3) class action an opportunity to secure exclusion from the class. This mandatory notice pursuant to subdivision (c)(2), together with any discretionary notice which the court may find it advisable to give under subdivision (d)(2), is designed to fulfill requirements of due process to which the class action procedure is of course subject. See *Hansberry v. Lee*, 311 U.S. 32 (1940); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); cf. *Dickinson v. Burnham*, 197 F.2d 973, 979 (2d Cir. 1952), and studies cited at 979 in 4; see also *All American Airways, Inc. v. Elderd*, 209 F.2d 247, 249 (2d Cir. 1954); *Gart v. Cole*, 263 F.2d 244, 248–49 (2d Cir. 1959), cert. denied, 359 U.S. 978 (1959).

Notice to members of the class, whenever employed under amended Rule 23, should be accommodated to the particular purpose but need not comply with the formalities for service of process. See Chafee, supra, at 230–31; *Brendle v. Smith*, 7 F.R.D. 119 (S.D.N.Y.1946). The fact that notice is given at one stage of the action does not mean that it must be given at subsequent stages. Notice is available fundamentally "for the protection of the members of the class or otherwise for the fair conduct of the action" and should not be used merely as a device for the undesirable solicitation of claims. See the

discussion in *Ci*
F.Supp. 934 (D
F.R.D. 303 (S.D.
In appropriat
government age
particular steps
**Subdivision (**
the maintenance
of the represent
ognizes that the
be required for t
As to orders u
above.
**Subdivision (**
tice, for the di

The amendme
intended.

**Subdivision (**
vision is adopte
§ 1292(e). Appe
certification is p
appeals. No oth
provision. The c
whether to perm
by the Supreme
This discretion
U.S.C. § 1292(b
district court.
§ 1291(b) mode
that the distri
appeal, althoug
and court of ap
appeal. And it
quirements of
volve[] a contr
substantial gro
immediate appe
ultimate termin
The courts o
review that refl
litigation. The
view that man
familiar and aln
immediate appe
several concern
appeal. An or
plaintiff with
appellate revie
merits of an i
smaller than th
cation, on the
rather than inc
run the risk o
can be met at l
a discretionary
that show appe
Permission t
basis of any c

n a single action. ses divergent in dingly, and each

air and efficient of orders which

edings are to be ould be taken to bdivision (d)(1). , like the others ombined with a t to modification

ive list of possi- the class. Such nple, in "limited been notified to is decision. No- hat they might ion, see *United* 56 (N.D.Ill.1951), par. 62869); cf. Cir. 1941), and ve the represen- *J. Young & Co.*, been used to poll consent decree. *nited States*, 366

at any stage, but and invokes the is cohesiveness is effective, the ard a minimum. ubdivision (d)(2) in certain class for example, to representation. be ordered, and ers in a subdivi- secure exclusion suant to subdivi- notice which the division (d)(2), is ess to which the See *Hansberry* *entral Hanover* cf. *Dickinson v.* and studies cited , *Inc. v. Elderd*, *le*, 263 F.2d 244, U.S. 978 (1959). employed under to the particular lities for service *rendle v. Smith*, notice is given at it must be given ndamentally "for or otherwise for be used merely claims. See the

discussion in *Cherner v. Transitron Electronic Corp.*, 201 F.Supp. 934 (D.Mass.1962); *Hormel v. United States*, 17 F.R.D. 303 (S.D.N.Y.1955).

In appropriate cases the court should notify interested government agencies of the pendency of the action or of particular steps therein.

**Subdivision (d)(3)** reflects the possibility of conditioning the maintenance of a class action, e.g., on the strengthening of the representation, see subdivision (c)(1) above; and recognizes that the imposition of conditions on intervenors may be required for the proper and efficient conduct of the action.

As to orders under subdivision (d)(4), see subdivision (c)(1) above.

**Subdivision (e)** requires approval of the court, after notice, for the dismissal or compromise of any class action.

### 1987 Amendment

The amendments are technical. No substantive change is intended.

### 1998 Amendments

**Subdivision (f).** This permissive interlocutory appeal provision is adopted under the power conferred by 28 U.S.C. § 1292(e). Appeal from an order granting or denying class certification is permitted in the sole discretion of the court of appeals. No other type of Rule 23 order is covered by this provision. The court of appeals is given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari. This discretion suggests an analogy to the provision in 28 U.S.C. § 1292(b) for permissive appeal on certification by a district court. Subdivision (f), however, departs from the § 1291(b) model in two significant ways. It does not require that the district court certify the certification ruling for appeal, although the district court often can assist the parties and court of appeals by offering advice on the desirability of appeal. And it does not include the potentially limiting requirements of § 1292(b) that the district court order "involve[] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

The courts of appeals will develop standards for granting review that reflect the changing areas of uncertainty in class litigation. The Federal Judicial Center study supports the view that many suits with class-action allegations present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings. Yet several concerns justify expansion of present opportunities to appeal. An order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim that, standing alone, is far smaller than the costs of litigation. An order granting certification, on the other hand, may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability. These concerns can be met at low cost by establishing in the court of appeals a discretionary power to grant interlocutory review in cases that show appeal-worthy certification issues.

Permission to appeal may be granted or denied on the basis of any consideration that the court of appeals finds persuasive. Permission is most likely to be granted when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation.

The district court, having worked through the certification decision, often will be able to provide cogent advice on the factors that bear on the decision whether to permit appeal. This advice can be particularly valuable if the certification decision is tentative. Even as to a firm certification decision, a statement of reasons bearing on the probably benefits and costs of immediate appeal can help focus the court of appeals decision, and may persuade the disappointed party that an attempt to appeal would be fruitless.

The 10-day period for seeking permission to appeal is designed to reduce the risk that attempted appeals will disrupt continuing proceedings. It is expected that the courts of appeals will act quickly in making the preliminary determination whether to permit appeal. Permission to appeal does not stay trial court proceedings. A stay should be sought first from the trial court. If the trial court refuses a stay, its action and any explanation of its views should weigh heavily with the court of appeals.

Appellate Rule 5 has been modified to establish the procedure for petitioning for leave to appeal under subdivision (f).

### 2003 Amendments

**Subdivision (c).** Subdivision (c) is amended in several respects. The requirement that the court determine whether to certify a class "as soon as practicable after commencement of an action" is replaced by requiring determination "at an early practicable time." The notice provisions are substantially revised.

**Paragraph (1).** Subdivision (c)(1)(A) is changed to require that the determination whether to certify a class be made "at an early practicable time." The "as soon as practicable" exaction neither reflect s prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision. See Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules 26–36* (Federal Judicial Center 1996).

Time may be needed to gather information necessary to make the certification decision. Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. In this sense it is appropriate to conduct controlled discovery into the "merits," limited to those aspects relevant to making the certification decision on an informed basis. Active judicial supervision may be required to achieve the most effective balance that expedites an informed certification determination without forcing an artificial and ultimately wasteful division between "certification discovery" and "merits discovery." A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a "trial plan" that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof. See Manual For Complex Litigation Third, § 21.213, p. 44; § 30.11, p. 214; § 30.12, p. 215.